UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| G.G., A.L., and B.S., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION, a Washington corporation,<br><br>Defendant. | No.<br><br>**NOTICE OF REMOVAL** |

Defendant Valve Corporation ("Valve") hereby removes the state court action described below to this United States District Court for the Western District of Washington. Removal is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441 (a) and (b), and 1453 because this is a class action with 100 or more putative class members, an amount in controversy in excess of $5 million, and minimal diversity.

//
//
//
//

NOTICE OF REMOVAL - (No. ) - 1
63478.00052
122016/1013/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

## I.   NATURE OF THE CASE

1. Plaintiffs filed this lawsuit on November 29, 2016 in King County Superior Court under the caption *G.G., A.L. and B.S., individually and on behalf of all others similarly situated, v. Valve Corporation*, King County Case No. 16-2-28798-1 SEA.

2. Valve accepted service of the Summons and Complaint on December 2, 2016 through counsel. This Notice of Removal is timely filed within 30 days of service.

3. Plaintiffs are citizens of Illinois, Oregon and Missouri who bring claims against Valve individually and on behalf of their minor children. (Complaint ("Compl.") ¶¶ 99-101.)

4. Valve is a Washington corporation with its principal place of business in Bellevue. (Compl. ¶ 12.) Valve operates Steam, a platform where Steam subscribers can play video games, communicate with other players or Valve, participate in forum discussions, and trade, buy or sell virtual items in Steam's Market. Compl. ¶ 23. As of early 2015 there were more than 125 million active Steam users worldwide. *Valve Announces Link, Source 2, SteamVR, And More At GDC*, STEAMPOWERED.COM (Mar. 4, 2015), http://store.steampowered.com/news/16000/. Valve developed and publishes the video game Counter Strike: Global Offensive ("CS:GO"). (Compl. ¶ 12.)

5. "Skins" are virtual items used in CS:GO that are cosmetic only, e.g., different textures or looks for guns. (Compl. ¶¶ 5, 21.) Valve created skins and introduced them in August 2013. (Compl. ¶¶ 4, 19.)

6. Plaintiffs allege that Valve sells skins through Steam, sells virtual "keys" to open virtual "crates" dropped during CS:GO gameplay that contain skins, and takes a 15% fee on all sales by Steam users of CS:GO skins on the Steam Market. (Compl. ¶¶ 20, 29, 37.) Although skins are virtual items for use in CS:GO, Plaintiffs allege there is a market on third-party websites where these skins can be bought and sold for real-world cash. (Compl. ¶¶ 5, 7.)

7. Plaintiffs claim that Steam users can link their Steam accounts to third-party websites that use Steam's item-trade feature to let users gamble their virtual "skins" on the

NOTICE OF REMOVAL - (No. ) - 2

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

outcome of CS:GO matches and other games of chance. (Compl. ¶¶ 3, 5, 42-43.) Plaintiffs allege Valve facilitates this gambling on third-party websites. (Compl. ¶¶ 3, 7, 46.)

8. All three minor Plaintiffs (J.P., C.L., E.B.) allege that they purchased skins on a third-party website (OPSkins) and bought virtual keys from Valve to open virtual cases to access other skins. (Compl. ¶¶ 99-101.) All three claim they gambled—and lost—skins on third-party websites. (*Id.*) The three parent Plaintiffs (G.G., A.L., B.S.) claim they gave the minor plaintiffs money to buy skins and that they lost their money when the minor plaintiffs lost these items gambling. (*Id.*)

9. Plaintiffs purport to bring this suit as a class action on behalf of a putative class defined as:

> All persons in the United States ("National Class") and/or in Washington ("Washington Subclass") who (1) purchased Skins or (2) are parents/guardians of a minor child who purchased Skins. (Compl. ¶ 113.)

10. Plaintiffs assert six causes of action: (1) violation of the Washington Consumer Protection Act, RCW 19.86, *et seq.*; (2) recovery from Valve of money lost at gambling on third-party websites, pursuant to RCW 4.24.070; (3) violation of the Washington Gambling Act of 1973, RCW 9.46 *et seq.*; (4) unjust enrichment; (5) negligence; and (6) declaratory relief regarding the validity of Valve's Steam Subscriber Agreement.

11. Plaintiffs seek damages, including out-of-pocket losses from gambling skins on third-party websites along with losses from purchasing skins or paying allegedly inflated prices for them and paying skins-related fees, for all putative class members. (Compl. ¶¶ 130, 140, 148.) Plaintiffs also ask the Court to order Valve to disgorge its profits from skins and CS:GO sales. (Compl. ¶ 158.)

## II. THE REQUIREMENTS FOR REMOVAL UNDER CAFA ARE SATISFIED

12. This Court has jurisdiction over this matter under CAFA, 28 U.S.C. § 1332(d), because each requirement for the exercise of jurisdiction has been met. This lawsuit is a "class

NOTICE OF REMOVAL - (No. ) - 3

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

action" within the definition of CAFA, there is minimal diversity of citizenship, and the amount in controversy exceeds $5 million.

### A. "Class Action"

13. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). This matter is a "class action" under CAFA because Plaintiffs specifically plead that they bring their claims as a class action on behalf of themselves and "all others similarly situated" pursuant to Washington CR 23, Washington's equivalent of Rule 23 of the Federal Rules of Civil Procedure. (Compl. ¶ 103.)

### B. Diversity of Citizenship and Class Exceeding 100 Members

14. Minimal diversity exists between the putative class and Valve as required by 28 U.S.C. § 1332(d)(2). CAFA requires only that *one* member of the class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). In this case, minimal diversity exists because all three of the named plaintiffs are citizens of states other than Washington. (Compl. ¶¶ 13-15.)

15. CAFA further requires that the proposed class includes at least 100 members. 28 U.S.C. § 1332(d)(5). Plaintiffs' allegations that "millions of Americans" have been affected by Valve's actions (Compl. ¶¶ 3, 106) satisfy CAFA's numerosity requirement. *See Kuxhausen v. BMW Fin. Servs. NA LLC,* 707 F.3d 1136, 1140 (9th Cir. 2013) (plaintiff's allegation that it sought to provide relief to "hundreds of affected consumers" satisfied the numerosity requirement).

### C. Amount in Controversy

16. CAFA requires that the amount in controversy exceed $5 million exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated to determine whether that threshold is met. 28 U.S.C. § 1332(d)(6). Though Valve

NOTICE OF REMOVAL - (No. ) - 4

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1  disputes liability and damages, the amount put in controversy by the claims of Plaintiffs and the
2  putative class far exceeds CAFA's $5 million amount in controversy threshold.

3       17.     The relevant question for removal purposes is what amount is put in controversy
4  by the complaint, and not what a defendant will actually owe. *See, e.g., Sanchez v. Monumental*
5  *Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996) (defendant's removal is proper where evidence
6  allows the court "to determine the extent of the loss which it *might* incur" *if* plaintiff is
7  successful) (emphasis added); *Fong v. Regis Corp*., No. C 13-04497 RS, 2014 WL 26996, at *2
8  (N.D. Cal. Jan. 2, 2014) ("When measuring the amount in controversy, a court must assume that
9  the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all
10 claims made in the complaint").

11      18.     Analysis of the amount in controversy starts with the allegations in the complaint.
12 *Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015). Where the complaint
13 does not plead a specific amount in controversy, a defendant is entitled to rely on a chain of
14 reasoning, including assumptions, to satisfy its burden of proving that the amount in controversy
15 more likely than not exceeds the jurisdictional threshold. *LaCross v. Knight Transp., Inc.,* 775
16 F.3d 1200, 1201 (9th Cir. 2015).

17      19.     A notice of removal need only include a plausible allegation that the amount in
18 controversy exceeds CAFA's $5 million amount in controversy threshold, and need not include
19 actual evidence establishing that amount. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.
20 Ct. 547, 554 (2014). "[T]he Supreme Court has said that a defendant can establish the amount in
21 controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of
22 removal." *Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1197-98 (9th Cir. 2015) (citing
23 *Dart*, 135 S. Ct. at 554-55). If the basis for jurisdiction is challenged, the removing defendant
24 need only show by a preponderance of the evidence that the amount in controversy exceeds $5
25 million. *Id.* at 1196 (quoting *Dart*, 135 S. Ct. at 554). "The preponderance of the evidence
26 standard is not daunting, and only requires that the defendant provide evidence establishing that

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1  it is more likely than not that the amount in controversy exceeds $5,000,000." *Kogan v. Allstate Fire & Cas. Ins. Co.,* No. C15-5559 BHS, 2015 WL 6870760, at *2 (W.D. Wash. Nov. 9, 2015) (internal editing and quotation marks omitted).

20. Exemplary or punitive damages are included in determining the amount in controversy. *See Burke Family Living Trust v. Metro. Life Ins. Co.*, No. C09-5388 FDB, 2009 WL 2947196, at *3 (W.D. Wash. Sept. 11, 2009); *Peck v. Cingular Wireless, LLC,* No. 09-0106, 2009 WL 775385, at *2 (W.D. Wash. Mar. 20, 2009); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000). Here, Plaintiffs bring claims under the CPA, which authorizes the court to increase any damages award up to three times the actual damages sustained, to a maximum of $25,000. RCW 19.86.090. Courts can award CPA treble damages to each putative class member, not just the class representatives. *See, e.g., Smith v. Behr*, 113 Wn. App. 306, 345-46, 54 P.3d 665 (2002); *Peck*, 2009 WL 775385, at *2. Therefore, if Plaintiffs put even $1.67 million in principal damages in controversy, the $5 million threshold is met when CPA trebling is taken into account.

21. Plaintiffs' alleged principal damages readily meet the $5 million amount in controversy jurisdictional requirement. Plaintiffs seek monetary recovery for gambling losses, the cost of skins purchases, the allegedly inflated prices paid for Skins, and fees related to skins transactions. Plaintiffs also seek disgorgement of Valve's profits from increased sales that resulted from the alleged gambling economy. (*See* Compl. ¶¶ 107, 130, 140, 148, 158.)

      i. *Plaintiffs' Claims for Recovery of Gambling Losses Put More than $5 Million in Controversy.*

22. Plaintiffs allege that over $33 million has been wagered on skins gambling on the CSGOLounge third-party website. (Compl. ¶ 33.) Because every wager has a winner and a loser, at least $33 million in skins must have been lost on gambling on CSGOLounge alone. But Plaintiffs specifically identify six other third-party websites where they claim skins gambling also took place. (Compl. ¶ 3.) If the volume of skins gambling on these six other websites was

NOTICE OF REMOVAL - (No. ) - 6
4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

similar to that allegedly occurring on CSGOLounge, over $200 million in wagers were made, resulting in over $200 million in gambling losses.

23. If even a small portion of those total gambling losses were incurred by United States residents, the amount in controversy requirement is readily met. The Complaint does not plead the total gambling losses incurred by United States residents. Valve does not own or operate any third-party skins gambling website, and therefore has no records of the skins actually wagered or lost by Plaintiffs or the putative class members. However, Valve has records of total CS:GO purchases that can be segregated between the United States and the rest of the world. Valve's business records show that approximately 20% (by unit) of all CS:GO game sales were in the United States. If 20% of the $33 million in gambling losses on CSGOLounge were suffered by putative class members who seek to recover those losses from Valve, the amount in controversy would be $6.6 million—and that total swells to nearly $20 million when CPA treble damages are included. Indeed, even if just over 5% of the wagers on CSGOLounge were made by class members, the jurisdictional amount in controversy threshold would be met ($33 million * 5.1% = $1.683 million * 3 = $5,049,000). That already large amount in controversy swells significantly when gambling losses on the six other third-party skins gambling sites identified in the Complaint are added in. These facts show, more likely than not, that between 5.1% and 20% of the alleged gambling losses were incurred by United States residents who are members of the putative class.

24. In addition, the named Plaintiffs claim they personally suffered substantial skins gambling losses and allege that their experiences are representative of the entire putative class. Plaintiff E.B. claims he lost over $3,000 worth of skins through gambling; trebled under the CPA, his alleged damages from gambling losses alone exceed $9,000. Plaintiff J.P. alleges losses twice as high, claiming he lost over $6,000 worth of skins through gambling, for an $18,000 potential recovery when trebled under the CPA. If Plaintiff E.B.'s gambling losses are representative of the gambling losses incurred by the rest of the class, a class of just 556 people

NOTICE OF REMOVAL - (No. ) - 7

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

meets the amount in controversy requirement ($9,000 * 556 = $5,004,000).  A class of half that size—only 278 people—meets the amount in controversy requirement if class members incurred gambling losses similar to Plaintiff J.P.  But Plaintiffs suggest their class is far bigger, alleging that "Plaintiffs' experiences are typical and representative of the hundreds of thousands, if not millions, of skins gambling users from the United States and the world."  (Compl. ¶ 102.)  Plaintiffs' gambling loss claims readily satisfy the amount in controversy requirement.

          *ii.*    *Plaintiffs' Alleged Damages From Losses on Skins Purchases and Fees Paid Satisfy the Amount in Controversy Requirement.*

25.    Plaintiffs also claim damages based on their purchase of skins.  (Compl. ¶ 130.)  Plaintiffs claim the average value of skins traded to third-party websites for gambling is $9.75 each (Compl. ¶ 33), and allege that "keys" cost $2.50 each.  (Compl. ¶ 29.)  Minor Plaintiffs C.L., J.P. and E.B. allege they each bought multiple skins and bought multiple "keys" from Valve to open cases to access other skins.  (Compl. ¶¶ 99-101.)  If, like them, each putative class member bought at least two skins and two keys, the potential damages per class based on the purchase of skins alone would be at least $73.50 (2 skins @ $9.75 each + 2 keys @ $5 each = $24.50 * 3 =$73.50).  The $5 million jurisdictional threshold is reached from skin purchase damages alone with a class of only 68,028 United States residents—far less than the "hundreds of thousands, if not millions" of skins gamblers, (Compl. ¶ 102), and the "millions of Americans" who have been affected by Valve's actions, (Compl. ¶¶ 3, 106), described in the Complaint.

26.    Plaintiffs also seek damages in the amount of fees paid on skins sales and seek disgorgement from Valve of all such fees paid by putative class members.  (Compl. ¶¶ 157-58.)  Plaintiffs claim Valve charges a 15% fee on any sales of skins through Steam or in the Steam Marketplace.  (Compl. ¶ 37.)  If Valve charged a 15% fee on the sale of the $33 million in skins that Plaintiffs claim was wagered on CSGOLounge, those fees would total $4.95 million.  Even if only 20% of those were to United States residents within the class, that would still put nearly

NOTICE OF REMOVAL - (No. ) - 8

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

$3 million in controversy when CPA trebling is taken into account—and that calculation includes only the skins bet on one of the seven third-party gambling websites. If Valve also collected similar amounts of fees on sales of skins gambled on the other six third-party gambling sites identified in the Complaint, the amount in controversy requirement is readily established.

          *iii.*    *Plaintiffs' Prayer for Disgorgement of Profits Also Satisfies the Amount in Controversy Requirement.*

27.    In addition, Plaintiffs claim that Valve earned more than $567 million in revenue from the sales of CS:GO, and claim those sales were boosted dramatically by alleged skins gambling. (Compl. ¶¶ 25, 152.) Plaintiffs seek disgorgement of an unspecified amount of Valve's profits related to the alleged skins gambling. (Compl. ¶ 158.) If 20% of those sales were to United States residents within the class—roughly $113 million—the jurisdictional threshold is readily met if less than 5% of the revenues attributable to United States sales are held to be unjust enrichment from the actions alleged in the Complaint.

          *iv.*    *Plaintiffs' Request for Attorneys' Fees Further Increases the Amount in Controversy.*

28.    Plaintiffs seek attorneys' fees "as permitted by law." (Compl. at 39.) "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Washington's Gambling Act and the CPA both authorize an award of attorneys' fees to a prevailing plaintiff. *See* RCW 9.46.200 (Gambling Act); RCW 19.86.090 (CPA). Plaintiffs' potential recovery of statutory attorney fees pushes the amount in controversy further over the jurisdictional threshold.

### III.   CAFA EXCEPTIONS DO NOT APPLY

29.    Plaintiffs bear the burden of establishing that an exception to CAFA jurisdiction applies. *See Mondragon v. Capital One Auto Fin.,* 736 F.3d 880, 883 (9th Cir. 2013) ("[T]he burden of proof for establishing the applicability of an exception to CAFA jurisdiction rests on the party seeking remand, which in this case, as in most cases, is the plaintiff.") The mandatory

NOTICE OF REMOVAL - (No. ) - 9

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

"local controversy" and "home-state controversy" exceptions to removal under 28 U.S.C. §§ 1332(d)(4)(A) and 1332(d)(4)(B) and the discretionary "totality of circumstances" exception to removal set forth in 28 U.S.C. § 1332(d)(3) do not apply to this case because fewer than two-thirds of the putative class members are citizens of Washington. None of the named Plaintiffs are Washington residents, and nothing in the Complaint even suggests that a majority of the putative class members are Washington residents. Rather, Plaintiffs seek to represent a nationwide class and plead that Valve's actions affected "millions of Americans." (*See* Compl. ¶¶ 3, 106, 113.) *See, e.g., Birdsong v. Apple, Inc.,* 590 F.3d 955, 957 & n.1 (9th Cir. 2009) (CAFA's exceptions to federal jurisdiction did not apply to a nationwide class); *Higdon v. Pac. Bell Tel. Co.,* No. C 08-03526 RS, 2010 WL 2077195, at *3 (N.D. Cal. May 20, 2010) (positing a nationwide class in a complaint invokes CAFA jurisdiction).

### IV.     PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

30.     Removal is timely under 28 U.S.C. §§ 1446(b) and 1453 because the Complaint is the first pleading, motion, order, or other paper from which it could be ascertained that this action is removable. Valve accepted service of the Summons and Complaint on December 2, 2016 through counsel. This Notice of Removal is filed within thirty days of service of the Complaint. In addition, venue is appropriate here because the defendant's principal place of business in this judicial district. 28 U.S.C. § 1391(a).

31.     Pursuant to 28 U.S.C. § 1446(a) and Local Rule 101(b), Valve attaches the following documents to this Notice of Removal: (1) copies of all state court pleadings and process in this matter (Exhibit 1); and (2) Valve's Notice of Filing of Notice of Removal filed in state court (omitting exhibits) (Exhibit 2). Counsel for Valve hereby verifies that these Exhibits are true and complete copies of all the records and proceedings in the state court proceeding. Counsel for Valve will file a copy of the operative complaint attached as a separate "attachment" in the electronic filing system and labeled as the "complaint" contemporaneously with this Notice of Removal in accordance with Local Rule 101(b).

NOTICE OF REMOVAL - (No. ) - 10

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

32. A copy of this Notice of Removal is being filed with the Clerk of the King County Superior Court and is being served under 28 U.S.C. § 1446(d).

33. <u>Intradistrict Assignment</u>: Pursuant to Local Rule 101(e), this case should be assigned to the Seattle Division because the case is removed from King County Superior Court. The named plaintiffs are residents of DuPage County, Illinois; Linn County, Oregon; and St. Louis County, Missouri. (Compl. ¶¶ 14–15). Valve is a Washington corporation and conducts business in King County, Washington. (Compl. ¶ 12.)

For the foregoing reasons, Valve hereby removes this action from the Superior Court of the State of Washington, King County, to this Court.

DATED this 20th day of December, 2016.

RIDDELL WILLIAMS P.S.

By  */s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766

By  */s/ Sarah E. Joye*
Sarah E. Joye, WSBA #44357

By  */s/ James H. Wendell*
James H. Wendell, WSBA #46489

Attorneys for Defendant Valve Corporation

NOTICE OF REMOVAL - (No. ) - 11

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Riddell Williams P.S. in Seattle, Washington. I am a U.S. citizen over the age of eighteen years and not a party to the within cause. On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

| Service List | |
|---|---|
| Kim D. Stephens, WSBA #11984<br>Jason T. Dennett, WSBA #30686<br>**TOUSLEY BRAIN STEPHENS PLLC**<br>1700 Seventh Avenue, Suite 2200<br>Seattle, WA 98101<br>Tel: (206) 682-5600<br>Fax: (206) 682-2992<br>kstephens@tousley.com<br>jdennett@tousley.com<br><br>*Attorneys for Plaintiffs* | ☒ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |
| Jasper D. Ward IV<br>Alex C. Davis<br>Patrick Walsh<br>**JONES WARD PLC**<br>Marion E. Taylor Building<br>312 S. Fourth Street, Sixth Floor<br>Louisville, Kentucky 40202<br>Tel. (502) 882-6000<br>Fax (502) 587-2007<br>jasper@jonesward.com<br>alex@jonesward.com<br>patrick@jonesward.com<br><br>*Attorneys for Plaintiffs* | ☒ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

NOTICE OF REMOVAL - (No. ) - 12

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

| | |
|---|---|
| Paul C. Whalen (PW1300)<br>**LAW OFFICE OF PAUL C. WHALEN, P.C.**<br>768 Plandome Road<br>Manhasset, NY 11030<br>Tel. (516) 426-6870<br>Fax (212) 658-9685<br>pcwhalen@gmail.com<br><br>*Attorneys for Plaintiffs* | ☒ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

EXECUTED this 20th day of December, 2016, in Seattle, Washington.

_____
Courtney R. Tracy

NOTICE OF REMOVAL - (No. ) - 13

4824-5228-4477.04
122016/1013/63478.00052

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600