1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

G.G., A.L., and B.S., individually and on behalf
of all others similarly situated,

No. 2:16-cv-01941-RSL

11

Plaintiffs,

**VALVE CORPORATION'S
MOTION TO COMPEL
ARBITRATION**

12

v.

13

VALVE CORPORATION, a Washington
corporation,

NOTE ON MOTION CALENDAR:
JANUARY 20, 2017

14

15

Defendant.

16

17

18

19

20

21

22

23

24

25

26

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (No. 2:16-cv-01941-RSL)
63478.00052
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND RELIEF REQUESTED ............................................................ 1

II.   RELEVANT BACKGROUND ............................................................................... 2

     A.     Steam Subscribers Agree to Arbitrate All Disputes .............................. 2

           1.     Valve, Steam, CS:GO and Skins ................................................ 2

           2.     Every Steam Subscriber, CS:GO Purchaser, and Skin Buyer Agrees to the SSA ...................................................................... 3

                a.     Agreement to the SSA When Creating a Steam Account ............. 3

                b.     Agreement to the SSA When Purchasing Game Subscriptions or Digital Content .................................... 4

                c.     Agreement to the SSA When Purchasing Skins From Other Steam Subscribers ............................................... 4

           3.     The SSA Requires Arbitration of All Disputes ........................... 4

     B.     Procedural Background and Plaintiffs' Allegations ............................. 7

III.   ARGUMENT ......................................................................................... 8

     A.     There is A Valid and Enforceable Arbitration Agreement Between Plaintiffs and Valve ........................................................................ 9

           1.     The SSA Is Valid; Plaintiffs Were Presented with It and Agreed to It Multiple Times ................................................. 9

           2.     The Arbitration Agreement is Enforceable Against All Plaintiffs .......... 10

                a.     The SSA is Enforceable Against the Minor Plaintiffs ................ 10

                b.     The Parent Plaintiffs Must Arbitrate Their Claims ..................... 13

                c.     Valve Did Not Waive its Right to Enforce the SSA Against Plaintiffs ............................................................... 15

     B.     Plaintiffs' Claims are Within the Scope of the SSA's Broad Arbitration Provision, Satisfying the Second Prong of the FAA Test .................................... 16

     C.     All Claims Against Valve Should be Stayed Pending Arbitration ..................... 20

IV.   CONCLUSION ....................................................................................... 20

## I.      INTRODUCTION AND RELIEF REQUESTED

Plaintiffs—video game players and their parents—sued Valve Corporation ("Valve") over the popular video game Counter-Strike: Global Offensive ("CS:GO"), which Valve developed and distributes over its Steam digital distribution and online gaming platform.  In subscribing to Steam, in buying a license to play CS:GO, and in purchasing virtual items or other digital content on Steam, Plaintiffs repeatedly agreed to Valve's Steam Subscriber Agreement ("SSA") and its requirement to arbitrate "all disputes and claims" against Valve.  Yet instead of commencing arbitration as agreed, Plaintiffs sued in court.

Plaintiffs seek to evade arbitration by claiming that the SSA's arbitration clause cannot be enforced against the three minor Plaintiffs because they disaffirmed their contractual obligation in their complaint, or against their parents because they never saw or agreed to the SSA their children accepted.  But Washington law does not permit minors to accept the benefits of a contract—here, the right to play and enjoy Valve's video games and its Steam network— while disaffirming the contractual obligations they (or, here, their lawyers) do not like.  Nor does Washington law permit parents to sue over claims arising from their children's contractual relationship with Valve while avoiding the obligations in that contract.  Equitable estoppel binds the parents to the arbitration agreement.

This case is virtually identical to four prior lawsuits the same lawyers brought against Valve and seeks the same proposed class.  But in bringing this case, they jettisoned all adult Steam subscribers as named plaintiffs in an effort to avoid arbitration, yet they seek certification of the same class, which includes adult Steam subscribers as well as minors.  Plaintiffs' maneuvering fails because the SSA binds *all* proposed class members, including the minor and parent Plaintiffs here.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, contains a strong public policy in support of arbitration when there is a valid arbitration agreement and the dispute falls within the scope of that agreement.  The SSA readily satisfies both criteria.  Accordingly, Valve

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 1
63478.00052
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

moves the Court for an order:  (1) compelling Plaintiffs to arbitrate all claims against Valve pursuant to the arbitration agreement in the SSA, which Plaintiffs agreed to and which lies at the core of their claims, and (2) staying all claims against Valve pending arbitration.

## II.    RELEVANT BACKGROUND

### A.    Steam Subscribers Agree to Arbitrate All Disputes.

#### 1.    *Valve, Steam, CS:GO and Skins.*

Valve develops and distributes video games and other content for use on personal computers.  (Declaration of Christopher Boyd ("Boyd Decl.") ¶ 3.)  Valve also operates the Steam digital distribution and online gaming platform.  (*Id.*)  Over 4000 game titles are available on Steam.  (*Id.*)  Steam includes an online store, where users can purchase subscriptions to games.  (*Id.*)  Steam also features a "Steam Wallet" for virtual Steam currency that subscribers can purchase using various payment methods.  (*Id.*)  That virtual currency can then be later used to purchase digital content and subscriptions to games.  (*Id.*)

CS:GO is a video game developed and distributed by Valve.  (*Id.* ¶ 4.)  It is a multiplayer first-person shooter video game where teams compete to eliminate the enemy team or complete objectives.  (*Id.*)  Steam subscribers must have a subscription to CS:GO in order to play.  (*Id.*)

In 2013, Valve introduced virtual items called "skins" into CS:GO.  (*Id.* ¶ 5.)  "Skins" are virtual CS:GO weapons that have different finishes or textures.  (*Id.*)  They are entirely cosmetic and do not affect gameplay; they only change how weapons look.  (*Id.*)  For example, the picture on the left shows a pistol used in CS:GO without a skin, while the right shows it with a skin:

 

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 2
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

Skins can be acquired in a number of different ways.  Among other ways, they can be collected when playing CS:GO, e.g., through random "drops" or by opening weapon "crates" during game play.  (*Id*. ¶ 5.)  Skins can be acquired through trades with other players over Steam using CS:GO's trade feature.  (*Id*.)  And Steam subscribers can "buy" and "sell" skins to and from each other in the Steam Community Market using virtual Steam currency in their Steam Wallet.  (*Id*.)

> 2.  *Every Steam Subscriber, CS:GO Purchaser, and Skin Buyer Agrees to the SSA.*

> a.  Agreement to the SSA When Creating a Steam Account.

To use Steam, a user must first create a Steam account, which requires accepting the SSA[1] and its prominently displayed arbitration clause.  (Boyd Decl. ¶¶ 6, 8.)  A user can create a Steam account in two ways, either:  (1) create an account on the "Create an Account" webpage accessible through the Steam website at http://store.steampowered.com; or (2) create an account through the "Steam client," a software program that the user installs on his or her computer.  (*Id*. ¶ 6.)  In both of these methods, the user is presented with the SSA, asked to "[p]lease review" or "[p]lease read" the agreement, and then click an "I agree" box.  (*Id*. ¶¶ 6-9.)

A Steam account cannot be created unless a subscriber either:  (1) accepts the SSA on the "Create an Account" webpage by clicking a box under the SSA saying, "I agree AND am 13 years of age or older"; or (2) accepts the SSA by clicking a button under it labeled "I AGREE" when creating a Steam account on his or her computer.  (*Id*. ¶¶ 6-9.)  Either way, it is impossible to create a Steam account without clicking "I agree" in lower case or capital letters.  (*Id*.)

---

[1] The current version of the Steam Subscriber Agreement, which became effective on January 1, 2016, is attached to the Boyd Declaration as Exhibit G.  All prior versions since January 1, 2013 are attached as Exhibit H.

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 3
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

b.      Agreement to the SSA When Purchasing Game Subscriptions or Digital Content.

After setting up an account, a Steam subscriber may purchase subscriptions to CS:GO or other video games or digital content on Steam, but must agree anew to the SSA with each purchase by clicking a box that states, "I agree to the terms of the Steam Subscriber Agreement." (Boyd Decl. ¶ 11.)  The SSA is hyperlinked to the words "Steam Subscriber Agreement," which means clicking on those words opens a webpage containing the SSA's full text.  (*Id*. & Ex. D.) If a subscriber does not click the "I agree" box at checkout, the screen refreshes and a notice appears at the top of the webpage, saying, "You must agree to the terms of the Steam Subscriber Agreement to complete this transaction."  (*Id*. ¶ 12 & Ex. E.)

c.      Agreement to the SSA When Purchasing Skins From Other Steam Subscribers.

Steam subscribers who purchase CS:GO skins through Steam's Community Market are required to accept the SSA yet again by clicking the "I agree to the terms of the Steam Subscriber Agreement" box, hyperlinked to the SSA as before.  (Boyd Decl. ¶ 13.)  Otherwise, the notice requiring agreement to the SSA appears and the transaction does not proceed.  (*Id*.)

As a result, Steam subscribers typically agree to the SSA at least twice before they can even start playing CS:GO, and often agree *three or more times* before completing the purchase of any virtual items—first at account creation, again when purchasing a CS:GO subscription, and again before each purchase.

3.      *The SSA Requires Arbitration of All Disputes.*

The SSA grants Steam users a license to use Steam and the content and services available on Steam, such as CS:GO and skins.  (SSA ¶¶ 1(B), 2(A) (Boyd Decl., Ex. G).)  But the granting of that license is conditioned upon their agreement to arbitrate all disputes.  The arbitration agreement is conspicuous, clear, and consumer-friendly, and every version of the SSA in effect during the proposed class period includes an arbitration provision and a notice of that provision in capital letters near the top of the first page.  (Boyd Decl. ¶ 15 & Ex. H.)

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 4
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

The SSA's introductory paragraph directs Steam subscribers right to the arbitration provision: "SECTION 11 CONTAINS A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER. IT MAY AFFECT YOUR LEGAL RIGHTS. PLEASE READ IT." (SSA at 1.) That language is visible to everyone who signs up for a Steam account, regardless of whether they scroll through the whole SSA. (*See* Boyd Decl. at Exs. A & C.) For example, that language is conspicuously shown on the Create Account screen seen when creating a Steam account online through the Steam website (highlighted in the callout box):





(Boyd Decl., Ex. A.) The same conspicuous notice appears in the same place on the screen shown in the screenshot in Paragraph 93 of the Complaint, though it is blurred out in the picture Plaintiffs used. (*See* Compl. ¶ 93.)

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 5
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

Section 11 of the SSA is titled "DISPUTE RESOLUTION/BINDING ARBITRATION/CLASS ACTION WAIVER" and states in part, in capital letters:

> YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN INDIVIDUAL BINDING ARBITRATION.  THAT INCLUDES, BUT IS NOT LIMITED TO, ANY CLAIMS ARISING OUT OF OR RELATING TO: (i) ANY ASPECT OF THE RELATIONSHIP BETWEEN US; (ii) THIS AGREEMENT; OR (iii) YOUR USE OF STEAM, YOUR ACCOUNT OR THE CONTENT AND SERVICES. IT APPLIES REGARDLESS OF WHETHER SUCH CLAIMS ARE BASED IN CONTRACT, TORT, STATUTE, FRAUD, UNFAIR COMPETITION, MISREPRESENTATION OR ANY OTHER LEGAL THEORY.

It also explains that the FAA applies to the arbitration provision, and provides that the "[t]he arbitration will be governed by the Commercial Arbitration Rules of the American Arbitration Association ('AAA') and, where applicable, the AAA's Supplementary Procedures for Consumer Related Disputes, as modified by this Agreement."  (*Id.*)  The SSA even hyperlinks to the AAA website for ease of access.  (*Id.*)

Section 11 includes other consumer-friendly provisions and plain language explanations of the parties' arbitration agreement, such as:

- Agreeing that arbitration may be conducted by phone, on documents, or in person in the county where the Steam subscriber lives or at another agreed location.  (*Id.*)

- Agreeing Valve will pay all arbitration costs of claims under $10,000, and not seek attorney fees or costs on such claims, unless the arbitrator determines they are frivolous.  (*Id.*)

- Describing the differences between arbitration and court proceedings in plain English.  (*Id.*)

- Explaining that Steam subscribers and Valve are waiving their rights to a trial in court.  ("YOU UNDERSTAND THAT YOU AND VALVE ARE GIVING UP THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BEFORE A JUDGE OR JURY.")  (*Id.*)

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 6
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

It also includes a conspicuous class action waiver and agreement to arbitrate claims individually:

> YOU AND VALVE AGREE NOT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION OR COLLECTIVE ARBITRATION, EVEN IF AAA's PROCEDURES OR RULES WOULD OTHERWISE ALLOW ONE.  THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT OF THAT PARTY'S INDIVIDUAL CLAIM.  You and Valve also agree not to seek to combine any action or arbitration with any other action or arbitration without the consent of all parties to this Agreement and all other actions or arbitrations.

### B.  Procedural Background and Plaintiffs' Allegations.

This is the fifth similar class action filed against Valve alleging that it facilitates online gambling of "skins" through CS:GO and Steam.  The same plaintiffs' law firm filed virtually identical lawsuits against Valve on behalf of the same proposed national class in Connecticut, Florida, and New Jersey earlier this year.  Plaintiffs then dismissed those cases and refiled a new consolidated case in this District.  (*McLeod v. Valve Corporation,* WAWD Case No. C16-1227 JCC.)  That case was dismissed without prejudice after this Court dismissed the plaintiffs' RICO claim (their sole federal claim).  Plaintiffs then re-filed state-law claims in King County Superior Court on behalf of the same proposed national class, and Valve removed that case to this Court. (Dkt. 1.)

The named Plaintiffs in this case come from Illinois, Oregon and Missouri.  (Compl. ¶¶ 13-15, 99-101.)  Three are Steam subscribers who are minors; the other three are their parents. (*Id.*)  As in the prior lawsuits, Plaintiffs claim, wrongly, that Valve facilitates illegal gambling on third-party websites that use Steam's item-trading feature to let Steam users gamble their virtual "skins" on the outcome of CS:GO matches and games of chance.  (Compl. ¶¶ 3, 5, 42-43, 46.) Plaintiffs claim—wrongly—that Valve profits from such gambling or has business relationships with third-party gambling websites.  (*See generally* Compl. ¶¶ 10, 44-48.)

VALVE CORPORATION'S MOTION TO COMPEL ARBITRATION - (2:16-cv-01941-RSL) - 7
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

1    The three minor Plaintiffs allege that they purchased skins then gambled and lost them on

2    third-party websites.  (Compl. ¶¶ 99-101.)  The three parent Plaintiffs claim they gave the minor

3    Plaintiffs money to buy those skins, and that they lost their money when the minor Plaintiffs lost

4    the skins in gambling.  (*Id.*)  Plaintiffs purport to bring this suit as a class action on behalf of a

5    class defined as "All persons in the United States ("National Class") and/or in Washington

6    ("Washington Subclass") who (1) purchased Skins or (2) are parents/guardians of a minor child

7    who purchased Skins."  (Compl. ¶ 113.)

8    Plaintiffs' Complaint alleges six separate claims against Valve:  (1) violation of the

9    Consumer Protection Act, Ch. 19.86 RCW; (2) violation of RCW 4.24.070; (3) violation of the

10   Gambling Act of 1973, Ch. 9.46 RCW; (4) unjust enrichment; (5) negligence; and (6)

11   declaratory relief that the SSA is invalid as to certain Plaintiffs.

12   **III.    ARGUMENT**

13   The FAA "establishes a national policy favoring arbitration when the parties contract for

14   that mode of dispute resolution" and it applies to all federal and state court proceedings.  *Preston*

15   *v. Ferrer*, 552 U.S. 346, 349 (2008).  Courts should "'rigorously enforce' arbitration agreements

16   according to their terms" to further the FAA's strong policy favoring arbitration.  *Am. Express*

17   *Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).  To do so, courts must "place

18   arbitration provisions on the same footing as all other contractual provisions," and must

19   "ensur[e] that private arbitrations are enforced."  *Mortensen v. Bresnan Commc'ns, LLC*, 722

20   F.3d 1151, 1159 (9th Cir. 2013) (internal quotations omitted).

21   The Ninth Circuit has embraced the strong public policy favoring arbitration by enforcing

22   arbitration agreements.  *See, e.g.*, *Mortensen*, 722 F.3d at 1159-60; *Ferguson v. Corinthian*

23   *Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1160-61 (9th

24   Cir. 2012).  This Court too has enforced arbitration agreements in consumer contracts.  *See, e.g.*,

25   *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172 (W.D. Wash. 2014) (Coughenour, J.)

26   (compelling arbitration in a putative consumer class action and recognizing district court's

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 8
4839-4895-0846.01
122716/1056/63478.00052

limited discretion to disregard valid arbitration agreements under *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and Ninth Circuit law); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632, at *2 (W.D. Wash. Mar. 22, 2013) (Coughenour, J.) (enforcing arbitration agreement in putative consumer class action asserting TCPA and FDCPA claims); *see also Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013) (Pechman, J.) (noting "there is a presumption of arbitrability" where a contract contains an arbitration clause and instructing that "the most minimal indication of the parties' intent to arbitrate must be given full effect").

The arbitration agreement in the SSA should similarly be enforced. Under the FAA, a court's role is limited to making two inquiries in deciding whether to enforce an arbitration agreement: (1) does a valid agreement to arbitrate exist and, if so, (2) does the current dispute fall within the scope of that agreement? *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[2] When, as here, an arbitration provision satisfies these conditions, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration …" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

A. **There is A Valid and Enforceable Arbitration Agreement Between Plaintiffs and Valve.**

1. *The SSA Is Valid; Plaintiffs Were Presented with It and Agreed to It Multiple Times.*

The SSA is at the center of Plaintiffs' relationship with Valve. It grants the license right to use Steam and Valve's other content and services (CS:GO, skins) that are at the heart of

---

[2] The existence and interpretation of the arbitration agreement is governed by Washington law pursuant to the SSA's choice of law provision. (SSA ¶ 10.) Washington law uses the most significant relationship test to determine whether a contractual choice of law provision is effective. *See Coppock*, 2013 WL 1192632, at *2. Washington law applies under that test because Washington has a substantial relationship to the parties (Valve is based here) and no other state with contrary policy interests has a materially greater interest in the outcome of this dispute than Washington. *See* Restatement (Second) of Conflict of Laws § 187(2) (1971).

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 9
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Plaintiffs' case.  (SSA ¶¶ 1(B), 2(A).)  The SSA defines the scope of that license and specifies the conditions upon which it is granted—including the condition that Steam subscribers agree to arbitrate "all disputes and claims" with Valve.  (SSA ¶ 11.)  Plaintiffs accepted that condition by agreeing to the SSA, forming a valid and enforceable arbitration agreement.

The SSA, which every Steam subscriber accepts by clicking "I agree," is known as a "clickwrap" agreement.  *Kwan v. Clearwire Corp.*, No. C09-1392JLR, 2012 WL 32380, at *7 (W.D. Wash. Jan. 3, 2012).  Courts in this District follow the overwhelming authority from jurisdictions across the country in holding that clickwrap agreements are enforceable.  *Ekin*, 84 F. Supp. 3d at 1175 n.5 (acknowledging "this District's recognition of the Ninth Circuit rule that similar 'clickwrap' agreements are completely enforceable"); *Day v. Microsoft Corp.*, No. C13-478-RSM, 2014 WL 243159, at *2 (W.D. Wash. Jan. 22, 2014) (enforcing arbitration provision in online clickwrap agreement).

> ### 2.     The Arbitration Agreement is Enforceable Against All Plaintiffs.

A party opposing application of a valid arbitration agreement bears the burden of showing that the agreement is unenforceable.  *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash. 2004) (citations omitted).  Under the FAA, an arbitration provision may be deemed unenforceable only through "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration."  *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

> #### a.     The SSA is Enforceable Against the Minor Plaintiffs.

Plaintiffs do not deny that the minor Plaintiffs were presented with the SSA or that they clicked "I Agree" to accept it (likely multiple times when they created their Steam accounts,

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 10
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

bought a subscription to CS:GO, and purchased virtual skins).  Instead, Plaintiffs seek to evade the arbitration clause in that agreement while retaining all of the SSA's benefits—including the right to acquire and play video games on the Steam platform.  (Compl. ¶¶ 164-172.)  Well-settled Washington law prevents this.

Under Washington law, contracts with minors are not void, but valid unless the minor disaffirms the contract within a reasonable time after attaining the age of majority.  *See* RCW 26.28.030 ("A minor is bound, not only by contracts for necessaries, but also by his or her other contracts, unless he or she disaffirms them within a reasonable time after he or she attains his or her majority … ."); *Finney v. Farmers Ins. Co.*, 586 P.2d 519, 524 (Wash. Ct. App. 1978) ("The contracts of a minor are not void, but voidable, and unless disaffirmed within a reasonable time after attaining majority, are valid."), *aff'd*, 600 P.2d 1272 (Wash. 1979).

The minor Plaintiffs purport to disaffirm the SSA, (Compl. ¶ 168), but their attempted disaffirmance is ineffective.  First, it is based on the false premise that "Plaintiffs have not received any benefit from the Subscriber Agreement" and the incorrect claim that the SSA is "not material" to their use of Steam or CS:GO.  (Compl. ¶¶ 166, 168-169).  The SSA is *very* material and beneficial because Plaintiffs cannot use Steam and CS:GO without it.  The SSA grants Steam subscribers "a non-exclusive license and right, to use the Content and Services for your personal, non-commercial use," until termination of the SSA.  (SSA ¶ 2(A).)  "Content and Services" include "[t]he Steam client software and any other software, content, and updates you download or access via Steam, including but not limited to Valve or third-party video games and in-game content, and any virtual items you trade, sell or purchase in a Steam Subscription Marketplace."  (SSA ¶ 1(B).)  Accordingly, all of the conduct on which Plaintiffs rest their claims derives from the license granted in the SSA, which is a significant and ongoing benefit.

Second, the minor Plaintiffs never purport to disaffirm the *entire* contract, just the parts their lawyers do not like.  (Compl. ¶ 168 (purporting to "disaffirm any waivers of rights, limitations on liability, dispute resolution, and/or the Subscriber Agreement as a whole to the

extent Plaintiffs have not received any benefit from the Subscriber Agreement.").)  Washington law does not recognize "partial disaffirmance" or allow any contracting party, including a minor, to disaffirm only obligations.  Rather, "[i]f an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations."  5 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 9:14 at 126 & n.11 (4th ed. 2009 & Supp. 2016) (collecting cases); Joseph Perillo, *Contracts* § 8.3 at 264 (7th ed. 2014) ("The infant is not entitled to enforce portions that are favorable, and at the same time disaffirm other portions that are burdensome.")

Courts repeatedly reject attempts to disaffirm contractual obligations—including arbitration agreements—based on infancy at the time of contracting after a minor has received benefits under the contract, as here.  *See, e.g., E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899–900 (S.D. Ill. 2012) (minors could not disaffirm the forum-selection clause in Facebook's terms of service while continuing to use Facebook; "[t]he infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit"); *AV v. iParadigms, Ltd. Liability Co.*, 544 F. Supp. 2d 473, 481 (E.D. Va. 2008) (minors could not disaffirm the limitation of liability provision in an educational contract because they already received benefits under that contract of "receiv[ing] a grade from their teachers, allowing them the opportunity to maintain good standing in the classes in which they were enrolled" and "gain[ing] the benefit of standing to bring the present suit"), *aff'd in part and rev'd in part on other grounds*, 562 F.3d 630 (4th Cir. 2009); *Value Auto Credit, Inc. v. Talley*, 727 So. 2d 61, 61 (Ala. 1999) (car buyer, upon reaching majority, could not avoid only arbitration provision and ratify rest of contract); *Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 153–54 (N.D. Ill. 1997) (district court was "confident" that the Illinois Supreme Court would not permit plaintiffs to disaffirm employment contract containing arbitration provision where result would be that plaintiffs would retain the advantage of employment but repudiate the basis of that employment).

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 12
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Further, Washington law renders any purported disaffirmance ineffective unless Plaintiffs return to Valve "all money and property received by him or her by virtue of the contract …" RCW 26.28.030.  Plaintiffs continue to use Steam's content and services, exercising their license and other rights granted under the SSA. (Compl. ¶¶ 13-15, 171.)  Their continued use and exercise of the license granted in the SSA bars disaffirmance.  *See Snodderly v. Brotherton*, 21 P.2d 1036, 1037 (Wash. 1933) (for any minor seeking to disaffirm a contract, "the statute requires the minor to restore to the other party all money and other property received by him by virtue of the contract and remaining within his control"); *see also E.K.D.*, 885 F. Supp. 2d at 900 (rejecting minor plaintiffs' argument that they disaffirmed Facebook's Terms of Use by bringing the lawsuit against Facebook because plaintiffs "used and continue to use facebook.com").

### b.   The Parent Plaintiffs Must Arbitrate Their Claims.

The parent Plaintiffs purport to assert claims "both individually and as guardian[s]" for minor Plaintiffs. (Compl. ¶¶ 13-15.)  In either capacity, the parent Plaintiffs' claims are subject to the arbitration agreement because they are asserted on behalf of the minor children (and subject to binding arbitration for the reasons set forth above), or because they are entirely derivative of the minor Plaintiffs' claims.

All individual claims by the parent Plaintiffs arise from and through the ***minors'*** relationship with Valve, which in turn exists through the SSA and the license it grants.  The Complaint pleads facts (in summary form) about each minor plaintiff's use of Steam, CS:GO and skins, but it neither alleges any facts to establish the parent Plaintiffs' personal claims nor pleads facts to establish that Valve owed parents any independent duties or obligations. (Compl. ¶¶ 13-15, 99-102.)  Instead, it contains only a single, general assertion that the parent Plaintiffs "suffered financial harm" when "[m]inor children … used their parents' money for Skins gambling transactions…" (Compl. ¶ 98.)  Thus, the relationship giving rise to the parents' claims exists solely through the SSA, which licensed the minor Plaintiffs to use Steam.

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 13
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Equitable estoppel prevents the parent Plaintiffs from dodging arbitration by claiming they never expressly agreed to the SSA.  There would be no relationship between the minors and Valve—and therefore no possible derivative claims for the parents—but for the agreement to the SSA and its arbitration provision.  The minors accepted the benefit of the license granted in the SSA, and the parents' claims derive directly from the use of that license.  Because the parent Plaintiffs' claims are based on the same facts as the minor Plaintiffs' claims, they are estopped from denying the arbitration obligation that binds the minors and was a condition of Valve's granting the minors a license to use Steam and CS:GO.  *See International Paper Co. v. Schwabediessen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (enforcing the arbitration agreement in a purchase order between a dealer and a manufacturer against a nonsignatory customer under the doctrine of equitable estoppel because the purchase order "provide[d] part of the factual foundation for every claim asserted" by the customer); *Ritter v. Grady Automotive Group, Inc.*, 973 So. 2d 1058, 1065-66 (Ala. 2007) (nonsignatory husband was bound by arbitration agreement signed by his wife when his tort claims arose from the same breach of duties allegedly owed to her).[3]

On similar facts three months ago, the court in *Montoya v. Comcast Corp.*, No. 2:15-CV-02573-TLN-DB, 2016 WL 5340651 (E.D. Cal. Sept. 23, 2016), enforced the arbitration provision in Comcast's subscriber agreement against non-signatories who lived in a house that received Comcast cable service.  The non-signatories argued they were not bound by Comcast's subscriber agreement because they never saw or signed it.  The court rejected that argument, holding that the plaintiffs' knowing use and benefit from Comcast's services acted as consent to

---

[3] *See also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (enforcing forum-selection clause against non-parties where the alleged conduct of the non-parties was "so closely related to the contractual relationship that the forum-selection clause applies to all defendants"); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (non-signatories were bound by forum-selection clause because their interests were "completely derivative of" and "directly related to, if not predicated upon" those of a contracting party).

its obligations.  (*Id.* at \*5 ("Plaintiffs knowingly exploited Defendant's service and therefore accepted its terms by accepting the benefits of service.  Accordingly, the Plaintiffs are bound by the obligations of this contract, including the arbitration provision") (citation omitted).)  The court also held that the plaintiffs' claims were "intertwined" with the underlying contractual obligations because they "rely on, or presume the existence of, the underlying contract benefits or obligations."  (*Id.*) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009)).  Accordingly, arbitration was required because "by bringing forth these claims, and predicating them on the direct receipt of services from Defendant, Plaintiffs presume the existence of the underlying contract."  (*Id.* at \*6.)

Like the plaintiffs in *Montoya* who knowingly accepted the benefits of Comcast's services, the parent Plaintiffs here were aware of the minor Plaintiffs' use of Steam and CS:GO and pled that they gave the minors money to buy skins.  (Compl. ¶¶ 99-101.)  Similarly, the parent Plaintiffs' claims are intertwined with the underlying contractual benefits and obligations; as in *Montoya,* their claims are "predicat[ed] on the direct receipt of services from Defendant."  Because those services are delivered solely through the license granted by the SSA, Plaintiffs' claims necessary "presume the existence of the underlying contract."  As in *Montoya*, that contract should be enforced and the parent Plaintiffs required to arbitrate their claims.

c.      Valve Did Not Waive its Right to Enforce the SSA Against Plaintiffs.

Plaintiffs also vaguely assert that Valve waived its ability to enforce "any part" of the SSA against Plaintiffs because it has not stopped third parties from violating a provision in the SSA regarding acceptable use of Steam accounts.  (Compl. ¶¶ 88, 170.)  But whether Valve enforced one SSA provision about allowable use of Steam accounts against a third party cannot amount to Valve's waiver of the entirely separate arbitration provision in the unrelated Plaintiffs' SSAs.  Further, "[w]aiver of a contractual right to arbitration is not favored [and] any party arguing waiver of arbitration bears a heavy burden of proof."  *Fisher v. A.G. Becker Paribas*

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 15
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

*Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (citations omitted).  "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." (*Id.*) (citations omitted).  Where there is no evidence that Valve has acted inconsistently with its right to compel arbitration with Plaintiffs and Plaintiffs have not been prejudiced by any alleged inconsistent acts, Valve's right to arbitration remains.

### B.   Plaintiffs' Claims are Within the Scope of the SSA's Broad Arbitration Provision, Satisfying the Second Prong of the FAA Test.

The arbitration provision also satisfies the second prong of the FAA test, which asks whether the provision encompasses Plaintiffs' claims.  In making that determination, the FAA mandates a strong presumption in favor of arbitrability.  As this Court recognized:

> "[A]n order to arbitrate … should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)); *see Warrior & Gulf*, 363 U.S. at 584-85 ("In the absence of any express provision excluding a particular grievance from arbitration, … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail …").

*Coppock*, 2013 WL 1192632, at *5; *accord Tuminello v. Richards*, No. C11-5928BHS, 2012 WL 750305, at *2 (W.D. Wash. Mar. 8, 2012) ("the FAA divests courts of their discretion and requires courts to resolve any doubts in favor of compelling arbitration").  Plaintiffs "bear[] the burden of showing that the agreement does not cover the claims at issue." *Coppock*, 2013 WL 1192632, at *5 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 16
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

Plaintiffs' claims are all within the scope of the SSA's arbitration provision, which

covers:

> ANY CLAIMS ARISING OUT OF OR RELATING TO:  (i) ANY
> ASPECT OF THE RELATIONSHIP BETWEEN US; (ii) THIS
> AGREEMENT; OR (iii) YOUR USE OF STEAM, YOUR
> ACCOUNT OR THE CONTENT AND SERVICES …
> ***REGARDLESS OF WHETHER SUCH CLAIMS ARE BASED
> IN CONTRACT, TORT, STATUTE, FRAUD, UNFAIR
> COMPETITION, MISREPRESENTATION OR ANY OTHER
> LEGAL THEORY.***

(SSA ¶ 11.) (emphasis added).

This type of expansive "any claims" clause creates a broad arbitration agreement.  *See*

*Chiron Corp.*, 207 F.3d at 1131 ("any dispute" provisions are "broad and far reaching" in scope);

*Ekin* 84 F. Supp. 3d at 1178 (broadly construing and enforcing arbitration agreement

encompassing "any dispute or claim relating in any way to your use of any Amazon Service, or

to any products or services sold or distributed by Amazon or through Amazon.com."); *Coppock*,

2013 WL 1192632, at *5 (enforcing similar arbitration clause covering "[a]ll [c]laims relating to

your account, a prior related account, or our relationship are subject to arbitration … , no matter

what legal theory they are based on or what remedy … they seek.").  Plaintiffs' claims need not

fall squarely within the clause to be arbitrable (although they do here); rather, "factual

allegations need only 'touch matters' covered by the contract containing the arbitration clause

and all doubts are to be resolved in favor of arbitrability."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

716, 721 (9th Cir. 1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473

U.S. 614, 632-35 (1985)).

Here, Plaintiffs' claims plainly touch matters relating to Plaintiffs' relationship with

Valve, and their use of Steam and the content and services Valve provided.  All of Plaintiffs'

claims against Valve are premised on the SSA—because they arise from the license it grants to

use Steam, to play CS:GO, and to purchase and trade skins—and on factual allegations that the

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 17
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

minor Plaintiffs' relationships with Valve caused harm.  (Compl. ¶¶ 99-102.)  Thus, they fall

squarely within the scope of the arbitration agreement.

The SSA's arbitration provision contains only two narrow exclusions to arbitration:

> [T]his Section does not apply to the following types of claims or disputes, which
> you or Valve may bring in any court with jurisdiction: (i) claims of infringement
> or other misuse of intellectual property rights, including such claims seeking
> injunctive relief; and (ii) claims related to or arising from any alleged
> unauthorized use, piracy or theft.

(SSA ¶ 11.)  Plaintiffs' claims are not about infringement, intellectual property, piracy or theft.

Instead, Plaintiffs try to squeeze into the second exclusion by asserting their claims are

about "unauthorized use" of Steam, (Compl. ¶¶ 79, 86-87) , even though courts reject those

attempts when, as here, a third party's unauthorized use is alleged.  Plaintiffs do not claim Valve

made unauthorized use of Plaintiffs' Steam accounts or information.  Rather, Plaintiffs claim that

***third parties*** engaged in "unauthorized use" against Valve, in breach of the ***third parties'***

contracts with Valve, and that if Valve had stopped those third parties, Plaintiffs could not have

gambled on their sites and lost money.  (*Id.*)  Plaintiffs do not claim they are third-party

beneficiaries of Valve's contracts with these third parties, or that Valve owes Plaintiffs a

contractual duty to enforce the SSAs against the third parties.  Whether a third party's use of

Steam was authorized under the SSA need not be, and will not be, determined in this case.

Simply put, Plaintiffs make no claim that relates to ***their*** or ***Valve's*** alleged "unauthorized use,"

so the exclusion does not apply.

The court in *Montoya*, 2016 WL 5340651, at *9-10, held that an "unauthorized use"

exclusion in the arbitration provision of Comcast's subscriber agreement was not triggered by

allegations of unauthorized use by third parties.  The plaintiffs in *Montoya* claimed Comcast

failed to protect their personal information against theft by third parties.  Comcast moved to

compel arbitration under its subscriber agreement, which required arbitration of "any dispute,

claim, or controversy… regarding any aspect of your relationship … whether based in contract,

statute, regulation, ordinance, tort … or any other legal or equitable theory," but excluded from

arbitration any "allegations associated with *unauthorized use or receipt of service*." (*Id.* at *9) (emphasis in original). Plaintiffs argued their claims fell under that exclusion because they alleged the third parties made unauthorized use of Comcast's services. (*Id.*) The court rejected that argument. Because plaintiffs' claims arose from their relationship with Comcast and related to their use of Comcast's services, they were specifically covered by the arbitration provision requiring arbitration of "any dispute, claim, or controversy between you and [Comcast] regarding any aspect of your relationship." (*Id.* at *10.) Insofar as they alleged tort violations by Comcast, they were again within the scope of the provision, which expressly required arbitration of any tort claims. (*Id.*) Noting that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," the court compelled arbitration. (*Id.*)

Similarly, the court in *Aerotel, Ltd. v. RSL Comms., Ltd.*, 99 F. Supp. 2d 368 (S.D.N.Y. 2000), held that a provision excluding claims arising from "unauthorized use" from arbitration did not cover all activity that allegedly violated relevant laws. In that case, RSL and NACT had a technology licensing agreement with an arbitration clause covering "all disputes arising out of or in connection with this Agreement," but excluding "disputes arising out of any unauthorized use of the Licensed Software or Documentation." (*Id.* at 371-72.) When Aerotel sued RSL for patent infringement for using the licensed technology, RSL brought third-party claims against NACT. (*Id.* at 371.) NACT moved to compel arbitration under the licensing agreement; RSL argued its claims were specifically excluded from arbitration because they arose from "unauthorized use" of the licensed technology. (*Id.* at 371-72.) The court read the exclusion narrowly and rejected RSL's argument. In light of the strong federal policy favoring arbitration, an arbitration clause broadly worded to cover "all disputes" "creates a strong presumption in favor of arbitrability that applies with even greater force." (*Id.* at 372.) Accordingly, the "unauthorized use" exception applied "only to uses not authorized by NACT, not to uses that may violate the United States patent laws." (*Id.* at 373.)

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 19
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Like *Montoya* and *Aerotel*, Valve's arbitration clause is broadly worded to cover "all disputes and claims" relating to "any aspect of the relationship between us." The same policy reasons and practical justifications relied on by the courts in *Montoya* and *Aerotel* drive a narrow reading of the exclusion here. As the Supreme Court instructed, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25). Exclusion is not warranted in these circumstances.

### C.     All Claims Against Valve Should be Stayed Pending Arbitration.

Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement." *Concepcion*, 563 U.S. at 344 (internal quotation omitted); *Coppock,* 2013 WL 1192632, at *10 (granting motion to compel arbitration and staying the case pending arbitration). Accordingly, the Court should stay the claims against Valve pending arbitration.

## IV.     CONCLUSION

Plaintiffs' relationship with Valve arises from, and is controlled by, the SSA. The SSA grants Plaintiffs the license necessary to use Steam and the other content and services that are at the heart of Plaintiffs' claims, requiring in exchange that Steam subscribers agree to arbitrate all disputes with Valve. Plaintiffs repeatedly agreed to the SSA and its arbitration provision. Because both prongs of the FAA test are satisfied, the Court should require Plaintiffs to honor their agreement and arbitrate their claims.

Pursuant to the FAA and Washington law, Valve respectfully requests that the Court (1) compel Plaintiffs to arbitrate all claims against Valve pursuant to the arbitration agreement in the SSA, and (2) stay all claims against Valve pending arbitration.

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 20
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

DATED this 27th day of December, 2016.

RIDDELL WILLIAMS P.S.


By   */s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766
Sarah E. Joye, WSBA #44357
James H. Wendell, WSBA #46489

and

MONTGOMERY McCRACKEN WALKER &
RHOADS, LLP


By   */s/ Charles B. Casper*
Charles B. Casper (admitted *pro hac vice*)
123 S. Broad Street, 24th Floor
Philadelphia, PA  19109
(215) 772-1500

Attorneys for Defendant Valve Corporation

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 21
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Riddell Williams P.S. in Seattle, Washington. I am a U.S. citizen over the age of eighteen years and not a party to the within cause. On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

| **Service List** | |
|---|---|
| Kim D. Stephens, WSBA #11984<br>Jason T. Dennett, WSBA #30686<br>**TOUSLEY BRAIN STEPHENS PLLC**<br>1700 Seventh Avenue, Suite 2200<br>Seattle, WA 98101<br>Tel: (206) 682-5600<br>Fax: (206) 682-2992<br>kstephens@tousley.com<br>jdennett@tousley.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |
| Jasper D. Ward IV<br>Alex C. Davis<br>Patrick Walsh<br>**JONES WARD PLC**<br>Marion E. Taylor Building<br>312 S. Fourth Street, Sixth Floor<br>Louisville, Kentucky 40202<br>Tel. (502) 882-6000<br>Fax (502) 587-2007<br>jasper@jonesward.com<br>alex@jonesward.com<br>patrick@jonesward.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 22
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

| | |
|---|---|
| Paul C. Whalen (PW1300)<br>**LAW OFFICE OF PAUL C. WHALEN, P.C.**<br>768 Plandome Road<br>Manhasset, NY 11030<br>Tel. (516) 426-6870<br>Fax (212) 658-9685<br>pcwhalen@gmail.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

EXECUTED this 27th day of December, 2016, in Seattle, Washington.

_____
Courtney R. Tracy

VALVE CORPORATION'S MOTION TO COMPEL
ARBITRATION - (2:16-cv-01941-RSL) - 23
4839-4895-0846.01
122716/1056/63478.00052

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600