THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| G.G., A.L., and B.S., individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>VALVE CORPORATION,<br><br>　　　　　　　　Defendant. | CASE NO. C16-1941-JCC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION |

This matter comes before the Court on Defendant Valve Corporation's motion to compel arbitration (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I.   BACKGROUND

Plaintiffs allege that Defendant, through its Steam Marketplace platform and video games such as Counter Strike: Global Offensive (CSGO), supported "illegal gambling" by "allowing millions of Americans, including Plaintiffs, to link their individual Steam accounts to third-party websites" and by "allowing third-party sites to operate their gambling transactions within [Defendant's] Steam marketplace." (Dkt. No. 1-3 at ¶ 3.) Plaintiffs allege that Defendant "created this gambling system by creating a virtual currency called 'Skins,' which [Defendant]

sells for a fee" through the Steam marketplace. (*Id.* at ¶ 4.) Plaintiffs allege that third-party gambling websites created automation software (bots) accounts to modify or automate the Steam marketplace for trading and gambling Skins with Plaintiffs and other Steam subscribers. (*Id.* at ¶¶ 7, 43, 96.)

To use Steam, a user must first create a Steam account, which requires accepting the Steam Subscriber Agreement (SSA) at issue in this case and motion. (Dkt. No. 11 at ¶ 6.) A Steam account cannot be created unless the subscriber accepts the SSA. (*Id.* at ¶ 8.) After setting up a Steam account, a user may purchase subscriptions to CSGO or other video games after again agreeing to the same SSA. (*Id.* at ¶ 11.) Users also agree to the same SSA when they purchase Skins while playing CSGO. (*Id.* at ¶ 13.)

The SSA grants users a license to use Steam and the content and services available on Steam, such as CSGO and Skins. (*See* Dkt. No. 11-7.) The SSA has a binding and conspicuous arbitration agreement in Section 11, which states that subscribers and Defendant

> agree to resolve all disputes and claims between [them] in individual binding arbitration. That includes, but is not limited to, any claims arising out of or relating to: (i) any aspect of the relationship between [them]; (ii) this agreement; or (iii) [a subscriber's] use of Steam, [a subscriber's] account or the content and services. It applies regardless of whether such claims are based in contract, tort, statute, fraud, unfair competition, misrepresentation, or any other legal theory.

(*Id.* at 11.) The arbitration agreement states that the arbitration "will be governed by the Commercial Arbitration Rules of the American Arbitration Association" (AAA). (*Id.*) However, the arbitration agreement excludes "claims of infringement or other misuse of intellectual property rights . . . and claims related to or arising from any alleged unauthorized use, piracy, or theft." (*Id.*) Unauthorized use is not explicitly defined in the SSA, but Section 4 states, "[Subscribers] may not use cheats, automation software (bots), mods, hacks, or any other unauthorized third-party software, to modify or automate any Subscription Marketplace process." (*Id.* at 7.)

Plaintiffs, minor children who signed the SSA and their parents who did not sign the

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION
PAGE - 2

SSA, brought this case, alleging violation of the Washington Consumer Protection Act, violation of the Washington Gambling Act of 1973, unjust enrichment, negligence, and declaratory relief. (Dkt. No. 1-3 at 31–39.) Defendant filed a motion to compel arbitration pursuant to the SSA. (Dkt. No. 10.) Plaintiffs opposed the motion, arguing (1) the SSA is unenforceable based on contract defenses; (2) Defendant cannot enforce the SSA against minor Plaintiffs; (3) Defendant cannot enforce the SSA against the non-signatory parent Plaintiffs; and (4) Plaintiffs' claims deal with the unauthorized use exception and are not subject to the SSA. (Dkt. No. 27.)

## II.    DISCUSSION

### A.    Standard of Review

Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). However, Section 2 provides that arbitration agreements may be invalidated by generally applicable contract defenses, including unconscionability. *Id.*

The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both of these two requirements are fulfilled, then the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Id.* As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) (internal quotes and citations omitted). If the Court determines that the claims are subject to arbitration, the Court should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Pursuant to the SSA's choice of law provision, Washington law governs the existence and interpretation of the arbitration agreement at issue. (*See* Dkt. No. 11-7 at 10.) Washington has a substantial relationship to the parties and no other state with contrary policy interests has a materially greater interest in the outcome of this dispute than Washington. *See Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1121 (Wash. 2007) (adopting the Restatement (Second) of Conflicts of Laws § 187(2) (1971)).

     **B.**     **Valid Agreement to Arbitrate**

          1.   <u>Unconscionability</u>

Plaintiffs argue that the SSA arbitration clause is unconscionable and, therefore, not valid.[1] (*See* Dkt. No. 27 at 25–26.) In Washington, either procedural or substantive unconscionability is sufficient to void an arbitration agreement. *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013). Procedural unconscionability is "the lack of meaningful choice, considering all the circumstances surrounding the transaction including '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.'" *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash. 2004) (quoting *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995)). "A term is substantively unconscionable where it is 'one-sided or overly harsh,' '[s]hocking to the conscience,' 'monstrously harsh,' or 'exceedingly callous.'" *Gandee*, 293 P.3d at 1199 (quoting *Adler v. Fred Lind Manor*, 103 P.3d 773, 781 (Wash. 2004)).

Plaintiffs claim the arbitration agreement is procedurally unconscionable because it is a

---

[1] Plaintiffs also seem to raise enforceability challenges to the SSA as a whole. (Dkt. No. 27 at 24, 26–27) (illegal and illusory contract defenses). The Supreme Court has held where a party challenges the validity of the "precise agreement to arbitrate at issue," the federal court considers the validity challenge, but where "a party's challenge [is] to another provision of the contract, or to the contract as a whole," the questions go to the arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Incorporation of the AAA rules, as is the case here, "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Therefore, the Court will not consider Plaintiffs' general SSA enforceability challenges.

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION
PAGE - 4

contract of adhesion. (Dkt. No. 27 at 25.) However, "the fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable." *Zuver*, 103 P.3d at 760. Plaintiffs point to no other aspects of the arbitration agreement that are allegedly procedurally unconscionable. The Court concludes that the arbitration agreement was conspicuous and each party had an opportunity to understand the terms. Therefore, Plaintiffs' procedural unconscionability argument is unpersuasive.

Plaintiffs also argue the arbitration agreement is substantively unconscionable because (1) it would require Plaintiffs "to front the costs of arbitration (despite [Defendant's] promise to reimburse claimants at the conclusion of proceedings)" and (2) Defendant "allowed the gambling sites to target minor children." (Dkt. No. 27 at 25–26.) First, the requirement that Plaintiffs pay the upfront costs of arbitration, but then be reimbursed after, is not so one-sided or overly harsh as to render the agreement substantively unconscionable. Moreover, under the AAA rules, Plaintiffs' maximum payment will be the $200 filing fee. *See* AAA Consumer Arbitration Rules, R-4. Second, Plaintiffs' assertions about Defendant's allegedly illegal conduct deals with the merits of case, not whether the terms of the arbitration agreement are substantively unconscionable. The arbitrator would be able to decide culpability on this matter. Therefore, Plaintiffs' arguments that the arbitration agreement is substantively unconscionable are also unpersuasive. The Court concludes that the SSA agreement to arbitrate is not unconscionable under these facts.

2. <u>Minor Plaintiffs</u>

Plaintiffs contend that Defendant cannot enforce the arbitration clause against the plaintiffs who are minor children. (Dkt. No. 27 at 19–23.) Under Washington law, contracts with minors are valid unless the minor disaffirms the contract within a reasonable time after attaining the age of majority. Wash. Rev. Code § 26.28.030. In order to disaffirm a contract, "the statute requires the minor to restore to the other party all money and other property received by him by virtue of the contract and remaining within his control." *Snodderly v. Brotherton*, 21 P.2d 1036,

1037 (Wash. 1933). In short, in order for the contract to be invalid, the minor cannot continue to benefit from the contract after disaffirming the contract. *See id.*

Plaintiffs argue that the minor Plaintiffs disaffirmed "any waivers of rights, limitations on liability, dispute resolution, and the [SSA] as a whole to the extent Plaintiffs have not received any benefit from" the SSA. (Dkt. No. 1-3 at ¶ 168.) However, it is undisputed that the minor Plaintiffs continue to use Defendant's content and services on Steam. (Dkt. No. 1-3 at ¶¶ 13–15, 171.) They argue that "Plaintiffs who continue to play games on [Defendant's] servers do so because they have paid cash consideration to [Defendant] for the right to own and use [Defendant's] software, and do not adopt, affirm or otherwise assent to [the SSA] by continuing to use [Defendant's] marketplace to make purchases unrelated" to CSGO or Skins. (*Id.* at ¶ 171.) This alleged disaffirmance is unsupported by law and fact. Plaintiffs' continued use is contingent on accepting the SSA and its agreement to arbitrate. Therefore, Plaintiffs have only disaffirmed the SSA in name, but not in practice, because they continue to receive benefits from the SSA by their continued use of Defendant's products. The arbitration agreement with the minor Plaintiffs is valid.

    3.   Parent Plaintiffs

Plaintiffs also maintain that the arbitration agreement does not apply to the parent Plaintiffs who did not sign the SAA. (Dkt. No. 27 at 23–24.) Generally, non-signatories are not bound by arbitration clauses. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). However, courts have recognized limited exceptions to this rule, including the principle of equitable estoppel. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). For example, "a signatory may be required to arbitrate a claim brought by a nonsignatory 'because of the close relationship between the entities involved . . . and the fact that the claims were intertwined with the underlying contractual obligations.'" *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)).

This Court recently compelled arbitration where the plaintiffs entered into an arbitration agreement with T-Mobile and asserted claims against Subway, based on a text sent by T-Mobile. *See Rahmany v. T. Mobile USA, Inc.*, C16-1416-JCC, Dkt. No. 25. This Court compelled arbitration with Subway, a non-signatory, because the claims could not be resolved without analyzing T-Mobile's conduct and the terms and conditions of the T-Mobile service agreement. *Id.* at 4–5. The same logic applies here. Although the parent Plaintiffs did not sign the arbitration agreement, they have a close relationship to the minor Plaintiffs as their parents. Moreover, the parent Plaintiffs do not allege any facts to establish personal claims. Instead, their claims exist solely through the SSA, which gave the minor Plaintiffs license to use Steam. (Dkt. No. 1-3 at ¶ 98) (alleging that parent Plaintiffs "suffered financial harm" when their "[m]inor children . . . used their parents' money for Skins gambling transactions"). Therefore, the parent Plaintiffs are bound by the SSA arbitration agreement based on equitable estoppel.

### C. Scope of the Arbitration Agreement

The parties do not dispute that the general language of the SSA arbitration agreement covers the potential claims. The Court agrees that the potential claims fit within the general scope of the arbitration agreement. However, the parties dispute whether the claims fit into the unauthorized use exception. Under this exception, the SSA does not apply to "claims related to or arising from any alleged unauthorized use, piracy, or theft." (Dkt. No. 11-7 at 11.) Unauthorized use is not explicitly defined in the SSA, but Section 4 states, "[*Subscribers*] may not use cheats, automation software (bots), mods, hacks, or any other unauthorized third-party software, to modify or automate any Subscription Marketplace process." (*Id.* at 7) (emphasis added). Plaintiffs claim that third parties, not they themselves or Defendant, engaged in unauthorized use when the third parties used bots on the Steam platform. (Dkt. No. 27 at 14.) Defendant does not deny that third-party conduct of this nature is an unauthorized use that would not be subject to the SSA arbitration agreement, but argues that Plaintiffs make no claims that relate to their own unauthorized use. (Dkt. No. 10 at 20.)

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION
PAGE - 7

In a case factually analogous to the case at hand, the plaintiffs tried to argue that their claims were outside the scope of the arbitration agreement because the exclusion section of the provision explicitly exempted "any dispute related to or arising from allegations associated with unauthorized use or receipt of service." *Montoya v. Comcast Corp.*, 2016 WL 5340651, at *9 (E.D. Cal. Sept. 23, 2016). The plaintiffs argued that the dispute arose from the defendant's failure to prevent unauthorized uses of its service. *Id.* The *Montoya* court rejected these arguments, however, because third-party unauthorized use was not excluded from the agreement. *See id.* at *10. Here, the language in the exclusion provision and the alleged third-party behavior is almost exactly the same. Plaintiffs wish to exclude their claims from arbitration because they deal with Defendant's alleged failure to prevent unauthorized use by bots. However, the Court agrees with the *Montoya* court's reasoning and Defendant that the arbitration exclusion applies to unauthorized use by only *subscribers*, as the exclusion and *de facto* definition of unauthorized use explicitly state. (*See* Dkt. No. 11-7 at 7, 11.) Moreover, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Therefore, all of Plaintiffs' claims fall within the scope of the SSA arbitration agreement.

In sum, under this set of facts, there is a valid agreement to arbitrate and Plaintiffs' claims are within the scope of the agreement. Defendant's motion to compel is GRANTED.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration (Dkt. No. 10) is GRANTED and this action is STAYED pending arbitration.

DATED this 3rd day of April 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE