THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| G.G., A.L., and B.S., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION, a Washington corporation,<br><br>Defendant. | CASE NO. C16-1941-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to lift stay and dismiss case with prejudice (Dkt. No. 33). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

The Court previously set forth the underlying facts of this case and will not repeat them here. (*See* Dkt. No. 30.) On April 3, 2017, the Court granted Defendant's motion to compel arbitration and stayed this case pending arbitration. (*Id*. at 8.) In its order, the Court upheld the enforceability of the arbitration clause of the Steam Subscriber Agreement (the "Agreement") governing the parties' relationship and found that Plaintiffs' activities were within the scope of the arbitration clause. (*Id*. at 4–8.)

On June 5, 2017, Plaintiffs filed a consolidated arbitration demand to the American Arbitration Association ("AAA"). (Dkt. No. 33 at 1–2.) Defendant asked the arbitrator to enforce the provisions of its Steam Subscriber Agreement (the "Agreement"), which requires Plaintiffs to pursue arbitration individually in the county where each Plaintiff lives. (*Id.* at 2.) On January 3, 2018, the arbitrator ruled that Plaintiffs had to bring their claims individually in the county where each Plaintiff lives, and the AAA closed the consolidated arbitration. (*Id.*)

Plaintiff A.L. elected to not file an individual arbitration demand. (*Id.*) On May 3, 2018, Plaintiff B.S. submitted a new arbitration demand to the AAA. (*Id.*) Plaintiff B.S.'s arbitration was held in St. Louis, Missouri before arbitrator Thomas Laffey. (*Id.*) Also on May 3, 2018, Plaintiff G.G. submitted a new arbitration demand to the AAA. (*Id.*) Plaintiff G.G.'s arbitration was held in Chicago, Illinois before arbitrator Mark Schiff. (*Id.*)

On November 29, 2018, Arbitrator Laffey held an evidentiary hearing in the B.S. arbitration. (*Id.*; Dkt. No. 35-1.) Plaintiff B.S. brought a variety of claims under Washington law individually and on behalf of her minor child, E.B. (Dkt. No. 35-1 at 3–4.) Plaintiff B.S. also renewed her challenge to the arbitration clause in the Agreement. (*Id.* at 4.) Arbitrator Laffey found that Plaintiff B.S. had not met her burden of proof on her claims and had not offered sufficient proof of alleged damages suffered by E.B. (*Id.* at 4–5.) Arbitrator Laffey also rejected Plaintiff B.S.'s challenge to the Agreement's arbitration clause. (*Id.* at 5.) Thus, Arbitrator Laffey ruled in favor of Defendant on all of Plaintiff's claims, and stated that his award in favor of Defendant fully settled all claims submitted to arbitration. (*Id.*) The AAA has since closed the arbitration. (Dkt. No. 33 at 2.)

On December 13, 2018, Arbitrator Schiff held an evidentiary hearing in the G.G. arbitration. (*Id.*) Plaintiff G.G. raised a variety of claims arising under Washington law individually and on behalf of her minor son, J.P., and also sought to have the arbitration proceeding dismissed and the case sent back to this Court. (*Id.*; Dkt. No. 35-2 at 3.) Arbitrator Schiff found that Defendant was aware that third-party websites were gambling with its products,

and also noted that both parties had unclean hands—Defendant "may have turned a blind eye" to gambling on third-party websites, but J.P. willfully engaged in conduct he knew was improper on third-party sites and Defendant's own site. (*Id.*) Arbitrator Schiff found that Plaintiff G.G. did not prove her case, as she had not established any connection between Defendant's website and third-party gambling websites, and that Plaintiff G.G.'s claimed damages were speculative. (*Id.*) Arbitrator Schiff ruled in Defendant's favor, and stated that his award fully settled all claims submitted to arbitration. (*Id.*) The AAA has since closed the arbitration. (Dkt. No. 33 at 2.)

Defendant moves to lift the stay in this case for the limited purpose of dismissing Plaintiffs' claims against Defendant with prejudice. (Dkt. No. 33.) Plaintiffs' response challenges the arbitrability of their claims, and asks the Court to set aside the arbitrators' awards pursuant to Section 10 of the Federal Arbitration Act ("FAA").

## II. DISCUSSION

### A. Motion to Lift Stay

In its order granting Defendant's motion to compel arbitration, the Court stayed this case pending arbitration. (Dkt. No. 30.) The arbitration proceedings at issue are now concluded: Plaintiff A.L. declined to file an individual arbitration demand after the consolidated arbitration was dismissed (Dkt. No. 33 at 2); Arbitrator Laffey's award disposed of Plaintiff B.S.'s claims (Dkt. No. 35-1); and Arbitrator Schiff's award disposed of Plaintiff G.G.'s claims (Dkt. No. 35-2). The AAA has closed both Plaintiff B.S. and Plaintiff G.G.'s arbitration proceedings. (Dkt. No. 33 at 2.) Therefore, Defendant's request to lift the stay is GRANTED.

### B. Review of Arbitration Awards

Under Section 10 of the FAA, a district court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

> material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Thus, judicial review of an arbitration award is "both limited and highly deferential": an arbitration award may only be vacated "if the conduct of the arbitrators violated the [FAA], or if the award itself is 'completely irrational' or 'constitutes manifest disregard for the law.'" *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (quoting *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996); then quoting *G.C. v. K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003)) (footnotes omitted). "It is not enough for petitioners to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). In fact, "[u]nder the [FAA], 'confirmation [of an arbitration award] is required even in the face of erroneous findings of fact or misinterpretations of law.'" *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (quoting *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986)).

1. *Arbitrability of Claims*

Plaintiffs contend that their claims were never properly subject to arbitration because they fell within the Agreement's exception for "claims related to or arising from any alleged unauthorized use." (Dkt. No. 35 at 7.) If the parties agree to submit the question of arbitrability itself to arbitration, "then the court's standard for reviewing the arbitrator's decision about *that* matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate." *First Options of Chicago*, 514 U.S. at 943. Therefore, the court will set aside the arbitrator's decision on arbitrability "only in certain narrow circumstances." *Id*.

(citing 9 U.S.C. § 10). "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

Section 11 of the Agreement specified that arbitrations between the parties would "be governed by the Commercial Arbitration Rules of the [AAA] and, where applicable, the AAA's Supplementary Procedures for Consumer Related Disputes, as modified by this Agreement . . . ." (Dkt. No. 35-6 at 44.) Commercial Arbitration Rule 7(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Commercial Arbitration Rule 7(a).[1] Thus, the parties agreed to grant the arbitrators presiding over their individual arbitrations the authority to determine the arbitrability of their claims. *See Oracle Am.*, 724 F.3d at 1074.

In their opposition to Defendant's motion to compel arbitration, Plaintiffs contended that their claims were not arbitratable because they were related to unauthorized use by third parties. (*See* Dkt. Nos. 27 at 14–19, 30 at 7–8.) The Court rejected Plaintiffs' argument, finding that the unauthorized use exception in the Agreement applied to unauthorized use by subscribers to Defendant's services, not third parties. (Dkt. No. 30 at 7.) The Court found that Plaintiffs had not claimed that their own use was unauthorized within the meaning of the Agreement, and thus granted Defendant's motion to compel arbitration of Plaintiffs' claims. (*Id*. at 7–8.)

Upon the commencement of the B.S. and G.G. arbitrations, Plaintiffs again challenged

---

[1] Defendant asserts that the Agreement incorporates the AAA Consumer Arbitration Rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Dkt. No. 38 at 4); AAA Consumer Rule R-14(a). Section 11 of the Agreement does not explicitly cite to the AAA Consumer Arbitration Rules. (*See* Dkt. No. 35-6 at 44–45.) But this does not change the Court's analysis, as both the AAA Consumer Arbitration Rules and Commercial Arbitration Rules assign the question of arbitrability to the arbitrator. *See* AAA Consumer Rule R-14(a); AAA Commercial Arbitration Rule 7(a); *see also Oracle Am.*, 724 F.3d at 1074, 1074 n.1.

the arbitrability of their claims, and both arbitrators rejected Plaintiffs' arguments. (*See* Dkt. No. 35-10 at 83, 85.) In their post-hearing briefs, Plaintiffs again challenged the arbitrability of their claims, but raised the novel argument that Defendant's position as to arbitrability had changed and Plaintiffs' use was in fact unauthorized within the meaning of the Agreement's unauthorized use exception. (Dkt. No. 35-10 at 5–7, 39–41.) Both arbitrators rejected Plaintiffs' new challenge. Arbitrator Laffey noted that it appeared that Plaintiff B.S., not Defendant, had changed her position regarding arbitrability, and found that although E.B. had admittedly violated the Agreement in some respects, "the violations . . . did not make his use of Steam unauthorized within the meaning of the [Agreement]. Accordingly, the Arbitrator again concludes . . . that E.B.'s claims were and are properly subject to arbitration." (Dkt. No. 35-1 at 5.) Although Arbitrator Schiff did not explicitly address Plaintiff G.G.'s new challenge to the arbitrability of her claims, he implicitly rejected any such challenge when he issued his award and specifically denied Plaintiff G.G.'s sought relief, which included "to have the arbitration dismissed and the case sent back to the courts in Washington." (Dkt. No. 35-2 at 3–4.)

In their opposition to the Defendant's present motion, Plaintiffs raise the same challenge to arbitrability that Arbitrator Laffey and Arbitrator Schiff both rejected. (*Compare* Dkt. No. 35 at 7–11, *with* Dkt. No. 35-10 at 5–7, 39–41.) In challenging the arbitrators' determinations now, Plaintiffs bear the burden of showing that the arbitrators violated the FAA or that their determinations were completely irrational or constituted a manifest disregard of the law. *See First Options of Chicago*, 514 U.S. at 943; *Coutee*, 336 F.3d at 1132. Plaintiffs have not carried this burden. Plaintiffs do not cite Section 10 of the FAA, or attempt to establish that the arbitrators' decisions regarding arbitrability fall into one of Section 10's categories permitting vacatur. (*See* Dkt. No. 35 at 7–11.) Plaintiffs also do not argue that the arbitrators' determinations of arbitrability were completely irrational or constituted a manifest disregard of the law; in fact, Plaintiffs' brief does not acknowledge the arbitrators' determinations of arbitrability following Plaintiffs' novel arguments in their post-hearing briefs. (*See id.*)

Therefore, Plaintiffs' renewed challenge to the arbitrability of their claims is DENIED.

    2. *Enforcement of Arbitration Clause in Violation of Washington Public Policy*

Plaintiffs contend that enforcement of the Agreement's arbitration clause violates Washington public policy, as Defendant did not enforce the Agreement against those violating it but seeks to enforce the Agreement's arbitration clause against Plaintiffs. (Dkt. No. 35 at 11–13.)[2] An agreement to arbitrate in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005). "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

Plaintiffs assert several arguments that purportedly support their public policy argument. (*See* Dkt. No. 35 at 12–13.) First, Plaintiffs contend that the doctrine of equitable estoppel precludes Defendant from deriving the benefits of the Agreement while avoiding its burdens. (*Id*.) (citing *Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (Wash. 2012)). But Plaintiffs have not pointed to any readily-identifiable benefit gained by Defendant from enforcing the arbitration clause. (*See* Dkt. No. 35 at 12–13.) Rather, Plaintiffs point to the harms they allegedly suffered as subscribers from Defendant's failure to prosecute third-party gambling websites who were violating other provisions of the Agreement. (*See id*.) Further, it is unclear as to what burden Defendant avoided in enforcing the arbitration clause of the Agreement, as Plaintiffs were accorded an opportunity to litigate their claims against Defendant. The fact that the arbitrators found that Plaintiffs' claims were not meritorious does not mean that Defendant was able to "enforce the arbitration clause to avoid consequences for its actions." (*See id*. at 12.) Thus,

---

[2] Specifically, Plaintiffs state that, "[Defendant's] position now is that it simply chose not to enforce the terms of the [Agreement] when it was harming Plaintiffs, but that it wants to enforce the arbitration clause to avoid consequences for its actions. This suggests the [Agreement] is not really a contract at all, and [Defendant] cannot selectively enforce it now." (Dkt. No. 35 at 12.)

1 Plaintiffs' assertion of the doctrine of equitable estoppel is unavailing.

2 Next, Plaintiffs appear to contend that Defendant waived the arbitration provision in the Agreement. (*Id.* at 13) (quoting *Mike M. Johnson, Inc. v. Cty. of Spokane*, 78 P.3d 161, 166 (Wash. 2003) ("[A] party to a contract may waive a contract provision, which is meant for its benefit, and may imply waiver through its conduct.")). Plaintiffs do not provide substantive argument supporting their assertion, including any indication that Defendant's conduct evidences any intent to waive the arbitration clause. (*See* Dkt. No. 35 at 13.) In fact, Defendant has rigorously sought enforcement of the arbitration clause throughout this litigation. (*See, e.g.*, Dkt. Nos. 1, 10) (indicating that Defendant's initial motion to compel arbitration was filed one week after removing the case from state court). Therefore, any argument by Plaintiffs that Defendant waived the arbitration clause is unavailing.

Finally, Plaintiffs appear to argue that the Agreement contravenes Washington's public policy against illegal gambling, and thus Defendant should not prevail in this litigation. (Dkt. No. 35) (citing *LK Operating, LLC v. Collection Grp., LLC*, 331 P.3d 1147 (Wash. 2014); Wash. Rev. Code § 9.46.010). Plaintiffs appear to direct their challenge toward the Agreement broadly, rather than against the arbitration clause ostensibly at issue in this portion of their brief. (*See* Dkt. No. 35 at 11–13.) Plaintiffs raised their public policy arguments in both arbitrations, and both arbitrators rejected Plaintiffs' arguments. (*See* Dkt. Nos. 35-1 at 5, 35-2 at 3.) Arbitrator Laffey determined that public policy did not prevent enforcement of the arbitration clause, and separately determined that Plaintiff B.S. had not proven any connection between Defendant and third-party websites that rendered it liable for illegal gambling activities. (*See* Dkt. No. 35-1 at 4–5.) Arbitrator Schiff similarly held that Defendant's conduct did not violate public policy, and that Plaintiff G.G. had not established a connection between Defendant and third-party gambling websites. (*See* Dkt. No. 35-2 at 3.) Plaintiffs have not established that either arbitrator's decision merits vacatur under Section 10 of the FAA. *See* 9 U.S.C. § 10(a); *Coutee*, 336 F.3d at 1132. Therefore, to the extent that Plaintiffs are attempting to re-litigate their public policy arguments

that were rejected by the arbitrators, their argument is unavailing.

In sum, Plaintiffs have not established that enforcement of the arbitration clause violates Washington's public policy, and their challenge to its enforcement is DENIED.

### 3. *Section 10 of the FAA*

Plaintiffs assert that the arbitrators' decisions should be set aside under Section 10 of the FAA. (Dkt. No. 35 at 14–15.) As discussed above, Section 10 of the FAA significantly limits a district court's authority to vacate an arbitration award. *See* 9 U.S.C. § 10(a). Therefore, an arbitration award will only be vacated upon a showing that the arbitrator's conduct violated the FAA, is completely irrational, or constitutes a manifest disregard of the law. *Coutee*, 336 F.3d at 1132; *Kyocera Corp.*, 341 F.3d at 997.

Plaintiffs argue that the arbitrators erred in a number of ways: blaming Plaintiffs for gambling voluntarily although the doctrine of unclean hands does not provide a defense to statutory claims; concluding that Plaintiffs did not adequately prove their damages although Plaintiffs provided testimony as to their total losses from gambling activities; refusing to consider arguments and theories Plaintiffs sought to raise after discovery; and not crediting Plaintiffs' argument that their losses exceeded the $10,000 threshold for consumer arbitrations. (Dkt. No. 35 at 14–15.) Plaintiffs contend that the arbitrators "imperfectly executed their powers" and "imperfectly applied Washington law" to Plaintiffs' proven facts. (*Id*. at 15.)

Plaintiffs have not cited any of Section 10's enumerated vacatur categories in support of their argument that the Court should set aside the arbitrators' awards. (*See id*. at 14–15.) Further, they have not established that any of the arbitrators' alleged errors render their decisions completely irrational or a manifest disregard of the law. *See Coutee*, 336 F.3d at 1132; *Kyocera Corp.*, 341 F.3d at 997. For example, both arbitrators found that Plaintiffs failed to prove their cases, and did not rely on the doctrine of unclean hands to reject Plaintiffs' statutory claims. (*See* Dkt. Nos. 35-1 at 4–5, 35-2 at 3.) Plaintiffs' argument regarding whether they adequately proved their damages or established that their losses exceeded the $10,000 threshold for consumer

arbitrations asks the Court to reweigh evidence submitted in the arbitration proceedings, which the Court may not do in reviewing an arbitration award. *See Coutee*, 336 F.3d at 1134; *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1026 (9th Cir. 1991). Finally, Plaintiffs' challenge to the arbitrators' decisions regarding discovery do not make the necessary showings that the arbitrators abused their discretion, acted in bad faith, or committed affirmative misconduct, or that Plaintiffs were prejudiced by their decisions. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987); *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1175 (9th Cir. 2010); *Emp'rs Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490 (9th Cir. 1991); *Sunshine Min. Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987). Therefore, Plaintiffs' request to set aside the arbitrators' awards pursuant to Section 10 of the FAA is DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to lift stay and dismiss case with prejudice (Dkt. No. 33) is GRANTED. The Clerk is DIRECTED to lift the stay. This case is DISMISSED with prejudice.

DATED this 26th day of March 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE