1

2

The Honorable James L. Robart

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

Grace Galloway, Andy Lesko, and Brenda Shoss, individually and on behalf of all others similarly situated,

Case No. 2:16-cv-01941-JLR

11

**VALVE CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

12

Plaintiffs,

13

v.

 **NOTE ON MOTION CALENDAR:**
 **October 23, 2020**

14

15

VALVE CORPORATION, a Washington corporation,

16

Defendant.

17

18

19

20

21

22

23

24

25

26

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR)

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

I. <u>**SUMMARY**</u>

Valve developed the popular video game Counter Strike: Global Offensive ("CS:GO") and other games, and operates the Steam online gaming platform on which those and a multitude of other games can be played. CS:GO is an action game that makes purely cosmetic virtual items called "skins" available to players. Players can exchange those virtual items with each other on Steam. Third-party websites unrelated to Valve or Steam allegedly allow players to "wager" skins outside of Steam or CS:GO game play.

Plaintiffs do not use Steam, do not play CS:GO or other Valve games, and have not acquired or exchanged any skins. They have not used third-party gambling sites. Instead, Plaintiffs claim their minor children are Steam users who play CS:GO and allegedly bet their skins in games of chance on third-party websites. In 2016, Plaintiffs sued Valve on behalf of themselves and their minor children. On behalf of their children, Plaintiffs claimed that Valve acted wrongfully toward the minors by making skins available to them and not stopping them from gambling skins on third-party websites. On their own behalf, Plaintiffs claimed Valve's wrongful actions toward their children caused the parents to lose money they had given to their children, who then used those funds to acquire skins that they gambled on third-party websites.

Judge Coughenour compelled arbitration of both the parents' and the minors' claims pursuant to an arbitration provision in the Steam user agreement. Plaintiffs proceeded to arbitration on all asserted claims. Over the next 22 months, the parties litigated all Plaintiffs' claims (including pre-arbitration discovery that Plaintiffs requested and the arbitrators ordered) in separate arbitration proceedings in Illinois, Missouri, and Kentucky. Two of those arbitrations proceeded through full-day evidentiary hearings, where the arbitrators took evidence from all parties—including in-person testimony from the minors, Plaintiff Grace Galloway, and Valve's witnesses—and received extensive briefing.

Both arbitrators found that Valve had not acted wrongfully toward the Plaintiffs' minor children and held that neither the minors nor the parents had established their claims against

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 1

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

114783180

Valve.  (The third arbitration proceeding was dismissed for improper venue and not refiled.)
Judge Coughenour confirmed the arbitration awards and entered final judgment in Valve's favor
on all claims, which Plaintiffs appealed.  The Ninth Circuit affirmed dismissal of the minor
Plaintiffs' claims that Valve acted wrongfully toward them. (Dkt. #51 at 4.)  However, the
Circuit held that because the parents did not sign the Steam user agreement they should not have
been compelled to arbitrate their individual claims.  (*Id.* at 2.)

Accordingly, the only remaining claims are those the parents bring on their own behalf,
which allege that Valve is liable to the parents because it acted wrongfully toward their children
by facilitating their skins gambling, allegedly causing the parents financial harm.  In compelling
arbitration, Judge Coughenour noted that the parents—who did not gamble, use skins, or use
Steam—did not state a claim individually.  (Dkt. #30 at 7 ("[T]he parent plaintiffs do not allege
any facts to establish personal claims.").)

Plaintiffs amended their complaint following remand, but the Amended Complaint adds
nothing to the previous dispositions.  Plaintiffs (parents) do not allege that they gambled on
Steam or anywhere else, that they have Steam accounts or ever logged on to Steam, that they
played Valve's games, or that they have any other connection to Valve or Steam.  Instead,
Plaintiffs on their own behalf continue to allege only that they lost money because Valve acted
wrongfully toward their children.  But two arbitrators already concluded after hearings on the
merits that Valve did not act wrongfully toward the minor children and was not responsible for
their gambling.  The arbitrators' awards making those findings and rejecting the parents' claims
brought on behalf of the minors were confirmed by this Court, with the Ninth Circuit affirming
dismissal of the minors' claims.

The final judgment that Valve did not act wrongfully toward the minors remains the law
of the case and forecloses Plaintiffs' remaining claims, which are all premised on Valve acting
wrongfully toward their children.  The rules of claim preclusion and issue preclusion similarly
bar Plaintiffs from challenging the arbitrators' findings regarding the minors.  Simply put,

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

1    Plaintiffs cannot collaterally challenge the judgment that Valve *did not* act wrongfully toward

2    the minors.  This dooms their remaining claims, which all require Plaintiffs to allege, and

3    ultimately prove, that Valve *did* act wrongfully.  Having already had several bites at the apple,

4    the parents should not be permitted to relitigate this issue.

5        Separately, regardless of whether Judge Coughenour should have compelled Plaintiffs to

6    arbitrate all claims, the fact is that Plaintiffs *did* arbitrate their claims and two arbitrators

7    determined after discovery and hearings on the merits that none of them were viable.  The

8    authority and logic that led to those conclusions remains valid.  Plaintiffs cannot state a claim as

9    a matter of law on any of their causes of action, regardless of the preclusive effect of the

10   arbitrators' conclusions.

       Plaintiffs' remaining claims are not viable and should be dismissed with prejudice.

11

12            **II.**        **HISTORY OF PLAINTIFFS' CLAIMS**

13       **A.**    **Valve, CS:GO, and Skins.**

14       Valve develops video games and distributes them, along with games other companies

15   develop, over its online gaming platform, Steam.  (Dkt. #58 ("Am. Compl."), Nature of the Case

16   ¶ 1, Factual Background ¶¶ 2, 8.)  Valve developed CS:GO and released it in 2012.  (*Id.*, Factual

17   Background ¶¶ 2–3.)  CS:GO is not a gambling game or a digital casino; it is a multiplayer first-

18   person shooter video game where players compete to defeat enemy teams or complete objectives.

19   (*Id.* ¶ 3.)

20       In 2013, Valve introduced decorative virtual items into CS:GO called "skins," which give

21   weapons different finishes or textures.  (*Id.* ¶¶ 4–6.)  Skins are purely cosmetic and do not affect

22

23

24

25

26

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

or extend game play.  (*See id.* ¶¶ 5–6.)  For example, the picture on the left shows a pistol used in CS:GO without a skin, while the picture on the right shows it with a skin:



Players can obtain skins in a number of ways, including: (i) for free through random "drops" while playing CS:GO; (ii) by opening virtual weapon crates found in CS:GO using a virtual key purchased from Valve for $2.49; (iii) by using virtual money called Steam Wallet funds to buy skins from other Steam users; or (iv) by trading skins with other Steam users using Steam Trading.  (*Id.* ¶¶ 6, 17.)  Steam users cannot convert skins or Steam wallet funds into real money on Steam.  (*Id.*, Nature of Case ¶ 23(e), Factual Background ¶¶ 29, 46, 48.)

At some point after Valve introduced skins into CS:GO, unrelated third-party websites emerged that allegedly allowed Steam users to gamble on their sites using skins as currency. (*See id.*, Nature of Case ¶¶ 5–6.)  To do so, a Steam user creates a separate non-Valve account on a third-party gambling website.  (*Id.*, Factual Background ¶¶ 29–30.)  The website credits that account after the would-be gambler uses Steam Trading to transfer skins into a Steam account that the third-party website created.  (*Id.* ¶ 30.)  Valve did not create any of the alleged gambling websites, and does not own, operate, profit from, or control them.  (*See id.*, Nature of Case ¶ 13, Factual Background ¶¶ 29–30.)

**B.  <u>Plaintiffs Sue Valve to Recover Gambling Losses.</u>**

Plaintiffs' original Complaint alleged that their minor children gambled and lost skins on third-party websites.  (Dkt. #1-3 ("Compl.") ¶¶ 13–15, 99–101.)  But instead of suing these third-party website operators, Plaintiffs sued Valve.  Plaintiffs alleged—incorrectly—that Valve acted wrongfully toward their minor children by "facilitating" illegal skins gambling, and claimed that Valve's wrongful acts toward their children caused Plaintiffs financial harm because they had

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 4

given money to their children.  (*Id.* ¶¶ 7, 46, 48, 98.)  Plaintiffs asserted six claims against Valve: (1) violation of Washington's Consumer Protection Act ("CPA"); (2) violation of RCW 4.24.070, which allows persons to recover losses from illegal gambling games; (3) violation of the Gambling Act of 1973, Ch. 9.46 RCW; (4) unjust enrichment; (5) negligence; and (6) declaratory relief that the Steam Subscriber Agreement ("SSA") is invalid.  (Compl. ¶¶ 118–72.)

Valve moved to compel arbitration of all claims based on the SSA's arbitration provision. (Dkt. #10; *see also* Dkt. #11-7 ("SSA").)  The Court granted Valve's motion on April 3, 2017, compelling all Plaintiffs to arbitrate their claims and staying this case pending the outcome of arbitration.  (Dkt. #30.)  All Plaintiffs then proceeded to arbitration.

### C.   Plaintiffs' Claims Were Rejected Twice on the Merits in Arbitration.

Over 22 months, the parties litigated Plaintiffs' claims in three arbitrations.  (Dkt. #44 at 2.)  In all three, Plaintiffs used the Complaint from this case as their arbitration demand.

Plaintiffs Galloway, Shoss, and Lesko first attempted to arbitrate their claims together in a single, consolidated arbitration in Kentucky, but the American Arbitration Association ("AAA") closed that arbitration after the arbitrator ruled that the Plaintiff families brought their claims in the wrong venue and should bring their claims in the counties where each lives.  (*Id.*)

Plaintiff Galloway then submitted an arbitration demand to the AAA on behalf of herself and her minor son, J.P.  (*Id.*; *see also* Dkt. #35-2 at 3.)  This arbitration was assigned to Arbitrator Mark Schiff in Chicago.  (Dkt. #44 at 2.)  Plaintiff Brenda Shoss submitted an arbitration demand to the AAA on behalf of herself and her minor son, E.B., which was assigned to Arbitrator Thomas Laffey in St. Louis.  (*Id.*; *see also* Dkt. #35-1 at 3.)  Plaintiff Andy Lesko, part of the original consolidated arbitration, chose not to re-file his arbitration in the county of his residence or otherwise complete the arbitration process.  (Dkt. #44 at 2.)

After Plaintiffs took discovery from Valve as the arbitrators ordered, the Galloway and Shoss arbitrations proceeded to full evidentiary hearings on the merits of whether Valve acted wrongfully toward the minors and whether that caused Plaintiffs financial harm.  (*Id.*)

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 5

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1. **The Arbitrator Rules Against Plaintiff Shoss on All Claims.**

Arbitrator Laffey held an evidentiary hearing in the Shoss/E.B. arbitration on November 29, 2018, in which Plaintiff Shoss participated through counsel.  (Dkt. #35-1 at 3.) During the hearing, Arbitrator Laffey received evidence and heard live in-person testimony from E.B. and Valve's witnesses and received post-hearing briefing.  (*Id.*)  Arbitrator Laffey found that Plaintiff Shoss and E.B. had not established that Valve acted wrongfully toward E.B. or met their burden of proof on any claims:

- "E.B. has not carried his burden of proof to establish that Valve is responsible for his gambling losses or should be required to make the practice changes [he] sought . . . ." (*Id.* at 4.)

- There was no evidence presented "that [E.B.'s] gambling was the result of some unfair or deceptive practice by Valve." (*Id.*)

- "[T]here was no evidence the gambling was done for Valve's benefit." (*Id.*)

- "Additionally there was no evidence presented that Valve 'controlled the operation' of the gambling activity . . . ." (*Id.*)

- "E.B.'s negligence claim also fails because the evidence does not support the proposition that Valve had a duty to prevent E.B. from gambling with skins nor an obligation to design its game and business in a way that would make it impossible for subscribers to gamble on third party websites in which Valve had no interest." (*Id.*)

- "[T]he evidence does not show any action Valve could have taken to assure itself skins couldn't be used for gambling other than perhaps to ban trading of skins altogether which could not reasonably be required given the undisputed evidence of the value its subscribers attach to being able to trade skins and that this activity takes place without any connection to gambling on a regular basis." (*Id.* at 5.)

- "E.B.'s unjust enrichment claim also fails as there was no evidence Valve was unjustly enriched . . . ." (*Id.*)

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

- "Finally, even if E.B. had presented evidence to support any of his legal theories for recovery, Valve argues that there was no sufficient proof of the alleged damages suffered by E.B. and the Arbitrator agrees."  (*Id.*)

Based on these findings, Arbitrator Laffey ruled in Valve's favor on all claims.  (*Id.*)

## 2. A Different Arbitrator Rules Against Plaintiff Galloway on All Claims.

Arbitrator Schiff held an evidentiary hearing in the Galloway/J.P. arbitration on December 13, 2018, in which Plaintiff Galloway and her minor son, J.P., participated. (Dkt. #35-2 at 3.)  Arbitrator Schiff received evidence, heard in-person testimony from the parties' witnesses (including Plaintiff Galloway and J.P.), and received post-hearing briefing. (*Id.*)  Arbitrator Schiff similarly found that Plaintiff Galloway and J.P. did not prove their case:

- "The testimony was that [Valve] had no financial interest in or connection to such third party gambling websites and did not directly derive revenue from them."  (*Id.*)
- "[Valve] argues that Claimant did not prove their case.  [Valve] is correct."  (*Id.*)
- "Claimant is seeking a civil remedy claiming that [Valve's] conduct is such that it violates public policy.  On its face, [Valve's] website does not.  There is no proven connection with the gambling websites . . . ."  (*Id.*)
- "Even the damages are speculative."  (*Id.*)
- "Claimant is not entitled to relief in this proceeding."  (*Id.* at 4.)

Like Arbitrator Laffey, Arbitrator Schiff ruled in Valve's favor on all claims.  (*Id.*)

## D. This Court Confirms the Arbitration Awards and Plaintiffs Appeal; the Ninth Circuit Affirms in Part and Reverses in Part.

After the arbitrators entered their awards, Judge Coughenour lifted the stay, confirmed the awards, and entered judgment in Valve's favor on all claims.  (Dkts. #44 & #45.)  Plaintiffs appealed (Dkt. #46), arguing that the arbitrators' decisions on the merits were manifestly erroneous and that Judge Coughenour wrongly compelled them to arbitrate their claims.

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 7

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

114783180

On April 3, 2020, the Ninth Circuit affirmed the dismissal of all claims brought by the parents on behalf of their children.  (Dkt. #51 at 4; *G.G. v. Valve Corp.*, 799 F. App'x 557, 559 (9th Cir. Apr. 3, 2020).)  However, it held the parents should not have been compelled to arbitrate any claims they might have in their individual capacities because they did not sign the SSA and did not seek to exploit it by enforcing it.  (*Id.* at 2; 799 F. App'x at 558.)  The Ninth Circuit therefore ruled that the parents' individual claims must proceed in court "to the extent they are viable."  (*Id.* at 2; 799 F. App'x at 558.)  In light of the Ninth Circuit's ruling, the parents' individual claims—which are premised on Valve acting wrongfully toward their children, an issue that has already been resolved in Valve's favor—are the only claims remaining.  (*Id.* at 2, 4; 799 F. App'x at 558, 559.)

**E.**     **The Parents Amend Their Complaint and Reassert Their Individual Claims.**

Following the Ninth Circuit's ruling, the parents filed a First Amended Complaint to add a handful of factual allegations about (i) virtual items in other Valve video games, (ii) crate opening in CS:GO (a way Steam users can acquire skins), and (iii) Valve's alleged refusal to take steps Plaintiffs claim might have prevented their minor children from gambling skins on third-party websites (e.g., shut down Steam features that let users trade items, etc.).  (Am. Compl., Nature of Case ¶¶ 8, 11–12, 19–20.)  The parent Plaintiffs also re-worded their allegations about Valve's duties, now claiming that Valve owed duties:

- To "provide a reliable and safe videogaming experience" (even though the parents do not play Valve's video games);

- To "ensure that its Steam platform was used in a manner that comported with applicable law" (even though the parents did not use Steam); and

- To "stop Skins gambling" (even though the parents did not engage in skins gambling).

*(Id.*, Count IV ¶¶ 139, 141.)

The parents did not plead any new facts to support their assertion that Valve owes ***them*** these alleged duties.  And as before, they make no claim that they themselves used Steam,

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

gambled skins, or interacted with Valve in any way.  Instead, Plaintiffs claim only that their minor children "used funds provided by [Plaintiffs] to purchase CS:GO from Valve and to purchase numerous Skins and keys, which [their children] then gambled with and lost" and that Plaintiffs "would not have provided said funds to [their children] had [Plaintiffs] known that they were being used for illegal gambling facilitated by Valve."  (*Id.*, Parties ¶¶ 27–29.)

### III.    **AUTHORITY & ARGUMENT**

Plaintiffs' narrow remaining claims are derivative of the minors' claims and require a finding that Valve facilitated the minors' skins gambling or acted wrongfully toward them.  If Valve's actions toward the minors were not wrongful or illegal—as the two arbitrators ruled, in decisions that were confirmed by Judge Coughenour and affirmed by the Ninth Circuit (*G.G.*, 799 F. App'x at 559)—Valve is not responsible for any claimed financial loss Plaintiffs suffered when their children chose to gamble.  Plaintiffs cannot collaterally attack the findings and judgment on the minors' claims, or seek contradictory findings, for purposes of their remaining personal claims, that Valve acted wrongfully toward the minors.  Aside from the preclusive effect of the prior judgment, the same logic and authority that led to the prior judgment leads to the same conclusion here.  Plaintiffs' remaining claims fail as a matter of law.

### A.    **The Arbitrators' Decisions That Valve Did Not Act Wrongfully Toward the Minors Cannot Be Challenged By the Parents, and Eliminate the Necessary Premise of the Parents' Claims.**

Three rules prevent the parents from attacking the judgment on the minors' claims or retrying issues that were determined by the arbitrators in concluding that Valve did not act wrongfully toward the minors: (1) the law of the case; (2) claim preclusion (also called res judicata); and (3) issue preclusion (also called issue preclusion).

### 1.    **The Judgment on the Minors' Claims and the Arbitrators' Decisions Are the Law of the Case.**

The law of the case doctrine generally precludes a court from "reconsidering an issue previously decided by the same court . . . ."  *United States v. Lummi Indian Tribe*, 235 F.3d 443,

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

452 (9th Cir. 2000).  The doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation omitted) (internal quotation marks omitted).  The law of the case applies to judgments confirming arbitration awards with the same force as any other judgment.  *See, e.g.*, 9 U.S.C. § 13; *Barker v. Halliburton Co.*, No. CIV.A H-07-2677, 2010 WL 3339207, at *2 (S.D. Tex. Aug. 23, 2010) ("[B]ecause the court confirmed the arbitration award, it is the law of the case and has preclusive effect."), *aff'd*, 645 F.3d 297 (5th Cir. 2011); *see also Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble*, No. 4:07-CV-1245, 2009 WL 4906525, at *15 (M.D. Pa. Dec. 15, 2009) (rejecting defendant's objections to contribution calculations under law of the case doctrine because they would "effectively re-open[] the arbitrator's decision").

In *Barker*, for example, a husband and wife brought separate claims against the wife's employer (Halliburton) based on the same facts.  2010 WL 3339207, at *1.  The district court compelled arbitration of the wife's Title VII and tort claims under her employment agreement with Halliburton and stayed the husband's loss of consortium claims pending outcome of the arbitration.  *Id.*  The arbitrator ruled in the wife's favor on her Title VII claim, but dismissed her tort claims.  *Id.*  The district court confirmed the arbitrator's award and then held Halliburton could not be liable to the husband on his loss of consortium tort claim because the arbitrator's award was "the law of the case and has preclusive effect."  *Id.* at *2 (citing 9 U.S.C. § 13).  The law of the case similarly applies here and bars the parents from retrying the issue of whether Valve facilitated gambling by their children, which was tried to, and decided by, two arbitrators.

That the Ninth Circuit held Plaintiffs were not required to arbitrate their own individual claims is irrelevant; Valve does not need to show that Plaintiffs are bound by the arbitrators' rulings on Plaintiffs' own claims.  Rather, Plaintiffs' remaining claims allege they lost money as a result of Valve's allegedly wrongful actions against their children.  The Court already entered judgment on the minors' claims, confirming the arbitrators' awards ruling that Valve did not

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

facilitate their gambling or act wrongfully or illegally toward them. *That* judgment is law of the case, barring Plaintiffs from now claiming (again) that Valve acted wrongfully or illegally by facilitating gambling by their children, thereby causing the parents financial harm.

### 2. Claim Preclusion Bars the Parents From Challenging the Arbitrators' Conclusions or Seeking a Contrary Result Here.

The rule of claim preclusion prevents Plaintiffs from challenging the arbitrators' rejection of the minors' claims, making it impossible for Plaintiffs to establish their remaining claims, which are derivative of the minors' claims and depend on a finding that Valve acted wrongfully toward their children.

Washington law determines the preclusive effect of the arbitrators' awards because this is a diversity action. *See Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002). Under Washington law, claim preclusion "bars litigation of *claims* that were brought or might have been brought in a prior proceeding." *Weaver v. City of Everett*, 194 Wash. 2d 464, 473, 450 P.3d 177 (2019) (emphasis in original). As this Court recognized, in Washington "[claim preclusion] is the rule, not the exception." *Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F. Supp. 3d 1161, 1165 (W.D. Wash. 2014) (Robart, J.) (citation omitted) (internal quotation marks omitted).

Claim preclusion applies when a prior judgment concerns the same "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made." *Rains v. State*, 100 Wash. 2d 660, 663, 674 P.2d 165 (1983). A prior arbitration proceeding can be the basis for claim preclusion. *See MedChoice Risk Retention Grp. Inc. v. Katz*, No. C17-387-TSZ, 2017 WL 3970867, at *10–12 (W.D. Wash. Sept. 8, 2017) (applying Washington claim preclusion law; "Defendant has an interest in the finality and reliability of the binding arbitration proceeding, which would be impaired by allowing MedChoice to relitigate its claims in federal court; the claims in this action arise out of the same transactional nucleus of facts . . . and it is clear that resolution of the present action would require the jury and the Court to reconsider the same evidence presented at the arbitration hearing.").

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

1    All four factors are satisfied here.  The first element—the same subject matter—is met

2    because the arbitrations and the federal action both concern Valve's alleged facilitation of skins

3    gambling.  The second element—the same causes of action—is also satisfied.  Plaintiffs used

4    their federal court complaint from this case as their arbitration demand in all three arbitrations.

5    Plaintiffs are now pursuing identical causes of action here (less one claim they dropped), and

6    their new factual allegations could have been asserted in the arbitrations.  *Feminist Women's*

7    *Health Ctr. v. Codispoti*, 63 F.3d 863, 867 (9th Cir. 1995) (explaining that claim preclusion

8    "applies to every point which properly belonged to the subject of litigation, and which the

9    parties, exercising reasonable diligence, might have brought forward at the time") (citation

10   omitted) (internal quotation marks omitted).  Moreover, this action and the arbitrations both arise

11   out of the same transactional nucleus of facts and would involve the same evidence.  *See Rains*,

12   100 Wash. 2d at 664 (whether two matters arise out of the same transactional nucleus of facts

13   and involve common evidence are factors in determining identity of causes of action).

14   The third and fourth elements—same persons and parties, quality of persons—are met.

15   Plaintiffs asserted all claims and actively participated in the prior arbitrations.  They are also in

16   privity with the minors, whose claims the parents asserted at the arbitrations.  *See Loveridge v.*

17   *Fred Meyer, Inc.*, 125 Wash. 2d 759, 764, 887 P.2d 898 (1995) ("Under the principles of [claim

18   preclusion], a judgment is binding upon parties to the litigation and persons in privity with those

19   parties."); *Ensley v. Pitcher*, 152 Wash. App. 891, 902, 222 P.3d 99 (2009) ("Different

20   defendants in separate suits are the same party for res judicata purposes as long as they are in

21   privity.") (citing *Kuhlman v. Thomas*, 78 Wash. App. 115, 121, 897 P.2d 365 (1995)).  In both

22   the prior arbitrations and this action, Valve is the defendant.

23   Regardless of whether Plaintiffs should have been compelled to arbitrate their own

24   claims, the rule of claim preclusion prevents them from challenging the arbitrators' conclusions

25   that Valve did not act wrongfully or illegally toward their children.

26

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

### 3. The Parents' Claims Are Barred by Issue Preclusion.

Issue preclusion "bars relitigation of particular *issues* decided in a prior proceeding." *Weaver*, 194 Wash. 2d at 473. "[A]n arbitration proceeding may be the basis for . . . issue preclusion." *Neff v. Allstate Ins. Co.*, 70 Wash. App. 796, 800, 855 P.2d 1223 (1993). Issue preclusion applies when there are: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom preclusion is sought was a party to, or in privity with a party to, the prior proceeding; and (4) the application of issue preclusion would not be unjust (i.e., the parties to the earlier proceeding had a "full and fair hearing" on the issue). *Christensen v. Grant Cty. Hosp. Dist. No. 1*, 152 Wash. 2d 299, 307, 96 P.3d 957 (2004); *Neff*, 70 Wash. App. at 800–01.

All four elements are met here. First, the issues decided in the arbitrations are identical to those the parents will present once again in this action; all claims in both proceedings rest on the allegation that Valve facilitated skins gambling by their children and arise from a common nucleus of facts. Second, the arbitrations ended in awards on the merits of all claims, which this Court confirmed in a final judgment, and the Ninth Circuit affirmed on appeal (the Ninth Circuit reversed only the order compelling the parents to arbitrate their personal claims). (Dkt. #50 at 4.) Third, the parents were active participants in the arbitrations and in privity with the minors in the arbitrations.

Finally, it would not be unjust to apply issue preclusion here. Rather, it is fair and consistent to bind Plaintiffs to the arbitrators' findings that Valve did not act wrongfully toward their children because Plaintiffs presented evidence to the arbitrators and requested rulings on the merits on all claims. (Dkt. #44 at 2.) Those actions constituted Plaintiffs' consent to the arbitrators making such decisions. *See, e.g.*, *PowerAgent Inc. v. Electronic Data Sys. Corp.*, 358 F.3d 1187, 1192 (9th Cir. 2004) ("Having affirmatively urged the arbitrators to decide arbitrability and asserted their authority to do so, PowerAgent cannot await the outcome and, after an unfavorable decision, challenge the authority of the arbitrators to act on that very issue.").

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

Because all four elements for issue preclusion are met, Plaintiffs are bound by the arbitrators' findings that Valve did not act wrongfully toward the minors or facilitate their skins gambling, resolving the legal and factual predicates for Plaintiffs' claims on their own behalf.

### 4.   Plaintiff Lesko Is Bound by the Arbitrators' Decisions.

The arbitrator in the original consolidated arbitration that all three Plaintiffs filed ruled that venue was improper and that Plaintiffs must bring their claims in their counties of residence. (Dkt. #44 at 2.)  The AAA then closed the Plaintiffs' consolidated arbitration.  Plaintiffs Galloway and Shoss filed individual arbitration demands in the counties where they reside but Plaintiff Lesko did not, notwithstanding the first arbitrator's decision and Judge Coughenour's order compelling arbitration.

Though Plaintiff Lesko did not complete the arbitration process, the rules of law of the case, claim preclusion, and issue preclusion equally bar him from challenging the arbitrators' findings that Valve did not act wrongfully toward the minors as they bar such challenges by Plaintiffs Galloway and Shoss.  Plaintiff Lesko was in privity with Plaintiffs Galloway and Shoss, who adequately represented his interests in the two arbitrations completed on the merits because they joined in the same Complaint and alleged—and tried to prove—the same harm and wrongdoing by Valve.  *See Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, 161 Wash. 2d 214, 224, 164 P.3d 500 (2007) ("A nonparty is in privity with a party if that party adequately represented the nonparty's interest in the prior proceeding."); *see also Feminist Women's Health Ctr.*, 63 F.3d at 867 (explaining that Washington law applies claim preclusion when "the parties involved in the present action are virtually identical to the parties that litigated the prior state action").

The rule of issue preclusion further binds Plaintiff Lesko under the virtual representation doctrine.  The virtual representation doctrine allows issue preclusion "to be used against a nonparty when the former adjudication involved a party with substantial identity of interests with the nonparty." *Garcia v. Wilson*, 63 Wash. App. 516, 520, 820 P.2d 964 (1991).  "In effect, the

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

doctrine allows courts to use *identity of interests* as a proxy for the *identity of parties* element of issue preclusion." Kathleen M. McGinnis, *Revisiting Claim & Issue Preclusion in Washington*, 90 Wash. L. Rev. 75, 112 (2015). Plaintiff Lesko's allegations of wrongdoing in the original Complaint mirror those of Plaintiffs Galloway and Shoss, and the Complaint alleged all three were similarly situated and members of the same class that raised common factual and legal issues. (Compl. ¶¶ 12–14, 107–09.) Plaintiff Lesko shares an identity of interests with Plaintiffs Galloway and Shoss, and is therefore equally barred by issue preclusion from challenging the arbitrators' conclusions that Valve did not act wrongfully toward the minor children.

### B.  The Parents Do Not Plead Sufficient Facts to State a Claim.

To survive a Rule 12(b)(6) motion to dismiss, the parents must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted). A claim for relief is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is proper when a complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint that alleges only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, the parents do not allege sufficient facts to support their claims. In their original Complaint, the parents alleged their children used money given to them by their parents to buy skins they gambled, causing the parents financial harm. (Compl. ¶¶ 98–101.) Judge Coughenour recognized those bare allegations were insufficient to state individual claims. (Dkt. #30 at 7 ("[T]he parent Plaintiffs do not allege any facts to establish personal claims . . . .").)

The parents try to bolster their claims in the Amended Complaint by adding conclusory assertions that Valve had a duty to "provide a reliable and safe videogaming experience," to

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 15

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

"ensure that its Steam platform was used in a manner that comported with applicable law," and to "stop Skins gambling" by taking steps to stop it.  (Am. Compl., Count IV ¶¶ 139, 141.)  But, just as before, the parents fail to plead *facts* that, if true, would give Valve any of these alleged duties *to them*.  The parents do not claim they had a contractual or special relationship with Valve that gave rise to a duty.  They do not allege that they used Valve's services or products. They did not obtain virtual items or wager them on third-party websites.

Plaintiffs plead no facts that could support a duty to the parents personally, just assertions that such duties must exist.  Moreover, they plead no facts that could possibly give rise to liability when Valve did not act wrongfully or illegally toward their children (as is law of the case).  Judge Coughenour's prior comments about the lack of basis for the parents' claims remain true (*see* Dkt. #30 at 7).  Those claims should be dismissed.

### C.   The Parents Could Not State a Claim Even if Given Leave to Amend.

Even if the Court were to reach the merits of Plaintiffs' remaining claims, which it need not and should not do, Plaintiffs' claims fail as a matter of law.

### 1.   Plaintiffs' CPA Claim (Count 1) Fails as a Matter of Law Because They Do Not Allege an "Unfair or Deceptive Act or Practice."

There are five necessary elements of a CPA claim: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; (4) injury to business or property; and (5) proximately caused by the unfair or deceptive act.  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784–85, 719 P.2d 531 (1986).

Plaintiffs cannot establish the first required element.  An unfair or deceptive act or practice can be established through (1) "a *per se* violation of statute," (2) "an act or practice that has the capacity to deceive substantial portions of the public," or (3) "an unfair or deceptive act or practice not regulated by statute but in violation of public interest."  *Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 787, 295 P.3d 1179 (2013).

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

114783180

Plaintiffs assert a *per se* CPA claim based on Valve's alleged violation of Washington's gambling statutes.  (Am. Compl., Count I ¶ 106.)  First, not every statutory violation is a *per se* CPA violation.  *State v. Schwab*, 103 Wash. 2d 542, 549, 693 P.2d 108 (1985).  Instead, "[t]o constitute a *per se* violation, the statute violated must contain a specific declaration of public interest."  *Crane & Crane, Inc. v. C & D Elec., Inc.*, 37 Wash. App. 560, 565, 683 P.2d 1103 (1984); *see also Brummett v. Washington's Lottery*, 171 Wash. App. 664, 677–78, 288 P.3d 48 (2012) (holding a *per se* CPA claim could not be based on Washington's lottery statutes because they do not "contain a specific legislative declaration of 'public interest'").  The Washington Legislature has not declared that violating Washington's gambling statutes is a *per se* violation, so those statutes cannot be the basis for a *per se* CPA claim.  *See* Wash. State Office of the Attorney General, *Statutes*, https://www.atg.wa.gov/statutes (last visited Sept. 30, 2020) (compiling *per se* statutes for CPA claims).  Second, Plaintiffs cannot show that Valve violated Washington's gambling statutes, as discussed below.

Nor can the parents show an "unfair or deceptive act or practice" in the absence of a *per se* violation.  At the outset, the alleged injuries were easily avoidable—as the arbitrators held in dismissing the minors' claims, the minors could have refrained from gambling skins.  (*See* Dkt. #35-2 at 3 ("JP misrepresented his age and then willfully engaged in gambling through third party websites.  Furthermore, while Claimant took part in a class action lawsuit against [Valve] involving the same factual matters, JP was still continuing to engage in gambling for at least another year.").)  If a consumer can avoid the injury, an act or practice is not unfair under the CPA.  *Esch v. Legacy Salmon Creek Hosp.*, 738 F. App'x 430, 430–31 (9th Cir. 2018) (applying Washington law); *see also Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wash. App. 594, 628, 396 P.3d 351 (2017).

Nor could Plaintiffs establish that the minors were deceived about skins gambling.  The Amended Complaint acknowledges that the minors knew they could lose money while gambling skins on third-party websites.  (Am. Compl., Parties ¶¶ 27–29, Factual Background ¶¶ 72, 74.)

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 17

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

The arbitrators' findings reinforce that conclusion.  (*See* Dkt. #35-1 at 4 ("[T]he evidence was that E.B. was introduced to gambling by friends and voluntarily engaged in gambling with skins on third party websites without any inducement to do so by Valve.").)  This establishes the minors knowingly chose to gamble on third-party websites and were not tricked or misled into doing so by Valve.  *See Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, 810 F.3d 509, 511 (7th Cir. 2016) ("A gambler knows that the money he puts in the pot is at risk.  It is not a risk he *has* to take; he takes it because he hopes to win the pot, or simply because he likes gambling or risk taking in general.").  There is no support in Washington law for a CPA violation based on those facts.  *See Esch*, 738 F. App'x at 431 (holding plaintiffs' CPA claim was not actionable because they "knew the bill was in error when they received it").

Count 1 should be dismissed because the parents do not (and cannot) plead a cognizable "unfair or deceptive act or practice" under the CPA.

### 2. Count 2 Fails as a Matter of Law.

#### a. *RCW 9.46.200 Does Not Create a Private Cause of Action for Losses From Illegal Gambling.*

Count 2 alleges violation of the Gambling Act of 1973 and asserts a claim under RCW 9.46.200, which creates a statutory cause of action to recover losses in certain circumstances from "gambling activity ***authorized*** by this chapter," e.g., in charitable bingo games authorized by RCW 9.46.0311.  RCW 9.46.200 (emphasis added).  The parents, however, repeatedly allege that skins gambling is ***illegal*** and not an "authorized" gambling activity.  (*E.g.*, Am. Compl., Nature of Case ¶¶ 3, 6, 9–10, 13, Count II ¶¶ 122–23.)  Construing RCW 9.46.200 to provide a cause of action for illegal gambling contradicts the statute's plain language, which must be strictly construed.  *See Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (noting that the rule of lenity applies to criminal statutes, even if applied in a noncriminal context); *Internet Cmty. & Ent. Corp. v. Wash. State Gambling Comm'n*, 169 Wash. 2d 687, 691–92, 238 P.3d 1163 (2010) (acknowledging that the Washington Court of Appeals applied the rule of lenity to RCW ch. 9.46

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 18

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

1    and reversing on other statutory construction grounds without rejecting rule of lenity or adopting

2    broad construction of statute).

3        Notably, Plaintiffs' original Complaint asserted a claim under RCW 4.24.070, which

4    expressly creates a cause of action for recovery of losses at illegal gambling games.  (Compl. ¶¶

5    132–41.)  But after the arbitrators ruled that Valve did not violate that statute either, Plaintiffs

6    chose to omit it from their Amended Complaint.  They cannot now shoehorn their illegal

7    gambling theory into a claim under RCW 9.46.200, which relates to only authorized gambling.

8    Moreover, because RCW 4.24.070 already provides a cause of action to recover losses from

9    illegal gambling, it would be duplicative and unnecessary to read a cause of action for illegal

10   gambling into RCW 9.46.200.  *See In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wash.

11   2d 834, 842, 215 P.3d 166 (2009) ("Where the legislature uses certain statutory language in one

12   statute and different language in another, a difference in legislative intent is evidenced.").

13       Recognizing a claim for the parents under RCW 9.46.200 on these facts would

14   undermine the Legislature's intent of deterring underage gambling.  RCW 9.46.228(1) bars

15   minors from engaging in "authorized gambling activities."  To further that purpose, RCW

16   9.46.228(5) provides that "[a] person under the age of eighteen who violates subsection (1) of

17   this section ***shall not collect any winnings or recover any losses*** arising as a result of unlawfully

18   participating in any gambling activity. . . ."  (emphasis added).  Because the parents allege only

19   that ***their children*** gambled, the parents would necessarily be recovering the minors' gambling

20   losses, circumventing RCW 9.46.228 and rendering irrelevant the statutory prohibition on

21   recovery of gambling losses by minors.  Washington law does not permit such a result.  *See State*

22   *v. Velasquez*, 176 Wash. 2d 333, 336, 292 P.3d 92 (2013) ("[R]elated statutory provisions must

23   be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the

24   respective statutes."); *Philippides v. Bernard*, 151 Wash. 2d 376, 385–86, 88 P.3d 939 (2004)

25   (same).

26

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 19

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> b.    *The Parents Cannot Establish That Valve Engaged in "Gambling"*
>        *Under Washington Law.*

Count 2 alleges that Valve violated RCW ch. 9.46 *et seq.* by engaging in "professional gambling" and facilitating gambling by others.  (*See* Am. Compl., Count II ¶¶ 119–27.)  This claim fails as a matter of law because the parents cannot show that Valve engaged in or facilitated "gambling," which Washington law defines as:

> [S]taking or risking **something of value** upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive **something of value** in the event of a certain outcome.

RCW 9.46.0237 (emphasis added).

Washington's gambling statute defines a "thing of value" as (1) "money or property," (2) a "token, object or article exchangeable for money or property," or (3) a "credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."  RCW 9.46.0285.  Skins are none of these.

Skins are not "money" because they are not recognized as currency by any government. *See* Black's Law Dictionary (11th ed. 2019) (defining "money" in relevant part as "[t]he medium of exchange authorized or adopted by a government as part of its currency").  Nor are skins "property" because the SSA only grants Steam users a non-exclusive license for their use, not ownership.  (Dkt. #11-7 at 3, SSA § 2.A.)

Similarly, skins are not a "token, object or article exchangeable for money or property." Skins cannot be exchanged or sold for real money or property through Valve, as Plaintiffs concede.  (Am. Compl., Nature of Case ¶ 23(e) ("Users cannot cash out proceeds from Skins sales in their Steam wallet for cash . . . .").  That skins can be exchanged for virtual "Steam Wallet funds" does not make them a "thing of value" because the SSA provides that Steam Wallet funds are not money or property.  (Dkt. #11-7 at 5, SSA § 3.C.)  To the extent the parents argue that skins can be sold for real money on a secondary market outside of Steam, that

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

114783180

argument fails because the SSA prohibits such sales outside of Steam.  (Dkt. #11-7 at 4, 6, SSA §§ 2.G & 3.D; Am. Compl., Nature of Case ¶ 18); *see also Kater v. Churchill Downs, Inc.*, 886 F.3d 784, 788 n.2 (9th Cir. 2018) (rejecting argument that virtual items were a "thing of value" because users could sell them on secondary market in violation of the terms of use).

Finally, skins are not a "credit or promise . . . contemplating transfer of money or property . . . or involving extension of . . . a privilege of playing at a game or scheme without charge" because they are digital decorations that are not necessary for game play and do not affect or extend gameplay.  (*See* Am. Compl., Factual Background ¶¶ 5–6); *cf. Kater*, 886 F.3d at 787 (concluding virtual chips were a "thing of value" because they were necessary to play the game and allowed a user "to place another wager or re-spin a slot machine").

Because skins are not a "thing of value," the parents cannot establish that Valve engaged in gambling.  As a result, Count 2 fails as a matter of law.

### 3.     The Parents Cannot State a Claim for Unjust Enrichment (Count 3).

Plaintiffs' unjust enrichment claim rests on the same alleged conduct as their CPA, gambling, and negligence claims.  (*See* Am. Compl., Count III ¶¶ 129–37 (alleging that Valve unjustly enriched itself from revenues derived from skins gambling).)  It fails for the same reasons and should be dismissed.  *E.g.*, *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 744 (N.D. Ill. 2016) ("Phillips's unjust enrichment claim is based on the same allegedly improper conduct that her [other claims] are based on, namely, that Double Down Casino allegedly operates unlawful gambling devices.  But those claims have been rejected.  Because Phillips's unjust enrichment claim rests on the same conduct . . . Phillips's unjust enrichment claim must also be dismissed.").

### 4.     The Parents Cannot State a Negligence Claim (Count 4).

To prevail on their negligence claim, Plaintiffs must allege facts that, if true, show Valve owed them a duty of care.  *Folsom v. Burger King*, 135 Wash. 2d 658, 671, 958 P.2d 301 (1998); "If there is no duty, [the parents] have no claim."  *Burg v. Shannon & Wilson, Inc.*, 110 Wash.

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

App. 798, 804, 43 P.3d 526 (2002).  "The existence of a duty is a question of law."  *Folsom*, 135

Wash. 2d at 671.

Here, Plaintiffs merely assert that Valve owed various duties (Am. Compl., Count IV ¶¶

139, 141), but do not plead facts to establish that Valve owed any of those alleged duties to

***them***.  The parent Plaintiffs concede they have no contractual relationship with Valve.  (*Id.*,

Factual Background ¶ 58.)  They do not claim to have used Valve's services or products, played

the Valve games at issue, or created the required Steam account.  Nor did they acquire skins or

gamble them on third-party websites.  Instead, the parents plead only that they gave money to

their children, and derive their claims through alleged wrongs done to those children.  (*Id.*,

Nature of Case ¶ 25.)  But Plaintiffs are bound by the arbitrators' conclusions that Valve had no

duty to stop the children from gambling skins or to stop third parties from using skins as

gambling currency in games of chance.

Even aside from those binding rulings, Washington law is clear that Valve owes no duty

to the parents under these circumstances.  *Folsom*, 135 Wash. 2d at 674 ("[A]bsent affirmative

conduct or a special relationship, no legal duty to come to the aid of a stranger

exists. . . . Further, a private person does not have the duty to protect others from criminal acts of

third parties.").  Nor does Valve have a duty to protect against alleged injuries that occur on

third-party websites Valve does not own, operate, or control.  *See Smith v. Stockdale*, 166 Wash.

App. 557, 570, 271 P.3d 917 (2012) (holding that business owner owed no duty to protect

customer from dangers on adjacent property); *Parrilla v. King County*, 138 Wash. App. 427,

436, 157 P.3d 879 (2007) ("[A]n actor ordinarily owes no duty to protect an injured party from

harm caused by the criminal acts of third parties."); *Ganno v. Lanoga Corp.*, 119 Wash. App.

310, 316, 80 P.3d 180 (2003) (concluding lumber store owed no duty to customer who was

injured by a wood beam purchased from the store because injury occurred on a public street after

the customer left the store's property).

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 22

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

114783180

Plaintiffs incorrectly assert that Valve undertook a duty to stop skins gambling altogether by taking some steps against the misuse of Steam by a handful of third-party websites.  (Am. Compl., Count IV ¶ 141.)  Plaintiffs have not alleged any facts showing that by taking such steps Valve voluntarily undertook a duty to protect the *parents*, who are not Valve customers, not Steam users, and not skins gamblers.  *See Burg*, 110 Wash. App. at 809 (holding plaintiffs failed to show defendant "had voluntarily undertaken a duty directly to [plaintiffs]").  Plaintiffs are also wrong on the law—in taking action to stop the misuse of Steam accounts by a handful of websites, Valve does not broadly undertake a duty to police what others do on the Internet outside of Steam, or to combat skins gambling in all possible forums or ways.  *See, e.g.*, *Pruitt v. Savage*, 128 Wash. App. 327, 333, 115 P.3d 1000 (2005) (noting that although "one who undertakes to act in a given situation has a duty to follow through with reasonable care," a defendant who voluntarily assumed a duty to fix a garage door from "bouncing back" after it was opened did not thereby assume a broader duty to fix the door from "falling at random times, or . . . all of the door's possible defects") (citations omitted).

At bottom, Plaintiffs simply do not allege any facts that could establish that Valve owes *them* any duties, and they cannot base a negligence claim on duties allegedly owed to the minors who actually used Steam and wagered their skins on third party websites.  Plaintiffs' negligence claim fails as a matter of law and should be dismissed.  *See Burg*, 110 Wash. App. at 803 (affirming dismissal of negligence claims for lack of duty).

### 5.   The Parents' Claim for Injunctive Relief (Count 5) Is Simply a List of Requested Remedies, Not an Independent Cause of Action.

The parents purport to assert a separate claim for "Injunctive Relief."  Injunctive relief is a remedy for an underlying cause of action, not an independent cause of action.  *E.g.*, *Diaz-Amador v. Wells Fargo Home Mortgs.*, 856 F. Supp. 2d 1074, 1083 (D. Ariz. 2012) ("Plaintiff cannot plead an independent cause of action for injunctive relief because this is a remedy for an underlying cause of action, not a separate cause of action in and of itself."); *Jensen v. Quality*

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 23

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

1  *Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("An injunction is a remedy, not

2  a separate claim or cause of action.  A pleading can . . . request injunctive relief in connection

3  with a substantive claim, but a separately pled claim or cause of action for injunctive relief is

4  inappropriate.").

5          Rather, to obtain injunctive relief the parents must (1) succeed on at least one of their

6  underlying claims, and (2) show that injunctive relief is available and appropriate as a remedy for

7  that claim.  For the reasons discussed above, the parents cannot succeed on any of their

8  underlying claims, so their request for injunctive relief should be dismissed.  *See Markoff v.*

9  *Puget Sound Energy, Inc.*, 9 Wash. App. 2d 833, 851, 447 P.3d 577 (2019).

10         Moreover, injunctive relief is not available as a remedy for Plaintiffs' CPA claim because

11  they did not comply with the statutory requirement to serve the Washington State Attorney

12  General with their Complaint.  RCW 19.86.095.  Nor is injunctive relief available for the

13  parents' claim under RCW 9.46.200 (Count 2), which creates a statutory right of action only to

14  recover money damages but does not mention or authorize injunctive relief as a remedy.

15  ## IV.   CONCLUSION

16         The core allegation in each of Plaintiffs' claims is that Valve facilitated skins gambling

17  by their children and did not do enough to stop the children from gambling.  A valid judgment

18  previously entered in this case—that Plaintiffs cannot collaterally attack or avoid—rejects that

19  claim and holds that Valve did not act wrongfully or illegally toward the minors.  Without that

20  necessary building block, Plaintiffs' remaining claims come crashing down.  Plaintiffs' First

21  Amended Complaint fails to state a claim upon which relief can be granted and should be

22  dismissed with prejudice.

23

24

25

26

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 24

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

DATED this 1st day of October, 2020.

FOX ROTHSCHILD LLP

*s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766

*Attorneys for Defendant Valve Corporation*

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 25

114783180

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle, Washington.  I am a U.S. citizen over the age of eighteen years and not a party to the within cause.  On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

| Service List | |
|---|---|
| Kim D. Stephens, WSBA #11984<br>Jason T. Dennett, WSBA #30686<br>**TOUSLEY BRAIN STEPHENS PLLC**<br>1700 Seventh Avenue, Suite 2200<br>Seattle, WA  98101<br>Tel: (206) 682-5600<br>Fax: (206) 682-2992<br>KStephens@tousley.com<br>jdennett@tousley.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF/ Email<br>☐ Via over-night delivery |
| Jasper D. Ward IV<br>Alex C. Davis<br>Patrick Walsh<br>**JONES WARD PLC**<br>Marion E. Taylor Building<br>312 S. Fourth Street, Sixth Floor<br>Louisville, Kentucky 40202<br>Tel: (502) 882-6000<br>Fax: (502) 587-2007<br>jasper@jonesward.com<br>alex@jonesward.com<br>patrick@jonesward.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 26

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

114783180

| Ray W. Kahler<br>**STRITMATTER KESSLER WHELAN**<br>**WITHEY COLUCCIO**<br>413 8th Street<br>Hoquiam, WA 98550<br>Tel: (360) 533-2710<br>Fax: (360) 532-8032<br>ray@stritmatter.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |
|---|---|

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

EXECUTED this 1st day of October, 2020, in Tacoma, Washington.

*Courtney Brooks*
Courtney R. Brooks

VALVE'S MOTION TO DISMISS
(2:16-CV-01941-JLR) - 27

114783180