1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Grace Galloway, Andy Lesko, and Brenda Shoss, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

VALVE CORPORATION, a Washington corporation,

Defendant.

NO. 2:16-cv-1941-JLR

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT VALVE CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

NOTE ON MOTION CALENDAR: October 23, 2020

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

Plaintiffs, Grace Galloway, Andy Lesko, and Brenda Shoss (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, for their Memorandum in Opposition to Defendant Valve Corporation ("Valve")'s Motion to Dismiss Plaintiff's First Amended Complaint ("Valve's Motion") state as follows:

## I.    INTRODUCTION

Plaintiffs are the parents of minor children who lost money through two forms of illegal online gambling involving Valve's video games and online platform. The first illegal gambling game is an online slot machine-like game where users win digital items with real world cash value of up to thousands of dollars per item (known as "Skins") through opening a digital package known as a "lootbox." Plaintiffs allege and provide significant evidence in support of allegations that this "Lootbox Gambling game" is illegal online gambling. *See* Plaintiffs' First Amended Class Action Complaint ("Complaint") at "Nature of the Case" ¶¶11-12; "Factual Background" at ¶¶ 16-18. ("Lootbox Gambling Claims"). Second, Plaintiffs allege that Valve engaged in wrongful conduct regarding the use of Skins as casino chips in illegal online gambling on third party illegal gambling websites, and the two arbitrators to review Valve's conduct each found wrongful conduct by Valve as part of this case. *See* Arbitrator Awards at DE 35-1 at p.5, DE 35-2 at p. 3 (Valve had "unclean hands" "turned a blind eye" and used "disorganized and unfocused efforts" because "no one is actually accountable for" efforts to stop illegal online gambling with Skins); Complaint at ¶¶13-14 ("Skins Gambling Claims").

The Skins Gambling Claims were the subject of arbitrations at an earlier stage of this case where two of three Plaintiffs' minor children lost all of their claims against Valve; the third minor child did not have his case arbitrated at all. DE 59 at 15. The Ninth Circuit upheld those decisions against two of Plaintiffs' minor children, but found that all three parents (now Plaintiffs) were

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

1    not subject to the arbitration clause and class action waiver, and therefore reversed as to the

2    individual claims of the Plaintiffs. *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020).

3    Plaintiffs filed their First Amended Class Action Complaint (DE #54-1) making specific

4    allegations as to their own losses arising from both Lootbox Gambling Claims and Skins

5    Gambling Claims, and Valve's Motion followed.

6         Valve's Motion fails for six reasons.

7         ***First***, Valve overstates the findings of the arbitrators by arguing repeatedly that Plaintiffs'

8    claims here fail because the arbitrators found "Valve did not act wrongfully or illegally toward

9 10 [Plaintiffs'] children…" Valve's Motion at pg. 12; *see also* repeated assertions that the arbitrators

11   found that Valve did not "act wrongfully" and/or "illegally" at pgs. 1-6,8, 9, 11-16, 24.  In fact,

12   both arbitrators found clear wrongful conduct by Valve.  *See* DE 35-1, pg. 4, DE 35-2 pg. 3.

13   ***Second***, Valve's Motion does not substantively address Plaintiffs' Lootbox Gambling Claims,

14   nor were these claims adjudicated at all by the arbitrators.  Therefore, they are not subject to any

15   of Valve's res judicata arguments either.  *See* DE 35-1 at p.5.  These claims must survive.  ***Third***,

16   Valve is simply incorrect as a matter of law that issue and/or claim preclusion are the right

17   framework to apply here because this is not "a second suit between the parties but instead

18   involves a subsequent stage of the same litigation." *Cook v. Brateng*, 180 Wn. App. 368, 373,

19   321 P.3d 1255 (2014), *citing Roberson v. Perez*, 156 Wn.2d 33, 41 n.7, 123 P.3d 844 (2005).

20   ***Fourth***, to the extent *res judicata* applies to any discrete issues, all of those issues were actually

21   decided *against* Valve. Specifically, it is the law of the case here that wagering Skins is illegal

22   online gambling and that Skins are a thing of value under Washington law.  *See* DE 35-1 at. p. 4,

23   DE 35-2 at p. 3.  ***Fifth***, Plaintiffs' claims were not actually substantively litigated in the

24   arbitration, and adjudicating them requires a different legal and factual analysis than the

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 3

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

arbitrators made about the Plaintiffs' children's claims.  ***Finally***, Valve's substantive arguments against Plaintiffs' claims also fail because Valve's use of a video game platform to engage in and facilitate illegal gambling is a deceptive trade practice that violates both the Washington Consumer Protection Act and Washington's gambling statutes, and Plaintiffs sufficiently pled their other substantive claims.

## II.      FACTUAL BACKGROUND

### A.      Valve's Lootbox Game Is Illegal Online Gambling

Valve is a Bellevue, Washington-based corporation that operates a video game and online content platform.  Complaint at "Nature of the Case" ¶1.  Valve does not have a gambling license in Washington or anywhere in the world, and cannot legally offer gambling games, support gambling, facilitate gambling, profit from gambling, or otherwise engage in any form of online gambling.  *Id.* at "Nature of the Case" ¶2; "Factual Background" ¶¶ 15, 19, 41; Count I at ¶106.  Valve makes money from selling video games, including CounterStrike: Global Offensive ("CS:Go"), Defense of the Ancients 2 ("Dota 2"), and Team Fortress 2 ("TF2").  *Id.* at "Nature of the Case" ¶¶ 4-8.  Valve has monetized the popularity of these games through the sale of in-game virtual items, generally referred to as "Skins."  *Id.* at "Nature of the Case" ¶¶ 5, 8.  Valve intentionally designed Skins to have real world value through market-based concepts such as scarcity and rarity, and intentionally created and hosts on its platform a marketplace for its virtual items where users can sell Skins for money used to buy video games, entertainment content, gaming hardware, and other things from Valve.  *Id.* at "Factual Background" ¶¶ 6, 9-12, 38, 42.  Users can also sell these virtual items on third party websites for real cash.  *Id.* at "Nature of the Case" ¶¶ 14, 18, 27-29; "Factual Background" at ¶¶ 28, 30, 36.  Valve has admitted and repeatedly treated Skins as having real world cash value.  *Id.* at, *e.g.*, "Factual Background" ¶40.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 4

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

In addition to buying Skins on Valve's online marketplace or through third party websites, users can win Skins through Valve's Lootbox Gambling game. *Id.* at "Nature of the Case ¶¶11-12. A "lootbox" (sometimes written as "loot box") is an in-game delivery system for randomized in-game content. *Id.* at "Factual Background" ¶23. Users get Valve's lootboxes either directly from Valve during gameplay, through purchase on Valve's platform for real money, or through third party websites. *Id.* To play the Lootbox Gambling game, users must pay Valve $2.99 for a "Key" to open the lootbox. *Id.* at ¶11. The look, feel, sound, and experience of opening a Valve lootbox makes it an online slot machine, as various YouTube videos linked in the Complaint show. *Id.* These videos show how the Lootbox Gambling game simulates a slot machine, and how Valve misleadingly communicates the range of possible items in the lootbox as having equal probability, despite only a very small chance of winning high-value items compared to low-value items. *Id.* at "Factual Background" ¶¶21-22.

These rare and valuable virtual items can be sold for hundreds or even thousands of dollars, but the most common Skins are worth pennies. *Compare* https://steamcommunity.com/market/search?appid=730#p1_price_asc (all Skins listed in ascending order shows cheapest price of 70 cents) with https://steamcommunity.com/market/search?appid=730#p1_price_desc (all Skins listed in descending order shows most expensive price of $1,869.97) (last accessed October 19, 2020).

There is no skill at all involved in the Lootbox Gambling game. *See* Complaint at "Factual Background" ¶¶18-19. Valve's Lootbox Gambling game has been banned across the world as an illegal gambling game, and has been regulated in other countries, because of the harmful effects of online gambling on teenagers. *See,* e.g., https://www.pcgamesn.com/counter-strike-global-offensive/csgo-lootbox-netherlands.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 5

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

Plaintiffs allege that Valve intentionally designed the Lootbox Gambling game to replicate the look, feel, sound, and elements of gambling on a slot machine. Complaint at "Factual Background" ¶¶ 16, 19, 23. Plaintiffs allege that Valve does not disclose and in fact affirmatively misleads users as to the true probability of receiving the more valuable items through this game. *Id.* at ¶¶ 21-22. Both arbitrators rejected Valve's arguments that Skins were not a "thing of value" in finding that Skins gambling is in fact illegal gambling. *Id.* at ¶ 34; *see also* DE 35-1 at. p. 4, DE 35-2 at p. 3. Plaintiffs' Lootbox Gambling Claims were not adjudicated at the arbitrations (see DE 35-1 at. p. 5, DE 35-2 at p. 3)[1], nor did Valve seek dismissal of these claims on independent substantive grounds in Valve's Motion. Thus, Counts I-IV of Plaintiffs' Complaint that arise from the Lootbox Gambling game cannot be dismissed on Valve's Motion.

**B.    Valve's "Unclean Hands" Related To Illegal Online "Skins" Gambling**

Valve's decision to make its Lootbox Gambling game look and feel like a slot machine, combined with the ability to sell rare or special items for real cash - some Skins sold for hundreds or even thousands of dollars - helped turn Skins into the currency for an online gambling ecosystem that spanned the entire world and generated hundreds of millions of dollars in gambling revenues. *See* Complaint at "Factual Background" ¶13. Both arbitrators found wrongful conduct on the part of Valve related to illegal online gambling. One arbitrator noted Valve's "unclean hands" and that it "turned a blind eye" to illegal online Skins gambling by teenagers, and the other described "disorganized and unfocused" efforts to stop Skins gambling due to an "organization structure in which no one is actually accountable for such efforts." *Id.* The arbitrators found against Plaintiffs' *children* based on the *children's* actions in knowingly

---

[1] Valve acknowledges that The Lootbox Gambling Claims have not been litigated, adjudicated, or ruled upon by anyone in this case because they have been "added" to the Complaint. Valve's Motion at pg. 8.

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

gambling online.  *See*, e.g., DE 35-1 at. p. 5, DE 35-2 at p. 3 (Valve "may have turned a blind eye to gambling relating to its own 'skins' on third party websites, but [teenage boy] engaged in conduct that, even as a minor, he knew was not appropriate or even legal…").

These descriptions of Valve's wrongful conduct were not surprising based on documents obtained during discovery, testimony of Valve's witnesses at arbitration, publicly available information, and other evidence Plaintiffs include in their Complaint.  This evidence demonstrates that Valve knew Skins were being used for illegal online gambling (DE 35-4 at pp. 63-73, 82-83), that the illegal online gambling websites used Valve accounts to conduct gambling transactions through Valve's Steam marketplace (*Id.*), that Valve provided technical support to various websites involved in the illegal gambling ecosystem (*Id.,* Complaint at "Nature of the Case" ¶18), that Valve knew the identity of Valve accounts that gambling websites used to engage in gambling transactions and chose not to take any action against them (DE 35-6 at pp. 29, 31-42), and that Valve intentionally designed Skins to "encourage a robust market to trade them" which resulted in the illegal gambling market (DE 35-4 at pp. 61-62, 124-127).  Many of the Skins gambling websites copied or emulated the look and feel of Valve's Lootbox Gambling game.  Complaint at "Factual Background" ¶20.  Eventually, after this lawsuit was originally filed, Valve took steps to stop or contain Skins gambling, but those steps were ineffective and have essentially done nothing to slow down or eliminate illegal online Skins Gambling.  *Id.* at "Nature of the Case" ¶15.

In short, the arbitrators found and Plaintiffs' have sufficiently alleged significant wrongful conduct by Valve related to illegal online gambling that Valve knows about *and still has not stopped* to this day, and which has harmed Plaintiffs.  Whether Valve's conduct justified recovery by Plaintiffs' children is not dispositive to Plaintiffs' own claims, as discussed below.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 7

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

1

### III.    APPLICABLE LEGAL STANDARD

2

Federal Rule of Civil Procedure 8(a)(2) requires that each claim in a pleading be

3

supported by "a short and plain statement of the claim showing that the pleader is entitled to

4

relief." Under this rule, a claim must contain "more than labels and conclusions" or a "formulaic

5

recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

6

555 (2007). Instead, to satisfy Rule 8(a)(2), a "complaint must contain sufficient factual matter,

7

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

8

662, 678 (2009) (internal quotation marks omitted). Although this standard requires that a claim

9

be "plausible on its face," it does not require that a complaint contain "detailed factual

10

allegations." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). As the text of Rule 8(a)(2)

11

itself makes clear, even a "short and plain" statement can state a claim for relief. *See* Fed. R. Civ.

12

P. 8(a)(2).  Plaintiffs here have sufficiently alleged claims with significant evidentiary support.

13

### IV.    DISCUSSION

14

#### A.    Valve's *Res Judicata* Arguments Fail As A Matter of Law

15

16

Valve's Motion is built on top of a legally and factually incorrect touchstone: that the

17

arbitrators have already heard, decided and rejected all of Plaintiffs' substantive claims because

18

two arbitrators ruled that Valve did not act wrongfully or illegally towards two of the minor

19

children of Plaintiffs.  But the record and Plaintiffs' Complaint demonstrate that Valve's Motion

20

fails because that premise is simply not true.  Rather, Plaintiffs' claims were not adjudicated, nor

21

are Plaintiffs in privity under Washington law.

22

23

##### i.    Valve's Arguments Are Contrary To The Law of the Case

24

The law of the case framework, not issue preclusion, governs the analysis of Plaintiffs'

25

claims because Plaintiffs are not litigating a new, second case against Valve, but rather are before

26

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 8

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

this Court to continue proceedings begun in 2016 with the filing of an Amended Complaint.  *See* DE #52.  In such a situation, the law of the case doctrine applies, not issue and claim preclusion. *Cook v. Brateng*, 180 Wn. App. 368, 373, 321 P.3d 1255 (2014), *citing Roberson v. Perez*, 156 Wn.2d 33, 41 n.7, 123 P.3d 844 (2005) ("Res judicata, or claim preclusion, prohibits the same parties from litigating a second lawsuit on the same claim or any other claim that could have been, but was not, raised in the first suit. That doctrine does not apply here because this case does not involve a second suit between the parties but instead involves a subsequent stage of the same litigation.").  As the court in *Cook* explained, "[i]n its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." *Id.* at 373.

The Ninth Circuit's decision here that the arbitrators had no authority over Plaintiffs' claims is therefore the law of the case: Plaintiffs were not parties to the arbitrations and the arbitrators did not rule on their substantive claims.  *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020); DE 35-1 at. p. 5, DE 35-2 at p. 3.  The Ninth Circuit vacated the District Court's Judgment against Plaintiffs "[b]ecause the parents are not bound by the arbitration agreement, and a district court can confirm an arbitral award only against parties who have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration." *G.G. v. Valve Corp.*, 799 F. App'x at 558. Valve calls this holding by the Ninth Circuit "irrelevant." Valve's Motion at 10.  But Valve's assertion is contrary to well-settled Washington law: the law of the case framework applies at subsequent points in the same litigation, and Valve's issue and claim preclusion arguments are therefore inapplicable.[2]

---

[2] In the context of arbitration awards, the law of case doctrine goes only as far as the arbitrator's authority. *A.R.I.S. v. Arkison* (In re Bellingham Ins. Agency, Inc.), 2009 Bankr. LEXIS 4564, *14-15 (B.A.P. 9th Cir. April 6, 2009).

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 9

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

The Ninth Circuit decision is not "irrelevant" because Plaintiffs' claims are substantively different from their children's claims and not derivative.  Valve cannot get around this by relying on *Barker v. Halliburton Co.*, No. H-07-2677, 2010 U.S. Dist. LEXIS 86378 (S.D. Tex. Aug. 23, 2010). *Barker* involved the dismissal of a loss of consortium claim when the underlying tort was disposed of in arbitration. *Id.* at *5. Ruling in favor of the defendant in that case, the court noted specifically that "[d]ue to the derivative nature of a loss of consortium claim, the defendant must be liable to the spouse on the non-derivative cause of action in order for the derivative plaintiff to recover for loss of consortium." *Id*. Similarly, in Washington "an element of the loss of consortium cause of action is the tort committed against the spouse who was injured". *Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 249, 178 P.3d 981 (2008) (citations omitted).

Here, Plaintiffs' claims are not derivative of their children's claims, they are separate and distinct.  Plaintiffs assert their own, independent, individual claims and seek to represent the rights of all other parents whose children gamble illegally online through Valve's platform. Plaintiffs' allegations only go towards *their* money that their children spent gambling and their interests in stopping practices that are deceptive *towards parents* not children.  *See* Complaint at "Nature of the Case" ¶ 21, "Count I" ¶ 117.  Valve fails to meet its burden to show that Plaintiffs' claims are derivative and that being derivative would justify dismissal on res judicata grounds. The holding in *Barker* is inapplicable here, and the Ninth Circuit's decision is not "irrelevant" to Plaintiffs' claims.

---

This is true because "[a]n arbitrator's powers are governed by the agreement to arbitrate. The ensuing award must not exceed the authority established in the agreement. If the arbitrators exceed their authority under the agreement, the award is deemed void and the court has no jurisdiction to confirm it." *Anderson v. Farmers*, 83 Wn. App. 725, 730-731 (Wash. Ct. App. October 4, 1996).  Moreover, it is proper to sever the claims of parties in a lawsuit whose claims are subject to arbitration, while allowing the claims of those who are not to proceed in court. *Smith v. Dolgencorp, LLC*, No. 1:16-CV-0959-VEH, 2017 U.S. Dist. LEXIS 29304, at *9 (N.D. Ala. Mar. 2, 2017) (citing Collins & Aikman Prod. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995)).

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 10

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8ᵀᴴ Street, Hoquiam, WA 98550
Tel: 360-533-271

Further, the arbitrators did not in fact rule that "Valve did not act wrongfully or illegally toward [Plaintiffs'] children…" Valve's Motion at pg. 12; *see also* repeated assertion that arbitrators found that Valve did not "act wrongfully" and/or "illegally" in Valve's Motion at pgs. 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 13, 14, 15, 16, 24. Both arbitrators actually found wrongful conduct by Valve around this illegal online activity: one arbitrator noted Valve's "unclean hands" and that it "turned a blind eye" to illegal online gambling, and the other described "disorganized and unfocused" efforts to stop Skins gambling due to an "organization structure in which no one is actually accountable for such efforts." *Id.* The arbitrators found against Plaintiffs' *children* based on the *children's* intentional and knowing gambling online. *See, e.g.,* DE 35-1 at. p. 4, DE 35-2 at p. 3 (Valve "may have turned a blind eye to gambling relating to its own 'skins' on third party websites, but [teenage boy] engaged in conduct that, even as a minor, he knew was not appropriate or even legal…"). That rationale will not apply to extinguish Plaintiffs' claims. Valve's wrongful conduct is the law of the case, and Valve cannot escape it.

ii.   Claim and Issue Preclusion Do Not Apply To Plaintiffs' Claims

Valve fails to show that claim and issue preclusion, even if the proper framework, extinguish Plaintiffs' claims. "Issue preclusion forecloses relitigation of factual matters that have already been decided in prior proceedings." *A.R.I.S. v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 2009 Bankr. LEXIS 4564, *29 (B.A.P. 9th Cir. April 6, 2009). "Collateral estoppel, or issue preclusion, applies solely to issues actually litigated and necessarily determined. The issue preclusion elements are (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied." *Energy Nw. v. Hartje*, 148 Wn. App. 454, 465, 199 P.3d

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 11

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

1043, 1048-49 (2009) (citations and quotation marks omitted).  Valve cannot meet those four elements here.  First, as discussed above, this is not a "subsequent proceeding" and the arbitrations were not "prior proceedings" for purposes of res judicata; these are continued proceedings where the law of the case doctrine applies instead.  *See Cook*, 180 Wn. App. at 373.

Second, Plaintiffs' claims do not involve identical issues with a final judgment on the merits.  This Court has previously held that, even if issue preclusion applies, it applies "only the issues actually decided" in the previous forum.  *Holy Ghost Ministries v. City of Marysville*, 98 F.Supp.3d 1153, 1168 (W.D. Wash. April 7, 2015).  Here, the arbitrators did not decide *any* issues related to Lootbox Gambling claims, and therefore all of Plaintiffs' claims survive Valve's Motion.  Nor were Plaintiffs' independent claims related to Skins Gambling actually adjudicated, heard or decided by the arbitrators.  *See* DE 35-1 at. p. 5, DE 35-2 at p. 3.

And while Valve's conduct related to Skins Gambling is the same generally, the legal framework is different.  For instance, Valve's alleged violations of Plaintiffs' rights under the Washington Consumer Protection Act will turn on different facts than the minor children's claims did, because the arbitrators relied on the children's own knowledge of the illegality of gambling as decisive in their decisions.  *See id*.  The arbitrators did not rule that Plaintiffs' allegations would be impacted by this, nor did they have the authority to do so, as recognized by the Ninth Circuit when it reversed the arbitrators' decisions with respect to Plaintiffs' individual claims.  *See G.G. v. Valve Corp.*, 799 F. App'x at 558. The parents' understanding, appreciation, and knowledge of what their children could spend money on, in Valve games and platforms that concealed the true nature of that activity, are different issues than the minor children's knowledge and activities that were adjudicated by the arbitrators here.  *See* Complaint at, e.g., ¶111. The duties that Valve owes to Plaintiffs are different than those owed to the minor children. Valve

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 12

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

cannot meet its burden to show that the arbitrators' findings act as a complete bar to Plaintiffs' claims.  There was simply no judgment on the merits on any of those issues.

Third, the three Plaintiffs were not parties to nor in privity with the two minor children who arbitrated claims.  "Privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title. It denotes mutual or successive relationship to the same right or property. The binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner." *Estate of Spahi v. Hughes-Northwest, Inc.*, 107 Wn. App. 763, 775-76, 27 P.3d 1233 (2001) (citations and quotation marks omitted). "The justification for a strict construction is simple. Where the parties against whom collateral estoppel is being asserted have had no previous opportunity to raise certain issues, their claim on those issues should not be barred." *Id.* at 1239. In Washington, "a parent and child do not necessarily hold mutual and successive rights to property..." *State ex rel. Dean v. Dean*, 56 Wn. App. 377, 381, 783 P.2d 1099 (1989).

Valve fails to provide any facts or law that meet its burden to show that Plaintiffs are in privity with the minor children who arbitrated here.  Valve fails to explain how the Plaintiffs' claims are under the same title to property as the minor children, nor how Plaintiffs are seeking to vindicate the same exact rights as the minor children.  This Court has cited the general proposition that "[p]rivity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts." *Holy Ghost Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1167-68 (W.D. Wash., April 7, 2015), *citing United States v. Deaconess Med. Ctr. Empire Health Serv.,* 140 Wn.2d 104, 994 P.2d 830 (2000), as

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 13

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

amended (Mar. 23, 2000).  In *Holy Ghost Ministries*, the Court raised the issue of privity in relation to individual plaintiffs who were pastors at a Church, which was also a plaintiff in the same case.  *Id.* at 1159.  The parties in *Holy Ghost Ministries* were bringing claims over the same property and same rights, and even then the Court said it was "unclear" whether privity existed. *Id.*  Just as privity was not established there, Valve cannot establish privity here.

Finally, it would be manifestly unjust to apply claim and issue preclusion to all of Plaintiffs' claims because Plaintiffs did not consent to the arbitrators deciding their claims. It would not be just to dismiss all of Plaintiffs' individual claims for their own, independent rights and damages because an arbitrator decided against minor children.  Valve cannot meet any of the elements of issue and claim preclusion, and this Court should deny Valve's Motion.

iii.  Plaintiff Andy Lesko's Claims Further Survive

Neither Plaintiff Andy Lesko's claims nor the claims of his minor child were arbitrated at all, and Valve cannot use arbitrators' decisions in other cases to foreclose his claims here because, like the other Plaintiffs, the Ninth Circuit clearly stated that the arbitration order was inapplicable to Plaintiff Lesko.  *G.G. v. Valve Corp.*, 799 F. App'x at 558; § IV(A)(i), *supra.* Plaintiff Lesko is not in privity with Plaintiff Galloway, Plaintiff Shoss, or their teenaged children. Both cases Valve relies on involved subsequent lawsuits and a pre-litigation relationship between the parties found to be in privity, none of which are present here. *See Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, 161 Wn.2d 214, 216, 224, 164 P.3d 500 (2007) (business partners with a prior action filed and dismissed in California state court); *Feminist Women's Health Ctr.* v. Codispoti, 63 F.3d 863, 865-867 (9th Cir. 1995) (coordinated anti-abortion protestors and a prior state court action resolved by jury trial).  Further, Plaintiff Lesko does not have an interest in any of the property at issue in the other arbitrations,

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 14

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

which was other Plaintiffs' children's money.  Nor is the virtual representation doctrine application to Plaintiff Lesko's claims in this action. Virtual representation only "allows collateral estoppel to be used against a nonparty when the former adjudication involved a party with substantial identity of interests with the nonparty. Of course, such preclusion must be applied cautiously in order to insure that the nonparty is not unjustly deprived of her day in court." *Garcia v. Wilson*, 63 Wn. App. 516, 520, 820 P.2d 964 (1991). "The primary factor to be considered is whether the nonparty in some way participated in the former adjudication, for instance as a witness." *Id*. Further, in *Garcia* it was "conceded that there was a final judgment on the merits in the [prior] lawsuit". *Id.* at 965. Plaintiff Lesko makes no such concession here, and thus Valve cannot rely upon the holding in *Garcia* to apply issue preclusion to his claims.

### B.    Plaintiffs Have Sufficiently Alleged All Substantive Claims, Should Be Given Leave to Amend Any Insufficiently Pled Allegations

Plaintiffs have pled sufficient facts to support claims against Valve for violations of Washington's Consumer Protection Act and Gambling Act, negligence, unjust enrichment, and injunctive relief. Further, the legal analysis and factual questions inherent to deciding Plaintiffs' individual claims are different from the analysis of their children's claims. This Court should therefore reject Valve's arguments and allow each of Plaintiffs' claims proceed to discovery or grant leave to amend to address any insufficiency.

#### i.    Plaintiffs Properly Pled CPA Claims

Plaintiffs sufficiently pled that Valve committed deceptive trade practices in violation of the Washington's Consumer Protection Act ("CPA") through both the Lootbox Gambling Claims and the Skins Gambling Claims. The CPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. The purpose of the CPA is "to protect the public and foster fair and honest competition." RCW 19.86.920. Plaintiffs must prove five

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

elements: (1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The CPA must be liberally construed to protect the public. RCW 19.86.920.

Plaintiffs can establish the first element by showing conduct that constitutes a *per se* unfair trade practice. To qualify as a *per se* violation it is not necessary, as Valve claims, for the Legislature to have declared that a given statutory violation is a *per se* violation of the CPA, or for the State Attorney General to list a statute on its website, for that statute to form the basis of a *per se* violation. Rather, the statute violated must contain a specific declaration of public interest. *Crane & Crane, Inc. v. C & D Elec., Inc.*, 37 Wn. App. 560, 565, 683 P.2d 1103 (1984). Washington State's gambling statutes clearly contain such a declaration of public interest:

- "The **public policy** of the state of Washington on gambling is to keep the criminal element out of gambling and to **promote the social welfare of the people** by limiting the nature and scope of gambling activities and by strict regulation and control." RCW 9.46.010.

- "It is hereby declared to be the policy of the legislature… **to safeguard the public** against the evils induced by common gamblers and common gambling houses engaged in professional gambling….

RCW 9.46.010 (emphasis added).

Illegal gambling is therefore a *per se* violation of the CPA. Valve engaged in unlicensed gambling by creating the Lootbox Gambling game, a game of chance indistinguishable from a slot machine. Complaint at "Factual Background" ¶¶ 16-19, 23. By operating the Lootbox Gambling game and facilitating Skins Gambling, Valve violated RCW 9.46, *et seq.*, a statute that contains a specific declaration of public interest. These violations are each, on their own, sufficient to be the basis for a *per se* CPA claim.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 16

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

Even if not a *per se* violation, Valve's conduct for both the Lootbox Gambling Claims and Skins Gambling Claims constitute an "unfair or deceptive act or practice." A practice is "deceptive" if it has the capacity to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn.2d at 785. A practice is "unfair" if it causes substantial injury to consumers, is not outweighed by countervailing benefits to consumers or competitors, and is not reasonably avoidable by consumers. *Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 51, 204 P.3d 885 (2009). Whether an act constitutes an unfair or deceptive act or practice covered by the CPA is a question of law. *Panag*, 166 Wn.2d at 47. But whether a deceptive act has the capacity to deceive a substantial portion of the public is a question of fact. *Behnke v. Ahrens*, 172 Wn. App. 281, 292, 294 P.3d 729 (2012), *review denied*, 177 Wn.2d 1003, 300 P.3d 415 (2013).

The concept of "unfair or deceptive" is not overly rigid, and is met "'if there is a representation, omission, or practice that is likely to mislead' a reasonable consumer." *Panag*, 166 Wn.2d at 50 (quoting *Southwest Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)). "A plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wn.2d at 785 (emphasis in original). Even accurate information may be deceptive "if there is a representation, omission or practice that is likely to mislead." *Panag*, 166 Wn.2d at 50. In evaluating deceptiveness, courts "should look not to the most sophisticated readers but rather to the least." *Id.* (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 (11th Cir. 1985)). Here, that reader is a parent who does not play a video game, but hears terms such as "lootbox" or "Key" or "Skins" that do not clearly indicate that gambling is occurring, particularly when used in the context of a "first-person shooter" game.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 17

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8ᵀᴴ Street, Hoquiam, WA 98550
Tel: 360-533-271

Indeed, the breadth of the CPA's scope and the flexibility of its analysis are reflected in the established and sound rule that a direct consumer relationship is not required to bring a CPA claim.  *See Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 359-60, 581 P.2d 1349 (1978); *see also, e.g.*, *Panag*, 166 Wn.2d at 43 ("a private CPA action may be brought by one who is not in a consumer or other business relationship with the actor against whom the suit is brought"); *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993) (physician who prescribed a drug to a patient has standing to make a CPA claim even though the physician had no traditional consumer or contractual relationship with the drug company); *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 387, 743 P.2d 832 (1987) (passenger in auto accident has standing to bring a CPA claim against an insurance company based upon bad faith handing of a claim even though the passenger had no consumer relationship with the company), *review denied*, 109 Wn.2d 1025 (1988), *disapproved of on other grounds by Ellwein v. Hartford Acc. And Indem. Co.*, 142 Wn.2d 766, 15 P.3d 640 (2001).

Here, the only question therefore is whether Valve engaged in an unfair or deceptive conduct which "proximately caused" the Plaintiffs' injury.  *See Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 84, 170 P.3d 10 (2007).  Plaintiffs have sufficiently alleged unfair and/or deceptive conduct.  Regarding the Lootbox Gambling game, Plaintiffs have alleged that Valve intentionally designed it to replicate the look, feel, sound of a slot machine; incorporated this gambling system into CS:GO without a gaming license; and Valve failed to disclose the true odds of obtaining the most valuable items inside of each lootbox or that the value of the items inside were subject to constant change.  Similarly, regarding the Skins Gambling Claims, Plaintiffs allege Valve actively encouraged and facilitated third-party Skins gambling websites.  Moreover, Valve's trade practices are inherently difficult for

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 18

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

consumers to avoid because of how they were integrated into Valve's widely popular CS:GO video game. It is not reasonable to expect the average consumer to avoid the insidious and subconscious psychological draw this "game within a game," created by a sophisticated and resourceful company to entice unsuspecting users including minors. Nor is it reasonable for Plaintiffs as parents to be aware of the need to screen a first-person shooter game for a fully integrated and multifaceted illegal gambling ecosystem, especially when the virtual items are not described in a way that would lead any reasonable parent to believe they were obtained via gambling games.

The very nature of this gambling makes Valve's conduct likely to cause substantial injury to consumers, including the monetary losses suffered by Plaintiffs. And by allowing minor children to play their games – whose brains are still developing and are therefore more susceptible to gambling addiction, coupled with their lack of independent financial resources – it was also clearly foreseeable that Valve's wrongful and illegal conduct could financially harm not just those children but their parents as well. Complaint at "Factual Background" ¶¶ 23 *citing* D. Zendle, R. Meyer, and H. Over, *Adolescents and loot boxes: links with problem gambling and motivations for purchase*, R. Soc. Open Sci., 6:190049, p.5 (2019) ("Adolescents, as a group, are particularly at risk of developing problem gambling. Indeed, the prevalence of problem gambling among adolescents is far higher than in the adult population. There are good theoretical reasons to believe that links between loot box spending and problem gambling may be stronger in adolescents than they are among adults."), 70, 75.   Plaintiffs have sufficiently alleged Valve's unfair and deceptive conduct harmed them and that it violated the CPA.  The Court should allow these claims to continue.

//

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 19

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

ii.     <u>RCW 946.200 Provides Plaintiffs Cause of Action Here</u>

**1. Valve's Virtual Items are "Things of Value" and Lootbox Gambling and Skins Gambling are Illegal Gambling**

"Gambling" is defined under Washington law as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." RCW 9.46.0237.  This describes the Lootbox Gambling game perfectly: players cannot control what virtual items are contained in the lootbox, and are seeking to win via luck or chance high value Skins worth far more than the cost to play the game.

These Skins are a "thing of value" because they are "money or property, any token, object or article exchangeable for money or property…" RCW 9.46.0285. Washington courts take an expansive reading when interpreting this statute. *See Bullseye Distrib. v. Gambling Comm'n*, 127 Wn. App. 231, 241, 110 P.3d 1162 (2002) (holding the "'thing of value' concept is similar to dictionary definitions of 'consideration'… [which is] not limited to things of pecuniary value"). That Skins are a "thing of value" for purposes of the Gambling Act is the law of the case: both arbitrators ruled that Skins gambling is illegal online gambling, over Valve's repeated arguments that Skins were not things of value.  *See* DE 35-1 at. p. 4, DE 35-2 at p. 3.  Valve cannot now argue to this Court that Skins are not things of value.  Nor are its arguments any better now than they were when the arbitrators rejected them.

The Keys that Valve sells to be able to play the Lootbox Gambling game also qualify as a "credit or promise… contemplating transfer of money or property… or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge." RCW 9.46.0285. Valve seeks to escape responsibility for its lootbox gambling based on the assertion

that Skins and Keys may not be necessary to play CS:GO. This argument misses the point. Keys *are* necessary to play Valve's "game within a game", i.e. its lootbox "slot machine" by which users can attempt to win Skins that may be worth more or less than the Key which must be purchased to pull the lootbox slot machine's virtual lever. *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 786, 789 (9th Cir. 2018) (virtual chips are a "thing of value" because they "permit a user to play the casino games inside the virtual… Casino. They are a credit that allows a user to place another wager or re-spin a slot machine"); *see also Bullseye Distrib.*, 127 Wn. App. at 241-42 (finding that "play points" obtained through purchase, promotional voucher, or winning, and used to play an electronic game of chance, were "things of value," and that the vending machine was a "gambling device" and specifically holding: "Although they may lack pecuniary value on their own, these points fall within the definition of "thing of value" because they extend the privilege of playing the game without charge").

### 2. Washington Law Provides Plaintiffs Rights Here

Washington law provides for Plaintiffs' private right of action for Valve's conduct related to illegal gambling here: "every person, directly or indirectly controlling the operation of any gambling activity authorized by this chapter…shall be liable, jointly and severally, for money damages suffered by any person because of any violation of this chapter." RCW 9.46.200. This statute uses broad, inclusive language – damages suffered by "*any* person" because of "*any* violation of this chapter." Similarly, RCW 4.24.070 provides for the recovery of "the amount of the money or the value of the thing so lost" at any "illegal gambling games."  Washington law requires courts to harmonize two statutory causes of action to permit a cause of action against those involved in illegal gambling. See *Bour v. Johnson*, 122 Wn.2d 829, 835, 864 P.2d 380 (1993) ("Two statutes must be read together 'to give each effect and to harmonize each with the

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 21

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

other'"). Valve's proffered narrow application of these statutes would violate the specific pronouncements of the more comprehensive Gambling Act, which requires the provisions to be liberally construed. RCW 9.46.010. It would also lead to an absurd result: subjecting licensed gambling activities to *greater* liability than illegal gambling activities. Indeed, Washington courts "avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences. The spirit or purpose of an enactment should prevail over… express but inept wording." *Bosteder v. City of Renton*, 155 Wn.2d 18, 44-45, 117 P.3d 316, 329 (2005) (quotation marks and citations omitted), *superseded by statute on other grounds as recognized in Wright v. Terrell*, 162 Wn.2d 192, 170 P.3d 570 (2007).

Plaintiffs' application of these statutes to Valve's conduct in offering the Lootbox Gambling game and facilitating Skins Gambling makes more sense than Valve's because it would further the aims of the Legislature as clearly articulated in RCW 9.46.010. Further, allowing Plaintiffs' Lootbox Gambling Claims and Skins Gambling Claims to continue would further the Legislature's specifically articulated objective of deterring illegal underage gambling. It would be particularly insidious to apply Washington statutes to deprive Plaintiffs of a remedy where unlicensed gambling occurred through video games with nomenclature that concealed the true nature of what Plaintiffs' teenage sons were actually doing.

Plaintiffs have been damaged monetarily by Valve's illegal gambling activities. The fact that Valve hid its virtual slot machine by associating it with a first-person shooter video game makes no difference. That would be like a hotel arguing that a slot machine on its property isn't really gambling because it's just one small device inside a giant, non-gambling establishment, and that it's not "necessary" to play the game to be a customer of the hotel. No matter how big

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 22

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

1   the "room" may be or how many other things may be inside the room, an illegal gambling device

2   is still an illegal gambling device, and the Court should deny Valve's Motion.

3                               iii.    Plaintiffs' Losses Unjustly Enriched Valve

4           Valve's only basis for seeking dismissal of Plaintiffs' unjust enrichment claim is that the

5   claim based on the same conduct as Plaintiffs' other claims, citing *Phillips v. Double Down*

6   *Interactive LLC*, 173 F. Supp. 3d 731, 744 (N.D. Ill. 2016). However, as demonstrated in this

7   response, Plaintiffs' other claims should stand. Furthermore, *Phillips* was decided based upon

8   *Illinois* law finding that unjust enrichment "is not a separate cause of action that, standing alone,

9   will justify an action for recovery." *Id.* That is not the law in Washington, where the elements of

10  unjust enrichment are: (1) a benefit conferred on one party by another, (2) the party receiving the

11  benefit must have an appreciation or knowledge of the benefit, and (3) the receiving party must

12  accept or retain the benefit under circumstances that make it inequitable for the receiving party

13  to retain the benefit without paying its value. *Pierce Cty. v. State*, 144 Wn. App. 783, 830, 185

14  P.3d 594 (2008).

15

16          Here, Plaintiffs have sufficiently alleged that Valve received a benefit at Plaintiffs'

17  expense – all payments made for Keys to open lootboxes, and a percentage fee on all Skin

18  transactions on the Steam marketplace, using money Plaintiffs unwittingly supplied for use by

19  their minor children in Valve's illegal gambling operations. Valve not only knew that it was

20  receiving this benefit, Valve specifically designed its products to encourage and facilitate it,

21  knowing a large segment of its user population were adolescents particularly susceptible to the

22  subconscious allure and addictiveness of gambling. It would be unjust for Valve to retain the

23  benefit Plaintiffs conferred on it, adding up in the aggregate to billings of dollars in revenue.

24          //

25

26

**STRITMATTER KESSLER
KOEHLER MOORE**
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

iv.     Plaintiffs Were Harmed By Valve's Negligence

In Washington "[a]n actor owes another a duty to guard against the foreseeable criminal conduct of a third party where the actor's affirmative act has exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable person would have taken into account." *Parrilla v. King County*, 138 Wn. App. 427, 430, 157 P.3d 879 (2007). "[C]riminal conduct is not unforeseeable as a matter of law. Thus, in keeping with the general rule that an individual has a duty to avoid reasonably foreseeable risks, if a third party's criminal conduct is reasonably foreseeable, an actor may have a duty to avoid actions that expose another to that misconduct." *Id.* at 437. (citations omitted).

Here, Plaintiffs have sufficiently alleged that Valve was negligent in relation to both their Lootbox Gambling Claims and Skins Gambling Claims. Valve's actions and failures to act exposed Plaintiffs to high degree risk of harm by creating a high probability their minor children would, and indeed did, illegally gamble online and lose Plaintiffs' money that was given to their children for entertainment. *See* Complaint at "Factual Background" ¶¶23 70-75. This harm was also clearly foreseeable because Valve was aware that many of the users gambling on its platform were under the age 21. Complaint at ¶ 24. Plaintiffs have sufficiently alleged Valve owed and assumed duties duty to take to reasonable action to prevent the harms suffered by Plaintiffs. Finally, both arbitrators ruled that Valve's conduct was deficient, but neither analyzed whether Valve owed duties to Plaintiffs. Therefore, Plaintiffs' allegations are sufficient at this stage of the case that both there was a duty and that Valve's conduct violated it.

v.     Plaintiffs May Seek Injunctive Relief From Valve

Valve claims that Plaintiffs' claim for injunctive relief should be dismissed because to obtain injunctive relief Plaintiffs must succeed on at least one of their underlying claims. As

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 24

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

demonstrated above, Plaintiffs have stated claims as to those underlying causes of action, so Plaintiffs' request for injunctive relief should not be dismissed. If the Court finds that injunctive relief is not available under Plaintiffs' CPA claim because of the need to serve the Washington State Attorney General under RCW 19.86.095, this requirement is easily met by serving the Amended Complaint at this time, and Plaintiffs request the opportunity to do so.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Valve's Motion in its entirety.

DATED this 19th day of October, 2020.

By: */s/ Ray W. Kahler*
Paul L. Stritmatter
Ray W. Kahler
Lisa Benedetti
**STRITMATTER KESSLER
KOEHLER MOORE**
413 8th Street
Hoquiam, WA  98550
Phone:360-533-2710
pauls@stritmatter.com
ray@stritmatter.com
lisa@stritmatter.com

Jasper D. Ward IV
Alex C. Davis
**JONES WARD PLC**
The Pointe
1205 East Washington St., Ste. 111
Louisville, Kentucky 40206
Tel. (502) 882-6000
Fax (502) 587-2007
jasper@jonesward.com
alex@jonesward.com

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 25

STRITMATTER KESSLER
KOEHLER MOORE
413-8TH Street, Hoquiam, WA 98550
Tel: 360-533-271

1

## CERTIFICATE OF SERVICE

2
     I hereby certify that on this day, October 19, 2020, a true and correct copy of the foregoing

3
was filed and served electronically via the CM/ECF system, which automatically sends a copy

4
to all counsel of record.

5

6
                                 *s/ Ray W. Kahler*

7
                                   Ray W. Kahler

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 26