The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Grace Galloway, Andy Lesko, and Brenda Shoss, individually and on behalf of all others similarly situated, | No. 2:16-cv-01941-JLR |
| Plaintiffs, | **VALVE CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| VALVE CORPORATION, a Washington corporation, | **NOTE ON MOTION CALENDAR:** **October 23, 2020** |
| Defendant. | |

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR)

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1    Plaintiffs' Opposition is long on hyperbole and sweeping policy arguments, but short on

2  support in the law or the record.  The remaining Plaintiffs are parents whose children used

3  Valve's Steam platform, played its video game CS:GO, and allegedly gambled away virtual

4  items called skins they acquired through CS:GO or on Steam.  It is undisputed the parents did

5  none of that—they are not Valve customers, do not have Steam accounts or play CS:GO, and do

6  not claim to ever have used or gambled any skins.  The minors' claims are no longer at issue.

7  They were resolved against Plaintiffs through full arbitration hearings on the merits, at the

8  conclusion of which both arbitrators held that Valve did not act improperly toward the minors or

9  facilitate their gambling.  The parent Plaintiffs' remaining claims are simply to recover the

10  money they gave their children, which the minors used to acquire skins.  But if Valve did not act

11  improperly toward the minors or facilitate their gambling—findings that are binding on

12  Plaintiffs—the parents have no claims to recover from Valve the money that their children spent.

13    The parents' narrow remaining claims are barred by the preclusive effect of the

14  arbitrators' decisions and, independently, fail on their merits.  These fatal flaws cannot be fixed

15  by re-pleading.  All remaining claims should be dismissed with prejudice.

16  **A.**  **The Arbitrators' Findings That Valve Did Not Act Illegally or Wrongfully Towards the Minors Are the Law of the Case.**

17  

18    Plaintiffs try to play both sides of the field by arguing the arbitrators' findings ***are not***

19  law of the case as to Plaintiffs' remaining claims, while at the same time arguing they ***are*** law of

20  the case as to issues Plaintiffs incorrectly claim the arbitrators decided against Valve (the

21  arbitrators did not).  (*E.g.*, Dkt. #63 at 3, 8–11.)  Plaintiffs cannot have it both ways.

22    Plaintiffs claim they are not bound by the arbitrators' findings because their claims

23  require a "different legal and factual analysis" than those asserted by the minors.  (*Id.* at 3.)  In

24  fact, Plaintiffs' claims rest on the same facts the parties litigated and the arbitrators ruled on in

25  two separate arbitration proceedings on the minors' claims.  Two arbitrators concluded after full

26  hearings that (1) Valve was not responsible for the minors' gambling on third-party websites or

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 1

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

115399894

1   their related losses, and (2) Valve did not act wrongfully or illegally toward the minors.  (Dkt.

2   #35-1 at 4–5; Dkt. #35-2 at 3–4.)  Plaintiffs' claims are all based on allegedly suffering financial

3   loss when their children gambled away money Plaintiffs gave them.  (*E.g.*, Dkt. #63 at 10

4   ("Plaintiffs' allegations only go towards *their* money that their children spent gambling ….");

5   Dkt. #58 ("Am. Compl."), Parties ¶¶ 27–29.)  Plaintiffs' claims require a finding that Valve

6   facilitated the minors' gambling or acted wrongfully toward the minors.  Each claim, in effect,

7   seeks to recover the minors' gambling losses.  The arbitrators already held Valve was not

8   responsible for those losses—there is no injury that has not been addressed.

9         Plaintiffs contend the arbitrators found that skins gambling was illegal and that Valve

10   acted wrongfully towards the minors.  (Dkt. #63 at 3, 11.)  Plaintiffs are wrong.  Neither

11   arbitrator found that third-party skins gambling was illegal.  To the contrary, both arbitrators

12   concluded that Plaintiffs failed to prove any wrongful or illegal acts attributable to Valve

13   occurred.  (Dkt. #35-1 at 4–5; Dkt. #35-2 at 3–4.)  In the Shoss/E.B. arbitration, Arbitrator

14   Laffey found that "E.B. has not carried his burden of proof to establish that Valve is responsible

15   for his gambling losses" and presented no evidence "that his gambling was the result of some

16   unfair or deceptive act or practice by Valve."  (Dkt. #35-1 at 4.)  Arbitrator Schiff similarly

17   found in the Galloway/J.P. arbitration that there was "no proven connection" between Valve and

18   the third-party gambling websites, Valve did not violate public policy, and Plaintiff Galloway

19   and her son J.P. "did not prove their case."  (Dkt. #35-2 at 3.)

20         Plaintiffs misconstrue Valve's argument regarding the Ninth Circuit's decision.  (Dkt.

21   #63 at 9.)  The Ninth Circuit's decision that the parents were not required to arbitrate their

22   individual claims does not undo the preclusive effect on the parents of the judgment confirming

23   the arbitrators' findings on the ***minors' claims***.  The arbitrators found that Valve did not facilitate

24   the minors' gambling or otherwise act wrongfully toward the minors.  Plaintiffs are barred from

25   relitigating claims based on the same issues.  For example, the parents cannot establish their

26   claim under RCW 9.46.200 because to do so would require a finding that Valve was responsible

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1   for the minors' gambling, contrary to the existing judgment confirming the arbitrators' awards.

2   **B.**     **Washington Law Gives the Arbitrators' Findings Preclusive Effect.**

3   Plaintiffs argue that claim and issue prelusion do not apply because the arbitrations are

4   not "prior proceedings." (Dkt. #63 at 3, 12.) If the arbitrations and this suit are viewed as two

5   parts of the same proceeding, the arbitrators' awards are the law of the case and bar Plaintiffs'

6   claims, as discussed above. If viewed as separate proceedings, *res judicata* (claim preclusion)

7   and collateral estoppel (issue preclusion) bar them just the same.

8   Plaintiffs rely on two cases to support their argument that claim and issue preclusion are

9   inapplicable: *Roberson v. Perez*, 156 Wash. 2d 33, 123 P.3d 844 (2005), and *Cook v. Brateng*,

10  180 Wash. App. 368, 321 P.3d 1255 (2014). Neither case helps them. *Roberson* involved only

11  the law of the case; the court cited *res judicata* requirements in a footnote contrasting "other

12  closely related doctrines" with which law of the case is "often confused." 156 Wash. 2d at 41 &

13  n.7. *Cook* turned on both *res judicata* and law of the case. The court did not apply *res judicata*

14  because the first appellate opinion was in the same case, not a prior proceeding. It did not apply

15  law of the case because the first opinion did not resolve the question at issue in the second

16  opinion. 180 Wash. App. at 373–75. Here, if the arbitrations and this suit are viewed as separate

17  proceedings, the arbitration awards constitute "a final determination on the merits sufficient to be

18  given preclusive effect under Washington law." *MedChoice Risk Retention Grp. Inc. v. Katz*,

19  No. C17-387-TSZ, 2017 WL 3970867, at *9 (W.D. Wash. Sept. 8, 2017).

20  Plaintiffs' remaining arguments fail. First, Plaintiffs argue the arbitrations did not

21  involve identical issues, but that is inconsistent with the undisputed record. As discussed above,

22  Plaintiffs' remaining claims hinge on the allegation that Valve is responsible for the minors'

23  third-party gambling, which was already litigated and decided.

24  Second, Plaintiffs claim that privity does not exist between them and the minors.

25  Plaintiffs, however, are not merely parents of children who arbitrated their claims. Plaintiffs

26  actively participated in the arbitrations, asserted claims on behalf of their children, and were

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1  represented by the same legal counsel.  Plaintiffs also seek to obtain the same relief that the

2  minors sought—and failed—to obtain in the arbitrations.  Privity exists.  *See Harley H. Hoppe &*

3  *Assocs., Inc. v. King County*, 162 Wash. App. 40, 51–52, 255 P.3d 819 (2011) (holding that

4  privity existed for issue preclusion because of father-daughter relationship and both "were

5  represented by the same legal counsel and relied on the same legal briefing and arguments").

6  **C.     Plaintiff Lesko Is Barred From Challenging the Arbitrators' Findings.**

7  Judge Coughenour ordered Plaintiff Lesko and his minor child to arbitrate their claims.

8  They participated in the original consolidated arbitration, then chose not to re-file their

9  arbitration demand individually.  Plaintiffs now argue Mr. Lesko is not bound by the arbitrators'

10  findings because neither he nor his minor child completed the arbitration process.  (Dkt. #63 at

11  14.)  Plaintiffs ignore that Plaintiff Lesko previously alleged he was similarly situated to

12  Plaintiffs Galloway and Shoss and alleged the same harm and wrongdoing by Valve.  (Dkt. #1-3

13  ("Compl.") ¶¶ 13–15, 107–09.)  Plaintiff Lesko is not free to disregard Judge Coughenour's

14  order compelling arbitration, wait to see the outcome of the other arbitrations, and then litigate

15  his individual claims in court without consequence.  This procedural maneuvering is improper.

16  **D.     Plaintiffs' RCW 9.46.200 Claim (Count 2) Fails as a Matter of Law.**

17         *1.     RCW 9.46.200 Applies Only to Authorized Gambling, but Plaintiffs'
18                 Claims Are Based on Valve's Alleged Participation in Illegal Gambling.*

19  RCW 9.46.200 creates a statutory cause of action against certain persons "controlling the

20  operation of any gambling activity ***authorized*** by this chapter."  Plaintiffs do not claim Valve

21  controlled an ***authorized*** gambling activity, but rather that Valve engaged in ***illegal*** gambling.

22  Illegal gambling is addressed by RCW 4.24.070, which creates a private right of action to

23  recover losses from "any illegal gambling games."  Plaintiffs originally sued Valve under both

24  statutes.  (Compl. ¶¶ 132–49.)  Plaintiffs dropped their RCW 4.24.070 (illegal gambling) claim

25  from the Amended Complaint, but are now trying to backdoor an illegal gambling claim through

26  a statute that creates a cause of action for "authorized" gambling only.

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 4

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

115399894

1    Plaintiffs acknowledge these two statutes must be harmonized.  (Dkt. #63 at 21.)  Instead
2    of giving effect to each statute, Plaintiffs blur them together.  First, Plaintiffs argue that RCW
3    9.46.200 (authorized gambling) must be construed to create a cause of action for unauthorized
4    gambling to avoid an "absurd result" of "subjecting licensed gambling activities to greater
5    liability than illegal gambling activities."  (Dkt. #63 at 22.)  There is no absurdity.  Any
6    substantive difference between the remedies in the two statutes is minor, and it is reasonable for
7    the Legislature to provide a lesser remedy to a person engaged in illegal gambling (RCW
8    4.24.070) than to one playing an authorized gambling game (RCW 9.46.200).  The differences in
9    statutory language—"authorized" in RCW 9.46.200 and "illegal gambling" in RCW 4.24.070—
10   show a legislative intent to provide different causes of action.  *In re Forfeiture of One 1970*
11   *Chevrolet Chevelle*, 166 Wash. 2d 834, 842, 215 P.3d 166 (2009) ("Where the legislature uses
12   certain statutory language in one statute and different language in another, a difference in
13   legislative intent is evidenced.").

14   Second, Plaintiffs argue that RCW 9.46.010 requires a liberal construction of
15   RCW 9.46.200 (authorized gambling) to include illegal gambling claims.  But RCW 9.46.010
16   provides that liberal construction should be applied to achieve the end of closely controlling
17   "[a]ll factors incident to the activities *authorized* in this chapter."  RCW 9.46.010 (emphasis
18   added).  It does not state (or even suggest) RCW 9.46.200 should be stretched to reach
19   *unauthorized* activities, which RCW 4.24.070 covers.  Plaintiffs cannot overcome the statute's
20   plain language or avoid the rules of statutory construction by invoking policy arguments about
21   the need for a remedy when the Legislature provided one under RCW 4.24.070.

22   Separately, Valve's Motion established that granting the parents a cause of action under
23   RCW 9.46.200 (authorized gambling) would undermine the Legislature's intent to deter
24   underage gambling by circumventing RCW 9.46.228(5), which bars any recovery by a minor
25   who gambles.  (Dkt. #59 at 20.)  Instead of refuting this argument, Plaintiffs ignore it.  RCW
26   9.46.200 and RCW 9.46.228(5) are not harmonized by barring minors from recovering their

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

gambling losses but allowing their parents to recover those same losses—an absurd result.

Finally, Arbitrator Laffey held that claims under RCW 9.46.200 are limited to "authorized" gambling activities. (Dkt. #35-1 at 4.)  Arbitrator Laffey's award was confirmed into a judgment that was affirmed on appeal with respect to the minors and now has preclusive effect.  Its conclusion holds whether the minors or their parents bring the claims.

> 2.   *Plaintiffs Cannot Establish That Valve Engaged in "Gambling" as Washington Law Defines It.*

Plaintiffs' claims all relate to cosmetic virtual items in video games (skins) that cannot be bought or sold in the real world or "cashed in" through Valve.  These items provide no advantage in the game and are not required to play the games or extend gameplay.  Plaintiffs claim these virtual items are "things of value" under RCW 9.46.0285, and allege that Valve is engaged in "gambling" because the skins can be wagered on third-party websites or obtained through a random distribution in a "loot box."  Neither of these activities meets the statutory definition of "gambling" under RCW 9.46.0237, which requires "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome."  Because Valve is not engaged in "gambling," Plaintiffs cannot state a claim under RCW 9.46.200 (authorized gambling), RCW 4.24.070 (illegal gambling), or any other gambling statute.

First, Plaintiffs broadly assert that "both arbitrators ruled that Skins gambling is illegal online gambling" without citing language in the awards to back up that claim.  (Dkt. #63 at 20.)  There is no such language.  While both arbitrators called the minors' actions on third-party websites "gambling," neither arbitrator (a) discussed or held that skins were "things of value" under Washington's gambling laws, or (b) held that Valve was engaged in "gambling" under Washington law.  (Dkts. #35-1, 35-2.)  To the contrary, both arbitrators held that Valve was *not* engaged in illegal gambling in violation of Washington law—a conclusion they could not have

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 6

115399894

Fox Rothschild LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1  reached if they found that Valve was engaged in "gambling" with "things of value."

2        Second, Plaintiffs argue that virtual keys Steam users can purchase from Valve are

3  "things of value" because they are used to open virtual "loot boxes" containing skins, which

4  Plaintiffs allege is akin to spinning a slot machine.  (Dkt. #63 at 20–21).  Plaintiffs do not claim

5  that loot boxes give users another key to open another loot box, as would a casino token won

6  from a slot machine.  *See Kater v. Churchill Downs, Inc.*, 886 F.3d 784, 787 (9th Cir. 2018)

7  (concluding virtual chips won in social casino game were a "thing of value" under Washington

8  law because they were necessary to play the game and allowed a user "to place another wager or

9  re-spin a slot machine").  Instead, Plaintiffs plead that cosmetic skins are received from a loot

10  box.  (Am. Compl., Parties ¶¶ 27–29.)  That distinction is fatal because the definition of

11  "gambling" in RCW 9.46.0237 requires *both* (a) "staking or risking something of value," *and* (b)

12  that the person "receive something of value in the event of a certain outcome."  Even if virtual

13  keys were considered a "thing of value" under Washington law—which they are not—Plaintiffs

14  must still establish that the skins received from loot boxes are "things of value," which Plaintiffs

15  cannot do for the reasons discussed above and in Valve's Motion.

16        Finally, Plaintiffs do not address Valve's showing that skins are not "money" or a "token,

17  object or article exchangeable for money or property" or a "credit or promise … contemplating

18  transfer of money or property … or involving extension of … a privilege of playing at a game"

19  because they are digital decorations that do not affect or extend gameplay.  (Dkt. #59 at 21–22.)

20  Accordingly, only two narrow legal issues remain to be resolved: (i) whether the arbitrators held

21  that skins are "things of value" or that Valve is engaged in "gambling"; and (ii) whether

22  Plaintiffs receive a "thing of value" when "loot boxes" are opened.  Both issues are readily

23  resolved against Plaintiffs, and neither deficiency can be remedied by leave to re-plead.

24      **E.**    **Plaintiffs Cannot State a Claim for a CPA Violation (Count 1).**

25      *1.*    *Plaintiffs Do Not Allege a Per Se CPA Violation.*

26        Plaintiffs argue they can establish a *per se* unfair trade practice because they claim Valve

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 7

115399894

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1   violated Washington gambling laws, despite the fact that the gambling statute Plaintiffs rely

2   on—RCW 9.46.010—does not contain "a specific legislative declaration of 'public interest'."

3   *Brummett v. Washington's Lottery*, 171 Wash. App. 664, 677–78, 288 P.3d 48 (2012) (holding a

4   *per se* CPA claim could not be based on Washington's lottery statutes because they do not

5   "contain a specific legislative declaration of 'public interest'").

6         Plaintiffs wrongly claim that general references to the "public" and "public policy" in

7   RCW 9.46.010 render the violation of any statute in RCW ch. 9.46 a *per se* unfair trade practice.

8   Washington law requires greater specificity.  "A per se unfair trade practice exists when a statute

9   which has been declared by the Legislature to constitute an unfair or deceptive act in trade or

10  commerce has been violated."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,

11  105 Wash. 2d 778, 786, 719 P.2d 531 (1986).  In *Hangman Ridge*, the Supreme Court rejected

12  the argument Plaintiffs make here, that a *per se* violation exists whenever there is "conduct

13  which is 'illegal' and 'against public policy'."  *Id.*  Instead, the dispositive issue is whether the

14  Legislature specifically stated that the violation of a statute constitutes "an unfair or deceptive act

15  in trade or commerce" or an "unfair trade practice."  *Id.* (listing examples of such statutes).  The

16  court explained that "the Legislature, not this court, is the appropriate body to establish that

17  interaction by declaring a statutory violation to be a per se unfair trade practice. Where the

18  Legislature ***specifically defines the exact relationship*** between a statute and the CPA, this court

19  will acknowledge that relationship."  *Id.* at 787 (emphasis added).

20        RCW 9.46.010 does not meet the *Hangman Ridge* requirements because it does not refer

21  to the CPA, identify a violation of RCW ch. 9.46 as an "unfair trade practice," or even refer to

22  the "public interest."  The Washington Attorney General implicitly recognized RCW ch. 9.46

23  lacks the language required to establish a *per se* unfair trade practice by omitting statutes from

24  that chapter from its index of statutes that can be the basis for a *per se* CPA claim.  *See* Wash.

25  Office of the Attorney General, *Statutes*, https://www.atg.wa.gov/statutes (last visited Oct. 22,

26  2020).  Mere violation of Washington's gambling laws does not establish a *per se* CPA claim,

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1    regardless of the general references to the public in RCW 9.46.010.  *See, e.g.*, *Haner v. Quincy*

2    *Farm Chems., Inc.*, 97 Wash. 2d 753, 762–63, 649 P.2d 828 (1982) (holding that violation of

3    Washington's UCC did not establish a *per se* CPA violation even though the UCC statutes "may

4    well involve public policy").  Taking Plaintiffs' argument to its logical conclusion leads to the

5    illogical result that *any* violation of law would be a *per se* CPA violation

6               2.      *Plaintiffs Do Not Allege an "Unfair or Deceptive Act or Practice."*

7           Plaintiffs try to save their CPA claim by arguing Valve engaged in unfair or deceptive

8    conduct by "entic[ing] unsuspecting users including minors" into gambling.  (Dkt. #63 at 19.)

9    This argument illustrates perfectly how Plaintiffs are attempting to relitigate issues that were

10   already tried to, and decided by, the arbitrators.  Plaintiffs acknowledge "the arbitrators found

11   against Plaintiffs' children based on the children's intentional and knowing gambling online."

12   (*Id.* at 11 (emphasis omitted); *see also* Dkt. #35-1 at 2 ("E.B. was introduced to gambling by

13   friends and voluntarily engaged in gambling with skins on third party websites without any

14   inducement to do so by Valve."); Dkt. #35-2 at 3 ("JP misrepresented his age and then willfully

15   engaged in gambling through third party websites.").)  Additionally, in the Galloway/J.P.

16   arbitration, Arbitrator Schiff found that Plaintiff Galloway's minor child—not Valve—was the

17   one who misled Plaintiff Galloway about the minor's gambling activities.  (Dkt. #35-2 at 3.)

18   Plaintiffs are bound by the arbitrators' findings.

19          Plaintiffs also concede in their Amended Complaint that the minors knew they could lose

20   money while gambling skins on third-party websites.  (Am. Compl., Parties ¶¶ 27–29, Factual

21   Background ¶¶ 72, 74.)  Plaintiffs cannot now contradict their own allegations and the

22   arbitrators' findings to attempt to save their CPA claim.  *See Hakopian v. Mukasey*, 551 F.3d

23   843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions.").  The

24   minors also could have refrained from gambling and avoided loss, but knowingly chose to

25   gamble anyway.  Thus, there can be no "unfair or deceptive act or practice" under the CPA.

26   *Esch v. Legacy Salmon Creek Hosp.*, 738 F. App'x 430, 431 (9th Cir. 2018) ("An act or practice

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1   is not unfair under Washington law if the consumer can avoid the injury.") (citation omitted).

2        These fatal flaws in Plaintiffs' CPA claim cannot be remedied by re-pleading.

3   **F.      Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law (Count 3).**

4        Plaintiffs do not dispute that their unjust enrichment claim rests on the same alleged

5   conduct as their CPA, gambling, and negligence claims.  Instead, Plaintiffs simply assert that

6   their CPA, gambling, and negligence claims "should stand."  (Dkt. #63 at 23.)  Those claims—

7   and this one—fail, as discussed above and in Valve's Motion.  Moreover, the parents cannot

8   establish the first element of their unjust enrichment claim—that there was a benefit conferred on

9   one party (Valve) by another (the parents)—because the parents are not Steam users or Valve

10  customers and did not buy skins, and therefore did not confer any benefit on Valve.  At most, the

11  minors conferred a benefit on Valve by using Steam or buying skins, but the arbitrators already

12  decided the minors' unjust enrichment claim against them.  Plaintiffs also do not plead facts that

13  could establish the second element—the party receiving the benefit (Valve) must have an

14  appreciation or knowledge of it—or explain how Valve knew or could have known it was

15  receiving a benefit from the parents, as the parents had no interactions with Valve.  Nor can

16  Plaintiffs establish it would be unjust for Valve to retain any benefits it received from engaging

17  in a legal activity (offering skins).

18  **G.      Plaintiffs' Negligence Claim Fails With Their Gambling Claim (Count 4).**

19       The parents' negligence claim turns on whether Valve owed them a duty to prevent their

20  children from gambling their skins, which is a question of law.  *Folsom v. Burger King*, 135

21  Wash. 2d 658, 671, 958 P.2d 301 (1998).  In compelling arbitration, Judge Coughenour noted the

22  parents did not plead enough facts in their original Complaint to establish personal claims.  (Dkt.

23  #30 at 7.)  The Amended Complaint does not plead additional facts to fix that fatal flaw.

24       The parents are not Valve customers or Steam users and do not claim ever to have opened

25  a "loot box" or owned a "skin," much less to have gambled one.  It is undisputed that Valve

26  owes no duty to third parties like the parents under such circumstances.  *Folsom*, 135 Wash. 2d

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 10

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1   at 674 ("Under traditional tort law, absent affirmative conduct or a special relationship, no legal

2   duty to come to the aid of a stranger exists.  Further, a private person does not have the duty to

3   protect others from criminal acts of third parties.") (internal citation omitted).

4          The parents do not claim they have a special relationship with Valve that gave rise to a

5   duty of care.  Indeed, the parents and Valve admittedly have no relationship at all.  (*E.g.*, Am.

6   Compl. ¶ 58.)  The special relationship exception does not apply.

7          The Amended Complaint alleges that Valve owed the parents a duty of care because it

8   undertook to stop the misuse of Steam by some third-party websites.  (*Id.* ¶ 141.)  Valve's

9   Motion established that no such duty arose as a matter of law.  (Dkt. #59 at 24.)  Plaintiffs do not

10  address Valve's arguments, but merely assert without citation that "Plaintiffs have sufficiently

11  alleged Valve owed and assumed duties" to take "reasonable action to prevent the harms suffered

12  by Plaintiffs."  (Dkt. #63 at 24.)  That is not a refutation.  This exception is also inapplicable.

13         The Plaintiffs' Opposition gives scant attention to their negligence claim, arguing only

14  that Valve owed them a duty of care because it allegedly "exposed Plaintiffs to high degree risk

15  of harm by creating a high probability their minor children would … illegally gamble online and

16  lose Plaintiffs' money," and claiming losses to the parents were foreseeable "because Valve was

17  aware that many of the users gambling on its platform were under the age 21."  (*Id.*)  More

18  simply, Plaintiffs' argument is that Valve is responsible for gambling and knows many Steam

19  users are under 21, therefore it must owe the parents a duty of care.

20         Plaintiffs' simplistic duty argument fails because the arbitrators held Valve did not owe

21  any duties to the minors, which is binding on Plaintiffs.  (*E.g.*, Dkt. #35-1 at 4 (finding that the

22  "the evidence does not support the proposition that Valve had a duty to prevent E.B. from

23  gambling with skins ….").)  If Valve does not owe a duty to the minors to protect them against

24  gambling harms, it cannot have a duty to protect the parents (who are one step removed) from

25  those same harms.  *See, e.g.*, *Archbishop Coleman F. Carroll High Sch., Inc. v. Maynoldi*, 30 So.

26  3d 533, 544–45 (Fla. Dist. Ct. App. 2010) (parents bringing individual and representative claims

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 11

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1   for injuries to deceased son were subject to same defenses son would be if he brought claims).

2       Plaintiffs rely on a single, inapplicable case, involving the theft of a Metro bus, *Parrilla*

3   *v. King County*, 138 Wash. App. 427, 157 P.3d 879 (2007).  In *Parilla*, a bus driver parked and

4   left his bus with the engine running, leaving an obviously erratic passenger alone on board who

5   (unsurprisingly) took the bus for a joy ride, hitting the plaintiff's car.  The Court of Appeals

6   acknowledged that "an actor ordinarily owes no duty to protect an injured party from harm

7   caused by the criminal acts of third parties."  *Id.* at 436.  But under the unique facts of that case,

8   King County owed the plaintiffs "a duty to guard against [the bus thief's] criminal conduct

9   because the driver's actions exposed the Parrillas to a recognizable high degree of risk of harm

10  through that misconduct, which a reasonable person would have taken into account."  *Id.* at 433.

11      *Parrilla* does not save Plaintiffs' negligence claim.  First, Plaintiffs' duty argument rests

12  only on assertions of counsel, not facts that could meet the narrow exception carved out in

13  *Parrilla*.  Second, *Parrilla* addressed only whether King County had a duty to protect the

14  plaintiff against ***criminal*** conduct by third parties.  *Id.* at 430.  As discussed above, Plaintiffs

15  cannot establish that Valve engaged in illegal gambling.  Nor does Valve have a duty to protect

16  against alleged injuries that occur on third-party websites Valve does not own, operate, or

17  control.  *See Smith v. Stockdale*, 166 Wash. App. 557, 570, 271 P.3d 917 (2012); *Minahan v. W.*

18  *Wash. Fair Ass'n*, 117 Wash. App. 881, 892, 73 P.3d 1019 (2003).

19      **H.    Plaintiffs' Claim for Injunctive Relief Is Not a Separate Cause of Action.**

20      Plaintiffs do not dispute that injunctive relief is merely a remedy and not a separate cause

21  of action.  Plaintiffs' injunctive relief claim fails because their underlying claims fail.  *Markoff v.*

22  *Puget Sound Energy, Inc.*, 9 Wash. App. 2d 833, 851, 447 P.3d 577 (2019).

23      **I.    Conclusion.**

24      For the foregoing reasons, and those in Valve's Motion to Dismiss, Plaintiffs' remaining

25  claims should be dismissed with prejudice and without leave to re-plead.

26

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 12

115399894

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

DATED this 23rd day of October, 2020.

FOX ROTHSCHILD LLP


By  *s/ Gavin W. Skok*
    Gavin W. Skok, WSBA #29766
    Laura P. Hansen, WSBA #48669

*Attorneys for Defendant Valve Corporation*

VALVE'S REPLY IN SUPPORT OF MOTION TO DISMISS
(2:16-CV-01941-JLR) - 13

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

115399894

1

## CERTIFICATE OF SERVICE

2      I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle,

3  Washington.  I am a U.S. citizen over the age of eighteen years and not a party to the within

4  cause.  On the date shown below, I caused to be served a true and correct copy of the foregoing

5  on counsel of record for all other parties to this action as indicated below:

6

| Service List | |
|---|---|
| Kim D. Stephens, WSBA #11984<br>Jason T. Dennett, WSBA #30686<br>**TOUSLEY BRAIN STEPHENS PLLC**<br>1700 Seventh Avenue, Suite 2200<br>Seattle, WA  98101<br>Tel: (206) 682-5600<br>Fax: (206) 682-2992<br>KStephens@tousley.com<br>jdennett@tousley.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF/ Email<br>☐ Via over-night delivery |
| Jasper D. Ward IV<br>Alex C. Davis<br>Patrick Walsh<br>**JONES WARD PLC**<br>Marion E. Taylor Building<br>312 S. Fourth Street, Sixth Floor<br>Louisville, Kentucky 40202<br>Tel: (502) 882-6000<br>Fax: (502) 587-2007<br>jasper@jonesward.com<br>alex@jonesward.com<br>patrick@jonesward.com<br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |

| | |
|---|---|
| Ray W. Kahler<br>**STRITMATTER KESSLER WHELAN WITHEY COLUCCIO**<br>413 8th Street<br>Hoquiam, WA 98550<br>Tel: (360) 533-2710<br>Fax: (360) 532-8032<br>ray@stritmatter.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |

EXECUTED this 23rd day of October, 2020, in Tacoma, Washington.

*Courtney R. Brooks*

Courtney R. Brooks