UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| G.G., et al., | CASE NO. C16-1941JLR |
|---|---|
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| VALVE CORPORATION, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant Valve Corporation's ("Valve") motion to dismiss the first amended complaint (Am. Compl. (Dkt. # 58)) filed by Plaintiffs Grace Galloway, Andy Lesko, and Brenda Shoss.[1]  (Mot. (Dkt. # 59); *see also* Reply (Dkt.

---

[1] In prior litigation in this court, in the parties' arbitrations, and in the Ninth Circuit, Plaintiffs were referred to by their initials.  Ms. Galloway was referred to as "G.G.," Mr. Lesko as "A.L.," and Ms. Schoss as "B.S."  (*See, e.g.*, 3/26/19 Order (Dkt. # 44).)  Because the claims Plaintiffs brought on behalf of their minor children have been dismissed, Plaintiffs now use their full names, rather than their initials, in their amended complaint and briefing.  The court follows Plaintiffs' practice and refers to Plaintiffs by their names in this order.

# 64).)  Plaintiffs oppose the motion.  (Resp. (Dkt. # 63).)  Neither party has requested

oral argument.  Having considered the motion, the parties' submissions regarding the

motion, the relevant portions of the record, and the applicable law, the court GRANTS in

part and DENIES in part Valve's motion to dismiss.

## II.    BACKGROUND

The dispute between the parties in this case has spanned several years and has

included proceedings in this court, in arbitration, and at the Ninth Circuit.  The court

recounts this lengthy background below.

## A.    Plaintiffs' Original Complaint

Plaintiffs originally filed their complaint in this proposed class action on

November 29, 2016, in King County Superior Court.  (*See* Not. of Removal (Dkt. # 1)

Ex. 3 ("Compl.").)   Plaintiffs alleged on behalf of themselves, their minor children, and

all others similarly situated that Valve supported illegal gambling through its virtual

Steam Marketplace platform ("Steam")[2] and popular video games such as Counter Strike:

Global Offensive ("CS:GO").[3]  (*Id.* ¶¶ 1-2.)  Valve did so by "allowing millions of

Americans, including Plaintiffs, to link their individual Steam accounts to third-party

websites" and by "allowing third-party sites to operate their gambling transactions within

Valve's Steam marketplace."  (*Id.* ¶ 3.)

---

[2] Steam "operates as a wholly enclosed ecosystem wherein players can play games, communicate with other players, initiate trades with other players, list items for sale, buy games, buy items, deposit money into their 'Steam Wallet,' participate in forum discussions, and communicate with Valve directly."  (*Id.* ¶ 23.)

[3] CS:GO is a "first-person shooter" game that involves "players who play either as terrorists or counter-terrorists."  (*Id.* ¶ 18.)

Plaintiffs alleged that Valve set up this gambling system "by creating a virtual currency called 'Skins,' which Valve sells for a fee" through the Steam marketplace.  (*Id.* ¶ 4.)  "Skins" are virtual "guns and knives with a variety of different looks and textures that players use during CS:GO gameplay."  (*Id.* ¶ 5.)  Valve "control[s] the real world value of [Skins] through its control over supply in the marketplace."  (*Id.* ¶ 6.)  To obtain Skins, CS:GO players pay Valve for a key to open a virtual weapons drop box during in-game play.[4]  (*Id.* ¶¶ 21, 29.)  Players can then sell or trade the Skins with other players through Valve's Steam Marketplace or through third-party sites.  (*Id.* ¶¶ 23, 29.)  According to Plaintiffs, players can also link their Steam accounts to third-party websites to gamble or cash-out their Skins.  (*Id.* ¶ 42.)  For example, players can use Skins to bet on professional CS:GO matches.  (*Id.* ¶ 41.)  If they win their bets, they can convert the Skins back into cash on the third-party sites.  (*Id.* ¶¶ 41-42.)  Plaintiffs further contended that the third-party gambling websites "require permission and cooperation from Valve in order to access a player's account on Steam, and Valve specifically allows players to transfer Skins to third-party accounts on the Steam Marketplace."  (*Id.* ¶ 44.)  Thus, "users deposit real money on Valve's website, connect that real money account to nominal third-party websites with direct connections to Valve where users can participate in various forms of gambling, and then cash out their account balances, converting Skins into real money."  (*Id.* ¶ 67.)

---

[4] Plaintiffs refer to this feature in their amended complaint as the "Lootbox."  (*See* Am. Compl. at Nature of the Case ¶¶ 11-12.)

Each of the Plaintiffs alleged that their minor children purchased CS:GO from Valve, purchased Skins, "gambled [the Skins] and lost money," and knew that they could "cash out the Skins for real money prior to losing them while gambling." (*Id.* ¶¶ 13-15; *see also id.* ¶¶ 99-101.) Based on these allegations, Plaintiffs alleged state-law claims for violation of the Washington Consumer Protection Act, RCW 19.86, *et seq.* ("CPA"); recovery of money lost at gambling under RCW 4.24.070; violation of the Washington Gambling Act of 1973, RCW 9.46, *et seq.* ("Gambling Act"); unjust enrichment; negligence; and declaratory relief. (Compl. ¶¶ 118–72.)

On December 20, 2016, Valve removed the action to this court (Not. of Removal), and on February 13, 2017, District Judge John C. Coughenour denied Plaintiffs' motion to remand (*see* 2/13/17 Order (Dkt. # 25)).

On April 3, 2017, the court granted Valve's motion to compel arbitration of the claims brought by Plaintiffs on behalf of themselves and their minor children and stayed this case pending arbitration. (4/3/17 Order (Dkt. # 30) at 8.) The court upheld the enforceability of the arbitration clause within the Steam Subscriber Agreement that the Plaintiffs' children agreed to when they registered their Steam accounts and found that the claims of Plaintiffs and their children were within the scope of that arbitration clause. (*Id.* at 4-8.)

**B.    Plaintiffs' Arbitrations**

On June 5, 2017, Plaintiffs submitted a consolidated arbitration demand to the American Arbitration Association ("AAA"). (*See* 3/26/19 Order (Dkt. # 44) at 2.) On January 3, 2018, the arbitrator ruled that the Steam Subscriber Agreement's arbitration

1    provisions required Plaintiffs to pursue arbitration individually in the county where each

2    Plaintiff lived, and the AAA closed the consolidated arbitration.  (*See id.*)

3         On May 3, 2017, Ms. Schoss and Ms. Galloway submitted new arbitration

4    demands to the AAA.  (*See id.*)  Mr. Lesko elected to not file an individual arbitration

5    demand.  (*See id.*)

6         On November 29, 2018, Arbitrator Thomas Laffey held an evidentiary hearing in

7    Ms. Schoss's arbitration.  (Schoss Arb. (Dkt. # 35-1) (sealed) at 1.)  Ms. Schoss brought

8    the same Washington law claims that she asserted in Plaintiffs' original federal court

9    complaint individually and on behalf of her minor child, E.B.  (*Id.*; *see also id.* at 3

10   (noting that the "federal court complaint . . . was attached to E.B.'s [c]laim and . . . was

11   described as containing the substance of the dispute.").)  Ms. Schoss also renewed her

12   challenge to the arbitration clause in the Agreement.  (*Id.* at 2.)

13        Arbitrator Laffey ruled in favor of Valve on all of E.B.'s[5] claims, finding that E.B.

14   had "not carried his burden of proof to establish that Valve [was] responsible for his

15   gambling losses or should be required to make the practice changes sought by E.B. under

16   the applicable law."  (*Id.* at 2.)  First, Arbitrator Laffey found no evidence to support that

17   E.B.'s gambling[6] was the result of an unfair or deceptive act or practice by Valve in

18   violation of the CPA.  (*Id.*)  Rather, he found that E.B. was introduced to Skins gambling

19   by his friends and voluntarily engaged in gambling without any inducement by Valve.

20

21        [5] Arbitrator Laffey's decision refers to E.B. throughout, rather than to Ms. Schoss.  (*See generally id.*)

22        [6] Arbitrator Laffey did not make an express finding of whether Skins gambling met the definition of "gambling" under Washington law.  (*See generally id.*)

1   (*Id.*)  Second, Arbitrator Laffey found that E.B. did not prove his claim for recovery of

2   gambling losses because he could not establish that Valve was the "proprietor" for whose

3   benefit the game was played, as required by RCW 4.24.070.  (*Id.*)  Third, Arbitrator

4   Laffey found that E.B.'s claims under the Gambling Act failed because the activities

5   alleged did not fall into the category of "authorized" gambling activities under

6   Washington law and because there was no evidence that Valve "controlled the operation

7   of the gambling activity," as required by that statute.  (*Id.*)  Fourth, Arbitrator Laffey

8   found that E.B.'s negligence claim failed because the evidence did "not support the

9   proposition that Valve had a duty to prevent E.B. from gambling with [S]kins nor an

10   obligation to design its game and business in a way that would make it impossible for

11   subscribers to gamble using [S]kins on third party websites in which Valve had no

12   interest."  (*Id.*)  He also found that any harm to E.B. occurred when he elected to gamble

13   on the third-party sites, that efforts Valve had taken to hinder the use of Skins in

14   gambling did not create a duty to insure that those steps were successful or effective, and

15   that E.B. rendered at least one of those steps ineffective by providing false information to

16   Valve.  (*Id.* at 2-3.)  Fifth, Arbitrator Laffey found that E.B.'s unjust enrichment claim

17   failed because there was "no evidence Valve was unjustly enriched by E.B.'s gambling

18   on third party websites[,] which was a voluntary act by E.B. and was, at least in part,

19   facilitated by E.B.'s misrepresentations to Valve about his transfers of skins."  (*Id.* at 3).

20   Arbitrator Laffey also rejected E.B.'s challenge to the Agreement's arbitration clause and

21   declined to rule on a new claim, raised in E.B.'s closing brief, that Valve's weapons case

22   opening system and sale of keys to open the cases constituted illegal gambling because

that claim "was not part of the claims presented and arbitrated." (*Id.*)  Finally, Arbitrator

Laffey found that even if E.B. had presented evidence to support his theories of recovery,

he had not provided sufficient proof of the alleged damages he suffered.  (*Id.*)

On December 13, 2018, Arbitrator Mark Schiff held an evidentiary hearing in Ms.

Galloway's arbitration.  (Galloway Arb. (Dkt. # 35-2) (sealed) at 1.)  Ms. Galloway, like

Ms. Schoss, brought the same Washington law claims that she asserted in the original

complaint individually and on behalf of her minor child J.P.  (*Id.* at 1-2; *see also* Mot. at

6.)  Ms. Galloway also sought to have the arbitration proceeding dismissed and the case

sent back to this court.  (Galloway Arb. at 1-2.)

Arbitrator Schiff similarly found that Ms. Galloway did not prove her case,

although he found "evidence of unclean hands on both sides."  (*Id.* at 1.)  He noted that

although Valve knew that gambling of Skins was occurring on third-party websites and

"may have turned a blind eye," J.P. willfully engaged in conduct he knew was improper

by gambling on the third-party sites and by representing trades on Valve's site as "gifts"

despite knowing that the trades were part of his gambling.  (*Id.*)  Arbitrator Schiff also

found that there was no proven connection between Valve's website and the gambling

websites.  (*Id.*)  Arbitrator Schiff concluded that Ms. Galloway did not prove her case and

that her claimed damages were speculative.  (*Id.*)  Arbitrator Schiff ruled in Valve's favor

and stated that his award fully settled all claims submitted to arbitration.  (*Id.*)

## C.    Dismissal of Plaintiffs' Case and Ninth Circuit Appeal

After the AAA closed Ms. Schoss's and Ms. Galloway's arbitrations, Valve

moved this court to lift the stay and dismiss Plaintiffs' claims with prejudice.  (Mot. to

1  Lift Stay & Dismiss (Dkt. # 33).)  In response, Plaintiffs again challenged the arbitrability

2  of their claims and asked the court to set aside the arbitrators' awards pursuant to Section

3  10 of the Federal Arbitration Act.  (Mot. to Lift Stay & Dismiss Resp. (Dkt. # 35).)  The

4  court granted Valve's request to lift the stay, denied Plaintiffs' renewed challenge to the

5  arbitrability of their claims, and denied Plaintiffs' request to set aside the arbitrators'

6  awards.  (*See generally* 3/26/19 Order.)  The court found that the arbitrators had

7  determined (1) that Ms. Schoss and E.B. "had not proven any connection between

8  [Valve] and third-party websites that rendered it liable for illegal gambling activities" and

9  (2) that Ms. Galloway and J.P. "had not established a connection between [Valve] and

10  third-party gambling websites."  (*Id.* at 8.)  The court also declined to disturb the

11  arbitrators' determinations that Ms. Galloway, Ms. Schoss, and their minor children did

12  not adequately prove their damages.  (*Id.* at 9-10.)  The court granted Valve's request to

13  dismiss all of Plaintiffs' claims with prejudice.  (*See id.* at 10.)

14       Plaintiffs appealed the court's order and judgment.  (Not. of Appeal (Dkt. # 46).)

15  On April 3, 2020, the Ninth Circuit affirmed in part and vacated in part the court's order

16  and judgment.  *G.G. v. Valve Corp.*, 799 F. App'x 557 (9th Cir. 2020); (*see also* 9th Cir.

17  Memo. (Dkt. # 51)).  The Ninth Circuit held that the court erred in compelling Plaintiffs,

18  in their *individual* capacities, to arbitrate their claims because Plaintiffs were not

19  signatories to the Steam Subscriber Agreement and were not bound to it by equitable

20  estoppel.  *G.G.*, 799 F. App'x at 558.  The Ninth Circuit also held that the court erred

21  when it entered judgment on the claims that Plaintiffs brought in their individual

22  capacities because a district court can confirm an arbitral award only against parties who

"have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration." *Id.* Thus, the Ninth Circuit remanded the claims Plaintiffs brought in their individual capacities, "to the extent they are viable." *Id.* It affirmed, however, the court's judgment dismissing the claims that Plaintiffs brought on behalf of their children. *Id.* at 558-59.

**D. Plaintiffs' Amended Complaint**

On August 31, 2020, Plaintiffs, with consent from Valve, moved to amend their complaint to conform their claims to the Ninth Circuit's decision and to discovery obtained in their arbitrations. (*See* MTA (Dkt. # 54)). This case was then reassigned from Judge Coughenour to the undersigned. (*See* Min. Order (Dkt. # 55).) The court granted Plaintiffs' agreed motion to amend their complaint (*see* 9/21/20 Order (Dkt. # 56)), and Plaintiffs filed their amended complaint on September 22, 2020 (Am. Compl.).

In their amended complaint, Plaintiffs contend that Valve's "Lootbox" feature, which allows CS:GO players to buy a "key" to a virtual "weapons case" or "crate" that contains Skins, constitutes a form of gambling that is indistinguishable from playing a slot machine, including in its look, feel, and sound.[7] (*Id.* at Nature of the Case ¶¶ 11-12; *id.* at Factual Background ¶¶ 16, 18.[8]) They allege that purchasing a key to open a crate "gives players the chance to win virtual items that may be worth much more than the

---

[7] The arbitrators did not review this legal theory. (*See, e.g.*, Schoss Arb. at 3 (declining to rule on this theory because Ms. Schoss did not raise it until her closing brief); *see generally* Galloway Arb.)

[8] Plaintiffs repeat paragraph numbers 1 through 25 in the Nature of the Case and Factual Background sections of their amended complaint. The court therefore cites to both the section and paragraph where appropriate to avoid ambiguity.

1    value of the 'key', or to win virtual items with effectively *de minimis* value." (*Id.* at

2    Nature of the Case ¶ 11; *see also id.* at Factual Background ¶¶ 18-22.)  They assert that

3    Valve does not disclose "the true odds of a crate containing a given Skin, and cannot

4    disclose the value of the various Skins contained within a given crate because the market

5    values of said Skins are constantly fluctuating." (*Id.* at Nature of the Case ¶ 12.)

6    Plaintiffs allege that although Valve has taken steps since this lawsuit was originally filed

7    to shut down Skins gambling in the United States, those efforts have been ineffective.

8    (*Id.* at Nature of the Case ¶ 15; *see also id.* at Factual Background ¶ 51.)

9          The amended complaint alleges claims based on both Skins gambling and Lootbox

10   gambling for violation of the CPA, violation of the Gambling Act, unjust enrichment,

11   negligence, and injunctive relief, on behalf of the parents of the minor children whose

12   claims were dismissed by the court in its March 26, 2019 Order.[9] (*Id.* ¶¶ 99-163.)

13         On October 1, 2020, Valve filed the instant motion to dismiss the amended

14   complaint in its entirety. (*See* Mot.)

## III.   ANALYSIS

16         Valve argues that Plaintiffs' amended complaint should be dismissed with

17   prejudice because (1) Judge Coughenour's final judgment confirming the arbitrators'

18   decisions regarding Plaintiffs' children's claims forecloses Plaintiffs' individual claims

19   under the law of the case doctrine; (2) claim and issue preclusion bar Plaintiffs from

20   challenging the arbitrators' findings regarding the children's claims; and (3) regardless of

21

22         [9] Plaintiffs did not re-assert their claims for recovery of money lost at gambling under
RCW 4.24.070. (*See generally* Am. Compl.)

1    the preclusive effects of the arbitrators' decisions, Plaintiffs cannot state a claim as to any

2    of their causes of action.  (*See* Mot. at 4.)  Plaintiffs respond that their claims survive

3    because (1) under the law of the case doctrine, the arbitrators' findings actually work in

4    Plaintiffs' favor, rather than Valve's; (2) the arbitrators did not make any findings that

5    would preclude claims based on Plaintiffs' new "Lootbox" theory; (3) the arbitrators did

6    not rule on Plaintiffs' claims in their individual capacity; and (4) regardless of any

7    preclusive effects, Plaintiffs have sufficiently alleged their claims.  (*See* Resp. at 8-25.)

8    The court begins by analyzing the preclusive effects of the prior proceedings before

9    considering whether Plaintiffs have sufficiently stated their claims.

10   **A.      Preclusive Effect of Arbitrations**

11           Valve argues that Plaintiffs' claims are foreclosed under three doctrines: the law of

12   the case, claim preclusion, and issue preclusion.  (Mot. at 4.)  Plaintiffs contend that only

13   the law of the case doctrine applies here.  (Resp. at 8-11.)  The court agrees with

14   Plaintiffs.

15           Under the law of the case doctrine, "a court is generally precluded from

16   reconsidering an issue previously decided by the same court, or a higher court in the

17   identical case."  *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting *United*

18   *States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000) (internal quotation

19   marks omitted).  The parties have not directed the court to any Ninth Circuit authority

20   regarding the preclusive effect of compelled arbitration on claims brought within the

21   same case, nor has the court identified any such authority in its own research.  District

22   courts in other circuits, however, have determined that the law of the case doctrine

1  applies to determine the preclusive effect of arbitration in the same case.  In *Barker v.*

2  *Halliburton Co.*, No. CIV.A H-07-2677, 2010 WL 3339207 (S.D. Tex. Aug. 23, 2010),

3  *aff'd*, 645 F.3d 297 (5th Cir. 2011), for example, a husband and wife sued the wife's

4  former employer.  *Id.* at *1.  The district court compelled arbitration of the wife's claims

5  pursuant to an arbitration agreement and stayed the husband's claims pending arbitration.

6  *Id.*  After the arbitrator dismissed the wife's tort claims with prejudice, the court applied

7  the law of the case doctrine to foreclose the husband's loss of consortium claim.  *Id.* at

8  *2.  *Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble*,

9  No. 4:07-CV-1245, 2009 WL 4906525 (M.D. Pa. Dec. 15, 2009) reached a similar

10 conclusion.  There, the district court had confirmed the arbitrator's decision, and the

11 Third Circuit Court of Appeals affirmed the district court on appeal.  *Id.* at *14.  On

12 remand, the district court declined to reopen the arbitrator's decision regarding the

13 amount of damages to be awarded to the plaintiff because relitigating that calculation

14 would depart from the law of the case.  *Id.* at *3.

15       Here, the court originally compelled arbitration of the claims brought by the three

16 Plaintiffs and their minor children.  (4/3/17 Order at 8.)  Ms. Galloway and Ms. Schoss

17 proceeded to arbitrate their claims on behalf of themselves and their minor children; Mr.

18 Lesko chose not to pursue arbitration.  (*See* 3/26/19 Order at 2.)  The arbitrators found

19 against Ms. Galloway, Ms. Schoss, and their children on all of their claims.  (*See*

20 *generally* Galloway Arb. & Schoss Arb.)  This court then confirmed the arbitration

21 awards and dismissed the claims brought by Plaintiffs and their children.  (3/26/19 Order

22 at 10.)  The Ninth Circuit vacated the court's judgment as to the Plaintiffs in their

1    individual capacities, affirmed the court's judgment of dismissal of the Plaintiffs'

2    children's claims, and remanded the case back to this court for further proceedings.

3    *G.G.*, 799 F. App'x at 558.  Under this procedural posture, the court concludes that the

4    arbitrations constitute a prior stage of the proceedings in this lawsuit, and, as a result, the

5    law of the case doctrine governs the preclusive effect of the arbitrations.[10]  Therefore, the

6    court proceeds to evaluate whether and to what extent the law of the case doctrine

7    precludes the relitigation of the issues underlying Plaintiffs' claims.

8            The law of the case doctrine developed to "maintain consistency and avoid

9    reconsideration of matters once decided during the course of a single continuing lawsuit."

10   *Id.* (quoting 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction

11   2d § 4478, at 637–38 (2002)).  The "law of the case acts as a bar only when the issue in

12   question was actually considered and decided by the first court."  *United States v. Cote*,

13   51 F.3d 178, 181 (9th Cir. 1995).  Under the law of the case doctrine, courts generally do

14   not reconsider an issue that has already been decided in the case unless one or more of

15   the following factors are present: "(1) the first decision was clearly erroneous; (2) an

16   intervening change in the law has occurred; (3) the evidence on remand is substantially

17

18        [10] Claim preclusion prohibits the same parties from litigating a second lawsuit on the
     same claim or any other claim that could have been, but was not, raised in a prior lawsuit.
19   *Roberson v. Perez,* 123 P.3d 844, 848 n.7 (Wash. 2005).  Issue preclusion bars relitigation of
     issues in a second lawsuit involving the same parties.  *Christensen v. Grant County Hosp. Dist.
20   No. 1*, 96 P.3d 957, 960-61 (Wash. 2004).  Because the arbitrations of the children's claims are
     part of the proceedings in this case rather than part of a separate lawsuit, neither claim preclusion
     nor issue preclusion applies here.  This case is thus unlike *MedChoice Risk Retention Grp., Inc.
21   v. Katz*, No. C17-0387TSZ, 2017 WL 3970867, at *10-12 (W.D. Wash. Sept. 8, 2017).  There,
     MedChoice arbitrated its claims against another party before filing its lawsuit against Dr. Katz in
22   this court.  *Id.* at *2-5.  The court held that claim preclusion barred MedChoice's claims against
     Dr. Katz because he was in privity with the defendant in the prior arbitration.  *Id.* at *12.

1    different; (4) other changed circumstances exist; or (5) a manifest injustice would

2    otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  Neither

3    party contends that any of the above factors exist here.  (*See* Mot. at 9-11; Resp. at 8-11.)

4         Valve argues that the law of the case doctrine "bars the parents from retrying the

5    issue of whether Valve facilitated gambling by their children, which was tried to, and

6    decided by, two arbitrators."  (Mot. at 10.)  It contends that the arbitrators ruled that

7    Valve did not "facilitate gambling or act wrongfully or illegally toward" the minor

8    children E.B. and J.P. and, as a result, the Plaintiff parents cannot now raise claims on

9    their own behalf based on Valve's conduct.  (*Id.* at 10-11.)  Plaintiffs maintain that the

10   arbitrators' decisions do not reach Plaintiffs' claims under their "Lootbox" theory; that

11   the arbitrators actually found wrongdoing by Valve; and that the arbitrators found in

12   Plaintiffs' favor on two issues:  whether wagering Skins is illegal gambling and whether

13   Skins are a "thing of value" under Washington's gambling laws.  (Resp. at 3, 11.)

14        The court concludes that both parties overstate the arbitrators' findings and their

15   effects on the litigation of Plaintiffs' individual claims.  The court agrees with Plaintiffs

16   that the law of the case does not bar their claims based on their "Lootbox gambling"

17   theory because that theory was not litigated in the arbitrations.  Indeed, Arbitrator Laffey

18   expressly declined to address the Lootbox theory because it was not properly before him.

19   (Schoss Arb. at 3.)  But the court disagrees with Plaintiffs' assertion that the arbitrators

20   determined that Skins are "things of value" or that Skins gambling is in fact "gambling"

21   under Washington's gambling statutes.  Although the arbitrators refer to the conduct by

22   E.B. and J.P. as "gambling," neither arbitrator analyzed the legal definition of

1  "gambling," nor did either make an express finding that the teenagers' conduct

2  constituted "gambling" under Washington law.  (*See* Schoss Arb.; Galloway Arb.)

3         The court further disagrees with both Valve's broad assertion that the arbitrators

4  found that "Valve did not act wrongfully or illegally toward" Plaintiffs' children (*see*

5  Mot. at 10-11) and Plaintiffs' broad assertion that the arbitrators found actionable

6  wrongful conduct by Valve (*see* Resp. at 3, 11).  The issues that the arbitrators

7  necessarily decided were narrower than the parties assert.  Rather, the court concludes,

8  under the law of the case doctrine, that the arbitrators' decisions regarding the children's

9  claims preclude Plaintiffs' individual claims only to the extent they rely on allegations

10  that Valve (1) was responsible for Skins gambling losses by the minor children; (2)

11  facilitated or had a connection to third-party Skins gambling websites; and (3) had a duty

12  to Plaintiffs' children to prevent them from gambling with Skins on third-party websites.

13  (*See generally* Galloway Arb.; Schoss Arb.)

14         Finally, Plaintiffs assert that the law of the case doctrine does not preclude any of

15  Mr. Lesko's claims because Mr. Lesko chose not to arbitrate his child's claims.  (Resp. at

16  14.)  The court disagrees.  The law of the case doctrine precludes relitigation of issues as

17  well as claims.  *See Ingle*, 408 F.3d at 594.  There is no dispute that all three Plaintiffs

18  raised the same issues on behalf of themselves and their minor children in their original

19  complaint and in the consolidated arbitration demand.  The court concludes, therefore,

20  that the law of the case doctrine precludes Mr. Lesko from retrying the issues decided in

21  Ms. Galloway's and Ms. Schoss's arbitrations.

22

1   **B.     Motion to Dismiss**

2        Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

3   state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When

4   considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

5   the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith*

6   *Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded

7   facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit*

8   *P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court,

9   however, is not required "to accept as true allegations that are merely conclusory,

10  unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*

11  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "To survive a motion to dismiss, a

12  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

13  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

14  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v.*

15  *Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the

16  plaintiff pleads factual content that allows the court to draw the reasonable inference that

17  the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. The court

18  now applies this standard to each of Plaintiffs' claims.

19       **1.     Count I:  CPA Claim**

20       To prevail on a CPA claim, a plaintiff must show (1) an unfair or deceptive act or

21  practice, (2) occurring in trade or commerce, (3) impacting the public interest, (4) injury

22  to the plaintiff's business or property, and (5) causation. *Hangman Ridge Training*

1    *Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986); RCW 19.86.020.

2    Valve challenges only whether Plaintiffs have plausibly alleged that Valve engaged in an

3    unfair or deceptive act or practice. (*See* Mot. at 16-18.)

4         At the outset, the court rejects Plaintiffs' argument that Valve's alleged conduct

5    constituted a per se unfair trade practice under the CPA. (*See* Resp. at 16.) For a

6    violation of a statute to constitute a per se unfair trade practice, the legislature must

7    specifically declare that a violation constitutes an unfair trade practice or an unfair or

8    deceptive act in trade or commerce. *Hangman Ridge*, 719 P.2d at 535. Plaintiffs allege

9    that Valve engaged in per se unfair trade practices under WAC 230-06-010 by permitting

10   underage gambling and under the Gambling Act by engaging in professional gambling

11   without a license. (Am. Compl. ¶ 106.) Neither WAC 230-06-010 nor the Gambling

12   Act, however, includes a specific declaration that a violation constitutes an unfair trade

13   practice or an unfair or deceptive act in trade or commerce. *See generally* WAC

14   230-06-010 & ch. 9.46 RCW. Although Plaintiffs point to declarations of public interest

15   in RCW 9.46.010, those declarations serve only to establish that a violation of the statute

16   has a public interest impact; they do not establish a per se unfair trade practice. *See*

17   *Hangman Ridge*, 719 P.2d at 538. Plaintiffs must, therefore, plead that Valve's actions

18   constituted an unfair or deceptive act or practice.

19        An act or practice is "unfair" under the CPA if it causes substantial injury to

20   consumers, is not outweighed by countervailing benefits to consumers or competitors,

21   and is not reasonably avoidable by consumers. *Panag v. Farmers Ins. Co.*, 204 P.3d 885,

22   896 (Wash. 2009). An act or practice is "deceptive" if the alleged act had "the *capacity*

1    to deceive a substantial portion of the public." *Hangman Ridge*, 719 P.2d at 534

2    (emphasis in original).  Whether a practice has the capacity to deceive a substantial

3    portion of the public is a question of fact.  *Behnke v. Ahrens*, 294 P.3d 729, 735 (Wash.

4    Ct. App. 2012).

5           Plaintiffs assert that Valve's unfair or deceptive acts arise from its support of

6    Lootbox gambling and Skins gambling.  (Resp. at 17.)  They allege that Valve

7    intentionally designed its Lootboxes to replicate the look, feel and sound of a slot

8    machine; incorporated this system into CS:GO without a gaming license; and failed to

9    disclose the odds of obtaining the most valuable items in the Lootboxes or that that the

10   value of the items in the Lootboxes were subject to change.  (*See* Am. Compl. at Factual

11   Background ¶¶ 16-22.)  With respect to Skins gambling, they allege that Valve actively

12   encouraged and facilitated third-party Skins gambling websites.  (*See, e.g., id.* at Nature

13   of the Case ¶ 13; *id.* at Factual Background ¶¶ 71-73.)  Plaintiffs allege that Valve's acts

14   are deceptive because they "created a false impression of fair play, legality, and safety"

15   which induced Plaintiffs to unwittingly provide money to their children to purchase Skins

16   and Lootbox keys.  (Am. Compl. ¶¶ 110-11.)

17          Because the arbitrators found no connection between Valve and the third-party

18   Skins gambling websites, the court finds that the law of the case doctrine precludes

19   Plaintiffs' CPA claim based on the alleged unfair and deceptive practice of encouraging

20   and facilitating third-party Skins gambling websites.  (*See supra* Section III.A; *see also*

21   3/26/19 Order at 8 (noting the arbitrators found that Ms. Galloway and Ms. Schoss did

22   not prove a connection between Valve and the third-party gambling websites).)  The law

1  of the case doctrine, however, does not preclude Plaintiffs' CPA claim based on alleged

2  unfair or deceptive practices arising out of Valve's Lootbox feature.  (*See supra* Section

3  III.A.)  With respect to the Lootbox theory, the court finds that Plaintiffs have plausibly

4  alleged that Valve's conduct is an unfair or deceptive act or practice under the CPA.

5          Valve argues that Plaintiffs cannot allege an unfair or deceptive act or practice

6  because they are bound by the arbitrators' findings that the children intentionally and

7  knowingly gambled online and because the minors knew they could lose money

8  gambling Skins on third-party websites.  (Mot. at 18-19.)  These arguments, however, go

9  only to Plaintiffs' claims based on alleged Skins gambling on third-party sites; they do

10  not address Plaintiffs' claims based on alleged Lootbox gambling.  Valve also argues that

11  Plaintiffs cannot allege an unfair practice because their injuries could have been avoided

12  if the minor children had refrained from gambling.  (*Id.* (citing *Esch. v. Legacy Salmon*

13  *Creek Hosp.*, 738 F. App'x. 430, 431 (9th Cir. 2018)).)  Plaintiffs, however, plead that

14  their injuries were not avoidable because Valve obscured the true nature of their

15  children's conduct on its platform.  (Am. Compl. ¶ 116.)  Moreover, whether a particular

16  injury could have been avoided goes only to whether the practice was unfair under the

17  CPA; it is not a factor in determining whether an act is deceptive.  *Panag*, 204 P.3d at

18  996 ("[T]he 'reasonably avoided' test does not apply to 'deceptive,' as opposed to

19  'unfair,' acts or practices.").

20          Accordingly, the court DENIES Valve's motion to dismiss Plaintiffs' CPA claims

21  based on Valve's alleged support of Lootbox gambling.  The court, however, GRANTS

22  Valve's motion to dismiss Plaintiffs' CPA claims based on Valve's alleged support of

1   Skins gambling and alleged per se violations of WAC 230-06-010 and the Gambling Act

2   and DISMISSES those claims with prejudice.  *See Lopez v. Smith*, 203 F.3d 1122, 1127

3   (9th Cir. 2000) (a court "should grant leave to amend . . . unless it determines that the

4   pleading could not possibly be cured by the allegation of other facts").

5         **2.**      **Count II:  Violations of the Gambling Act of 1973, RCW 9.46 *et seq*.**

6         The Gambling Act creates a private cause of action against persons who directly

7   or indirectly control the operation of "any gambling operation *authorized by*" the statute.

8   RCW 9.46.200 (emphasis added).  The fundamental theory of Plaintiffs' case, however,

9   is that any alleged gambling activities by Valve are *illegal*—that is, that they are *not*

10   authorized by Washington law.  (*See* Am. Compl. at Nature of the Case ¶¶ 2-3.)  As such,

11   Plaintiffs cannot state a claim under RCW 9.46.200.  The court declines Plaintiffs'

12   invitation to read into the plain language of RCW 9.46.200 a cause of action for damages

13   arising from unauthorized gambling, particularly where the Legislature has separately

14   provided a cause of action to recover losses from illegal gambling.  *See* RCW 4.24.070.

15   Accordingly, the court GRANTS Valve's motion to dismiss Plaintiffs' claims for

16   violations of the Gambling Act and DISMISSES those claims with prejudice.

17         **3.**      **Count III:  Unjust Enrichment**

18        "Unjust enrichment is the method of recovery for the value of the benefit retained

19   absent any contractual relationship because notions of fairness and justice require it."

20   *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).  A person has been unjustly

21   enriched when he has profited or enriched himself at the expense of another contrary to

22   equity.  *Pierce Cty. v. State*, 185 P.3d 594, 619 (Wash. Ct. App. 2008) (citing *Dragt v.*

1    *Dragt/DeTray, LLC*, 161 P.3d 473, 482 (Wash. Ct. App. 2007)).  Unjust enrichment has

2    three elements:  (1) there must be a benefit conferred on one party by another; (2) the

3    party receiving the benefit must have an appreciation or knowledge of the benefit; and (3)

4    the receiving party must accept or retain the benefit under circumstances that make it

5    inequitable for the receiving party to retain the benefit without paying its value.  *Id.*

6    (citing *Dragt,* 161 P.3d at 482).

7            Plaintiffs allege that they conferred a benefit on Valve, at their expense and

8    detriment, by providing their children funds that were used for purchasing "keys used for

9    the gambling through the slot machine [L]ootbox process" or "Skins that were ultimately

10   used in playing games of chance on various websites with which Valve had a financial

11   relationship."  (Am. Compl. ¶¶ 129-31.)  They allege that Valve's retention of the funds

12   that Plaintiffs provided their children is unjust because "Valve created an illegal and

13   unconscionable gambling ecosystem while creating false impressions of safety and fair

14   play on its Steam platform . . . and has created an illegal international gambling economy

15   operating in the United States and targeted at teenagers."  (*Id.* ¶ 133.)

16           Valve argues that Plaintiffs have not pleaded facts that plausibly support the first

17   and second elements of their unjust enrichment claim.  (Reply at 11.)  The court agrees.

18   First, Plaintiffs do not plausibly allege that *they* provided a benefit to Valve.  Rather, they

19   allege that they provided funds to *their children*, who then spent those funds on Skins and

20   Lootbox keys.  Plaintiffs cite no case to support that their act of providing funds to their

21   children was equivalent to conferring a benefit to Valve.  Second, even if the funds

22   Plaintiffs gave to their children could constitute a benefit to Valve, Plaintiffs have not

1    made any allegation that Valve had an appreciation or knowledge of any benefit

2    bestowed on it by the parents, rather than by their children.  *See Pierce Cty.*, 185 P.3d at

3    619.  Finally, as discussed above, the law of the case doctrine bars Plaintiffs' claims to

4    the extent they rely on allegations that Valve facilitated or controlled Skins gambling on

5    third-party websites.  Therefore, the court (1) GRANTS Valve's motion to dismiss

6    Plaintiffs' unjust enrichment claims based on Valve's alleged support for Lootbox

7    gambling and DISMISSES those claims without prejudice and with leave to amend, and

8    (2) GRANTS Valve's motion to dismiss Plaintiffs' unjust enrichment claims based on

9    Valve's alleged support of Skins gambling and DISMISSES those claims with prejudice.

10          **4.     Count IV: Negligence**

11          The elements of a negligence claim are (1) a duty, owed by the defendant to the

12    plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a

13    resulting injury; and (4) proximate cause between the breach and the injury.  *Folsom v.*

14    *Burger King*, 958 P.2d 301, 308 (Wash. 1998).  The existence of a duty is a question of

15    law.  *Id.*  "Since a negligence action will not lie if a defendant owed a plaintiff no duty of

16    care, the primary question is whether a duty of care existed."  *Id.*

17          A duty of care is "an obligation, to which the law will give recognition and effect,

18    to conform to a particular standard of conduct toward another."  *Affil. FM Ins. Co. v. LTK*

19    *Consulting Servs., Inc.*, 243 P.3d 521, 526 (Wash. 2010) (internal quotation marks

20    omitted).  To sustain a negligence action, the duty must be one owed to the injured

21    plaintiff.  *Burg v. Shannon & Wilson, Inc.*, 43 P.3d 526, 531 (Wash. Ct. App. 2002).

22

1    Plaintiffs allege that Valve owed them "a duty to use reasonable care to provide a

2    reliable and safe videogaming experience, and to ensure that its Steam platform was used

3    in a manner that comported with applicable law, including but not limited to" the CPA

4    and the Gambling Act, as well as "a duty of reasonable care to stop Skins gambling."

5    (Am. Compl. ¶¶ 139, 141.)  Plaintiffs further allege that Valve breached its duties to them

6    by "creating, allowing and maintaining a system of Skins gambling that resulted in

7    unregulated, third-party websites harming Plaintiffs . . .  through rigged gambling

8    websites" and by "creating a process for obtaining Skins that required purchasing keys

9    from Valve to open crates/Lootboxes, [that] closely resembled slot machine play, and

10   constituted illegal gambling."  (*Id.* ¶ 140.)  Valve argues that Plaintiffs have not plausibly

11   alleged that Valve owes them, as the parents of Valve customers, any duty of care that

12   would give rise to a negligence claim.  (Mot. at 21-23.)  The court agrees.

13   Plaintiffs have not directed the court to any cases that found a duty of care owed

14   by a video game company to parents of the players of that game.  Instead, Plaintiffs rely

15   on *Parilla v. King County*, 157 P.3d 879 (Wash. Ct. App. 2007).  In *Parilla*, a King

16   County Metro bus driver who was dealing with an altercation among passengers exited

17   his bus, leaving the engine running.  *Id.* at 881.  One of the passengers, who had been

18   exhibiting "bizarre behavior," moved into the driver's seat and drove the bus, crashing it

19   into several cars and injuring the plaintiffs.  *Id.*  The passenger was later found to be

20   under the influence of illegal recreational drugs.  *Id.*  The Washington Court of Appeals

21   held that King County owed the plaintiffs a duty to guard against the passenger's criminal

22   conduct because "the driver's actions exposed the plaintiffs to a recognizable high degree

1    of risk of harm through [the passenger's] misconduct, which a reasonable person would

2    have taken into account." *Id.* at 882.  In determining King County owed a duty of care to

3    the plaintiffs, the court observed that "an instrumentality uniquely capable of causing

4    severe injuries"—a 14-ton bus—"was left idling and unguarded within easy reach of a

5    severely impaired individual," and the "driver was aware of these circumstances." *Id.* at

6    886.  As a result, the bus driver's act of leaving the bus created a high degree risk of harm

7    through the passenger's misconduct, which, the Court of Appeals held, a reasonable

8    person would have taken into account.  *Id.*

9        Here, the court finds that Plaintiffs have not plausibly alleged that Valve owed a

10   duty of care to *them*, as the parents of CS:GO players.  First, as discussed above, the law

11   of the case doctrine bars Plaintiffs' claims to the extent they rely on allegations that

12   Valve facilitated or controlled Skins gambling on third-party websites.  (*See supra*

13   Section III.A.)  Second, with respect to Lootbox gambling, Plaintiffs argue that this case

14   is analogous to *Parilla* because Valve's actions and failures to act exposed Plaintiffs to a

15   high degree risk of harm by creating a high probability that their minor children would

16   illegally gamble online and lose money that the parents gave them.  (Resp. at 24.)  They

17   allege that this harm was foreseeable because Valve knew or should have known that

18   minor children were using their parents' money to buy Lootbox keys.  (*See* Am. Compl. ¶

19   142.)  At most, however, these allegations might plausibly support a duty of care owed by

20   Valve to the minor children.  They do not establish an unusual or high risk of foreseeable

21   harm to the parents.  *See Kim v. Budget Rent A Car Sys., Inc.*, 15 P.3d 1283, 1285 (Wash.

22   2001) (noting that an "unusual or high degree risk of harm" is required to show a duty of

care to prevent the acts of third parties).  Because Plaintiffs have not plausibly alleged that Valve owed a duty of care to them as parents of the minor children who played CS:GO, the court (1) GRANTS Valve's motion to dismiss Plaintiffs' negligence claims based on Valve's alleged support for Lootbox gambling and DISMISSES those claims without prejudice and with leave to amend, and (2) GRANTS Valve's motion to dismiss Plaintiffs' negligence claims based on Valve's alleged support of Skins gambling and DISMISSES those claims with prejudice.

### 5.    Count V:  Injunctive Relief

In the fifth count of their amended complaint, Plaintiffs allege that they are entitled to various forms of injunctive relief.  (*See* Am. Compl. ¶¶ 145-63.)  Valve argues that there is no separate and distinct cause of action for "injunctive relief."  (Mot. at 24-25.)  Instead, the types of injunctive relief listed in Count V are merely types of remedies that Plaintiffs might seek if they prevail on their substantive clams.  Valve also argues that injunctive relief under the CPA is not available to Plaintiffs because they did not serve a copy of their complaint on the Washington Attorney General in compliance with RCW 19.86.095.  (*Id.* at 25.)  The court agrees with Valve.  The court GRANTS Valve's motion to dismiss Count V of Plaintiffs' complaint, without prejudice to Plaintiffs amending their Prayer for Relief to include the types of injunctive relief they seek by their complaint and serving the complaint on the Washington Attorney General.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Valve's motion to dismiss:

1          (1)      The court DENIES Valve's motion to dismiss Plaintiffs' CPA claims

2    (Count I) based on Valve's alleged support of Lootbox gambling.

3          (2)      The court GRANTS Valve's motion to dismiss Plaintiffs' CPA claims

4    (Count I) based on Valve's alleged support of Skins gambling and on alleged per se

5    violations of WAC 230-06-010 and the Gambling Act of 1973.  These claims are

6    DISMISSED with prejudice.

7          (3)      The court GRANTS Valve's motion to dismiss Plaintiffs' claims for

8    violations of the Gambling Act (Count II) and DISMISSES those claims with prejudice.

9          (4)      The court GRANTS Valve's motion to dismiss Plaintiffs' unjust

10   enrichment claims (Count III) based on Valve's alleged support for Lootbox gambling

11   and DISMISSES those claims without prejudice and with leave to amend.

12         (5)      The court GRANTS Valve's motion to dismiss Plaintiffs' unjust

13   enrichment claims (Count III) based on Valve's alleged support of Skins gambling and

14   DISMISSES those claims with prejudice.

15         (6)      The court GRANTS Valve's motion to dismiss Plaintiffs' negligence

16   claims (Count IV) based on Valve's alleged support for Lootbox gambling and

17   DISMISSES those claims without prejudice and with leave to amend.

18         (7)      The court GRANTS Valve's motion to dismiss Plaintiffs' negligence

19   claims (Count IV) based on Valve's alleged support of Skins gambling and DISMISSES

20   those claims with prejudice.

21         (8)      The court GRANTS Valve's motion to dismiss Plaintiffs' claim for

22   injunctive relief (Count V), without prejudice to Plaintiffs amending their Prayer for

Relief to include the types of injunctive relief they seek by their complaint and serving the complaint on the Washington Attorney General.

Plaintiffs shall file an amended complaint, if any, alleging facts that resolve the issues stated herein, by no later than twenty (20) days from the filing date of this order.

Dated this 16th day of December, 2020.

JAMES L. ROBART
United States District Judge

ORDER - 27