UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| G.G., et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>VALVE CORPORATION,<br><br>                Defendant. | CASE NO. C16-1941JLR<br><br>ORDER DENYING PLAINTIFFS' MOTION TO COMPEL |

## I.    INTRODUCTION

Before the court is Plaintiffs Grace Galway and Brenda Shoss's (collectively, "Plaintiffs") motion to compel Defendant Valve Corporation ("Valve") to produce certain data regarding users of its Steam gaming platform. (Mot. (Dkt. # 87).) Valve opposes Plaintiffs' motion. (Resp. (Dkt. # 88).) Plaintiffs did not file a reply and thus have not responded to Valve's arguments in opposition to their motion. (*See generally* Dkt.) The court has considered the motion, all submissions filed in support of and in opposition to

1  the motion, the relevant portions of the record, and the applicable law.  Being fully

2  advised,[1] the court DENIES Plaintiffs' motion to compel.

## II.     BACKGROUND

The court discussed the factual and procedural background of this proposed class action in detail in its order granting in part Valve's motion to dismiss Plaintiffs' amended complaint.  (*See* 12/16/20 Order (Dkt. # 65) at 2-10.)  Therefore, the court sets forth below only the background relevant to Plaintiffs' motion to compel.

In 2017, the court granted Valve's motion to compel arbitration of the claims asserted by Plaintiffs on behalf of themselves and their minor children based on the children's agreement to an arbitration clause in Valve's Steam Subscriber Agreement.  (*See generally* 4/3/17 Order (Dkt. # 30).)  The arbitrators found in Valve's favor on all claims.  (*See* 3/26/19 Order (Dkt. # 44) at 2-3.)  Subsequently, the court denied Plaintiffs' request to set aside the arbitrators' awards and dismissed this case.  (*Id.* at 10.)

Plaintiffs appealed.  The Ninth Circuit Court of Appeals affirmed the court's dismissal of the claims that Plaintiffs brought on behalf of their children but reversed the dismissal of Plaintiffs' individual claims.  *G.G. v. Valve Corp.*, 799 F. App'x 557, 558-59 (9th Cir. 2020).  The Ninth Circuit held that the court had erred in compelling Plaintiffs to arbitrate their individual claims because Plaintiffs were not users of Valve's Steam gaming platform and thus had not agreed to the arbitration clause in the Steam Subscriber Agreement.  *Id.*

---

[1] Neither party requests oral argument (*see* Mot., Resp.), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

After the case was remanded, Plaintiffs filed an amended complaint. (Am. Compl. (Dkt. # 58).) In relevant part, Plaintiffs alleged that Valve's "Lootbox" feature, which allows players of Valve's games to buy a "key" to a virtual "weapons case" or "crate" that contains "Skins" (virtual guns and knives with a variety of different looks and textures), constitutes a form of gambling ("Lootbox gambling") that is indistinguishable from playing a slot machine. (*Id.* at Nature of the Case ¶¶ 11-12; *id.* at Factual Background ¶¶ 16, 18.) Plaintiffs alleged that Valve's acts were deceptive within the meaning of the Washington Consumer Protection Act, ch. 19.86 RCW ("CPA"), because they "created a false impression of fair play, legality, and safety" which induced Plaintiffs to unwittingly provide money to their minor children to purchase Skins and Lootbox keys. (*Id.* ¶¶ 110-11.) Plaintiffs alleged these claims on behalf of the following proposed class:

> All persons in the United States who are parents/guardians of a minor child who provided funds to their minor child(ren) for the purchase of Skins and/or Keys for the games CounterStrike:Global Offensive, Dota2 and Team Fortress 2.

(*Id.* ¶ 94.)

Valve moved to dismiss Plaintiffs' amended complaint. (*See* MTD (Dkt. # 58).) The court dismissed all of Plaintiffs' individual claims except for their CPA claim based on Valve's alleged support of Lootbox gambling. (12/16/20 Order at 26-27.[2])

---

[2] Although the court granted Plaintiffs leave to amend their unjust enrichment and negligence claims based on Valve's alleged support for Lootbox gambling, Plaintiffs did not file a second amended complaint. (*See generally* Dkt.)

Plaintiffs now move the court for an order compelling Valve to produce certain Steam user account information. (*See generally* Mot.; *see also* Mot. Ex. 1 (Valve's objections to Plaintiffs' interrogatories and requests for production).)

### III.   ANALYSIS

Plaintiffs request 17 types of information about three categories of Steam user accounts: those that "have used the family view feature," "have two or more different names in the 'Address' field," or "have a different name in the 'Address' field than in the credit card name field and/or PayPal information field." (*See* Mot. Ex. 1 at 7-12.) They also seek information regarding (1) the number of Steam accounts that fall into these three categories and (2) the number of Steam accounts with key purchases in their histories which have not logged playtime for the game CounterStrike:Global Offensive. (*See id.* at 28-33.) Plaintiffs argue that they need this information, which they repeatedly characterize as "putative class members' Steam account data," to determine the number of class members and the identities of the class members. (*See* Mot. at 5-7.)

The court DENIES Plaintiffs' motion. First, as Valve points out, the members of the proposed class by definition do not and cannot have Steam accounts. (Resp. at 9.) Indeed, Plaintiffs' individual CPA claims survive only because the Ninth Circuit found that Plaintiffs were not Steam users and thus could not have agreed to Valve's arbitration clause. *See G.G.*, 799 F. App'x at 558-59. The information that Plaintiffs seek, therefore, is not "putative class members' Steam account data"; rather, it is account data relating to third parties who are not class members. As a result, the cases cited by

1  Plaintiffs, which discuss discovery of class member account information, are inapposite.
2  (*See* Mot. at 6; Resp. at 9-10.)
3       Second, the court agrees with Valve that it is only speculative that the data
4  Plaintiffs seek can be used to identify possible class members. (*See* Resp. at 8-9.) Valve
5  does not collect or record information about the names, ages, parent-child relationships,
6  or parents of Steam users. (Miller Decl. (Dkt. # 90) ¶ 4; Skok Decl. (Dkt. # 89) ¶¶ 4-6.)
7  And as Valve explains, the information produced for the accounts belonging to Plaintiffs'
8  children does not successfully identify Plaintiffs. (*See* Resp. at 9.) Ms. Schoss's name
9  appears nowhere in her son's account data, and Ms. Galway's son's account does not
10 satisfy any of the three criteria set forth by Plaintiffs in their discovery requests. (*Id.*
11 (citing Skok Decl. ¶¶ 5-6).) Plaintiffs have offered no explanation of how they would use
12 the requested data to identify members of the class. (*See generally* Mot.)
13      Finally, the court is persuaded that assembling the data requested by Plaintiffs
14 would impose an unreasonable and disproportional burden on Valve. (*See* Resp. at 11.)
15 There are hundreds of millions of Steam user accounts and over 100 million monthly
16 active users. (Miller Decl. ¶ 3.) Because the information requested by Plaintiffs spans
17 multiple databases and would require decryption of Valve's credit card payment
18 database, Valve's economist, Kristian Miller, estimates that it would require at least two
19 Valve employees working full time for several weeks to compile the data Plaintiffs
20 request. (*Id.* ¶¶ 6-7.) In addition, Mr. Miller estimates that the data requested by
21 Plaintiffs could include tens of millions of account records. (*Id.* ¶ 8; *see also* Skok Decl.
22 ¶ 4 (stating that the requested data for Plaintiffs' children spanned up to 67 pages of

records per account).)  The court agrees with Valve that the burden of producing the data Plaintiffs seek far outweighs the relevance of the data to class certification.

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion to compel (Dkt. # 87).[3]

Dated this 25th day of August, 2021.

JAMES L. ROBART
United States District Judge

---

[3] The court directs the parties to review the class certification scheduling order, which instructs that "before moving for an order relating to discovery, the movant must request a conference with the court" by notifying the courtroom deputy.  (3/2/21 Sched. Order (Dkt. # 81).)  The court will strike any future discovery motion that is filed before contacting the court.

ORDER - 6