The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GRACE GALWAY and BRENDA SHOSS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VALVE CORPORATION, a Washington corporation,

Defendant.

Case No. 2:16-cv-01941-JLR

**VALVE CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**NOTE ON MOTION CALENDAR: JANUARY 7, 2022**

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR)

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

# I.   <u>INTRODUCTION</u>

This is not a viable class action.  After more than six years of litigation, Plaintiffs have not identified a single class member other than themselves and provide no evidence to establish (or even estimate) class size.  They also propose no method for determining class membership using common evidence, but instead would rely on an extensive file-by-file review and self-identification by potential class members.  The class Plaintiffs propose to certify is riddled with significant individualized issues that have real, dispositive impact, including: (i) whether class members suffered a CPA injury; (ii) whether class members must arbitrate their claims; (iii) whether class members' claims are time-barred; (iv) whether Valve caused the class members' alleged injuries, or whether class members' own children's or third parties' acts were intervening causes; (v) whether class members relied on Valve in deciding to give money to their children; and (vi) whether and to what extent class members were damaged (fatally, Plaintiffs' proposed damages theory does not match their liability theory, contrary to *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).  All of these individual issues must be determined to answer Plaintiffs' allegedly common questions, but none can be decided on a class-wide basis using common evidence.  Moreover, Plaintiffs are not typical or adequate representatives because they (i) do not meet their own proposed class definition, (ii) suffered a different alleged injury than many class members, and (iii) are not subject to the statute of limitations defense, or the arbitration defense that most or all class members with standing must defeat.  Plaintiffs cannot satisfy any of the Rule 23(a) prerequisites for class certification.

Nor can Plaintiffs meet the additional requirements for certification under Rule 23(b)(2) or (3).  The predominance of individualized issues over common ones makes certification of a damages class under Rule 23(b)(3) improper, and destroys any efficiencies from proceeding on a class basis, rendering a class action inferior.  Certification of a Rule 23(b)(2) class is also improper because the requested injunctive relief would not apply equally to all class members—and offers no benefit at all to Plaintiffs—and Plaintiffs' damages claims predominate.  Nor can

<table>
<tr><td>VALVE'S OPPOSITION TO PLAINTIFFS'<br>MOTION FOR CLASS CERTIFICATION<br>(2:16-CV-01941-JLR) - 1</td><td>**Fox Rothschild LLP**<br>1001 Fourth Avenue, Suite 4500<br>Seattle, WA 98154<br>206.624.3600</td></tr>
</table>

128705047.1

Plaintiffs fix the fatal flaws with their proposed class through Rule 23(c)(4) issue certification or certification of a "hybrid" class because Plaintiffs cannot meet Rule 23(a) and (b) requirements.

Plaintiffs' fractured class is not certifiable under any rule or theory.

## II.   FACTUAL BACKGROUND

The Court is familiar with the underlying facts and remaining allegations in this case. *See* Dkt. #65 at 2–10.  Additional relevant facts regarding each Plaintiff are below.

### A.   Plaintiff Grace Galway

Plaintiff Grace Galway is the parent of Jesse Plum, a 20-year-old who used to play CS:GO and opened some weapon cases in 2015.  Deposition of Jesse Plum ("Plum Dep.") at 9:12-15, 80:5-16, Ex. A Declaration of Gavin W. Skok ("Skok Decl.") (submitted herewith).  Ms. Galway does not have a Steam account, has never visited Steam or Valve's website, and has never played CS:GO.  Plaintiff Galway's Responses to Valve's Requests for Admission ("Galway RFA Resp.") Nos. 1-6, 21-22 (Skok Decl., Ex. B); Deposition of Grace Galway ("Galway Dep.") at 33:11-12, 34:23-25 (Skok Decl., Ex. C).  She has never read anything online about Steam or its features, and has taken no steps to learn about CS:GO, Valve, or Steam.  Galway Dep. at 35:18-20, 37:3-5.

Similarly, Ms. Galway has no understanding of weapon case opening and has never seen one opened.  *Id*. at 70:4-10.  She has never seen any public statements by Valve about case opening and is not aware of what Valve has said or not said about it.  *Id.* at 73:25-74:6, 74:15-21. Prior to the December 2018 arbitration of her claims, she was unaware of her son spending money on case opening and had not heard of keys, which open cases.  *Id*. at 73:21-24, 86:18-23.

Ms. Galway gave Mr. Plum money for use in video games after conversations that were "pretty brief" where "he'd be vague," telling her only that "I need money for games" or "I need to put money on my account."  *Id*. at 84:20-85:3; *see also* Plum Dep. at 43:16-23 (he would just ask his mother "if I could have some money for video games").  She has not talked with her son about weapon cases, case opening, or keys, and did not know what cases or keys were when she gave

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 2

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

him money.  Galway Dep. at 71:7-8, 72:22-24, 82:2-5, 86:15-17; Galway RFA Resp. Nos. 9, 10, 17, 18.  Ms. Galway did not at any time give her son funds for the purpose of buying "lootboxes" or keys for case opening, and *all* such purchases he made were completed without her knowing he was making them.  Galway RFA Resp. Nos. 11, 14, 19.  More simply, Ms. Galway said she "did not understand what Jesse was asking for money to do."  *Id.*, No. 24.  In some instances, Mr. Plum used Ms. Galway's credit card to purchase keys and weapon cases without her permission or first talking with her.  Plaintiff Galway's Response to Valve's Interrogatory No. 6 (Skok Decl., Ex. D); Galway Dep. at 91:23-92:7.

Mr. Plum bought skins, keys, and weapon cases using money (i) from Ms. Galway, (ii) from "birthday or Christmas money," and (iii) from his grandparents.  Galway Dep. at 27:11-25; Plum Dep. at 51:8-12.  Of the purchases made using money from Ms. Galway, neither she nor her son knows which portion of the money she gave him was used to purchase keys, which portion was used to buy skins, and which portion was used to buy weapon cases.  Galway Dep. at 96:9-17 (she "could not differentiate" between those purchases); Plum Dep. at 18:4-7 (no records).

**B.      Plaintiff Brenda Shoss**

Plaintiff Brenda Shoss is the mother of Elijah Ballard, a 21-year-old who opened CS:GO cases until sometime in 2013 but has not opened one since at least 2017.  Deposition of Elijah Ballard ("E. Ballard Dep.") at 24:6-11, 96:22-97:2 (Skok Decl., Ex. E).  Like Ms. Galway, Ms. Shoss has never been to Steam or Valve's website, never played CS:GO, and never opened a weapon case or seen anyone open one.  Plaintiff Shoss's Responses to Valve's Requests for Admission ("Shoss RFA Resp.") Nos. 1-6, 21-22 (Skok Decl., Ex. G); Deposition of Brenda Shoss ("Shoss Dep.") at 15:17-23, 56:10-14 (Skok Decl., Ex. F).  Ms. Shoss has also never seen any public statements by Valve about keys for case opening, and is not aware what Valve has said or not said about it.  Shoss Dep. at 21:7-23.

When Mr. Ballard asked his parents for money, he would only tell them the money was for use in "a game," but provided no detail about what particular game he was talking about.  E.

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 3

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

Ballard Dep. at 46:13-23, 52:6-9.  He did not say how he planned to spend the money (*id.* at 52:6-12), and never asked his parents for money to buy keys or weapon cases, but instead "I would just buy – spend it, like, behind their back."  *Id.* at 53:6-10; *see also* Shoss Dep. at 37:24-38:15.  Mr. Ballard explained that it would not have mattered if he told Ms. Shoss he intended to buy a specific virtual item (*e.g.*, a knife) because his mother did not know or understand what that was.  E. Ballard Dep. at 52:6-53:1.  When his parents questioned him about charges on their credit cards, Mr. Ballard lied about what those charges were for.  *Id.* at 57:1-16.

Ms. Shoss did not give her son money intending that he would use it to buy "lootboxes" or keys for case opening, and she was not aware her son was using money received from her to purchase keys—all such purchases were made without her knowledge.  Shoss Dep. at 94:21-95:3; Shoss RFA Resp. Nos. 11, 14, 19.  Like Ms. Galway, Ms. Shoss said she "did not understand what Elijah was asking for money to do."  Shoss RFA Resp. No. 24.  As she testified, "I have no memory of handing over cash or a credit card to him willingly" for spending on video games.  Shoss Dep. at 40:16-20.  Mr. Ballard also made numerous purchases without his parents' permission.  *Id.* at 38:6-15; E. Ballard Dep. at 54:10-14.  In addition, Ms. Shoss testified that he "overdrew in the custodial bank account under my name."  Shoss Dep. at 41:6-19.

The money Mr. Ballard spent on Steam came from various sources, including savings from his bar mitzvah, pay from his work, money from his parents, and even gift cards he obtained using stolen coupons purchased online.  E. Ballard Dep. at 33:10-34:4, 50:1-51:10, 97:20-98:1.  Ms. Shoss does not know the total amount of money her son spent on purchasing keys for case opening, or whether he bought keys instead of other items with any money she provided.  Shoss RFA Resp. No. 8; Shoss Dep. at 77:16-22, 94:21-95:3.

## III.   ARGUMENT

Plaintiffs have not carried their burden of establishing that their proposed class satisfies Rule 23(a)'s requirements of numerosity, commonality, adequacy, and typicality.  Plaintiffs provide no evidence their proposed class is sufficiently numerous.  Their allegedly common

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 4

128705047.1

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

questions cannot be answered using common evidence. And unique aspects of Ms. Shoss's and Ms. Galway's claims render them atypical and inadequate class representatives.

Plaintiffs also cannot establish Rule 23(b)(3) certification is proper because numerous individualized questions predominate over a small number of common issues; a class action is not a superior method for resolving these claims. Nor is Rule 23(b)(2) certification proper because Plaintiffs' damages claims predominate and the proposed class will not benefit equally from the injunctive relief sought. Plaintiffs' attempt to avoid their failure to satisfy Rule 23(a) or (b) requirements through hybrid certification or issue certification under Rule 23(c)(4) also fails.

### A.      Legal Standard.

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). "The prerequisites of Rule 23 are not mere pleading standards, but rather are evidentiary thresholds …" *Smith v. First Am. Title Ins. Co.*, 2014 WL 2511621, at *2 (W.D. Wash. June 4, 2014) (citing *Comcast*, 569 U.S. at 33). Federal Rule of Civil Procedure 23 imposes a two-step certification test:

*First*, a party seeking certification must establish the four prerequisites of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. That party must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation …" *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S. at 350. "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 564 U.S. at 350–51 (citations omitted).

*Second*, the party seeking class certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S. at 33. Here, Plaintiffs seek

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 5

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

certification under Rule 23(b)(2), which requires Plaintiffs to prove that Valve "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Plaintiffs also seek certification under Rule 23(b)(3), which requires Plaintiffs to prove that common questions of law or fact predominate over individualized issues and that a class action is the superior method for "fairly and efficiently adjudicating the controversy."

"If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, it should deny certification." *Wetzel v. CertainTeed Corp.*, 2019 WL 3976204, at *10 (W.D. Wash. Mar. 25, 2019) (Robart, J.) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

## B.      Plaintiffs Do Not Establish Numerosity.

To establish numerosity, Plaintiffs must prove that "there are *in fact* sufficiently numerous" parents or guardians who provided funds to their minor children for the purchase of keys to open weapon cases in CS:GO, Dota 2, or Team Fortress 2 so "that joinder of all members is impracticable." *Wal-Mart*, 564 U.S. at 345, 350; *see also* Fed. R. Civ. P. 23(a)(1); Dkt. #94 ("Mot.") at 5:18-21 (class definition).  They offer no such evidence.

Instead, Plaintiffs assert that "members of the class are readily identifiable and number in the thousands" (Mot. at 13) but back it up only with Valve's estimates submitted with its Notice of Removal of how many CS:GO keys it sold to U.S. Steam subscribers (Dkt. #18, Miller Decl. ¶ 15), and how many U.S. Steam subscribers "traded at least one skin to a bot account Valve identified as being used by CS:GOLounge," a gambling site. *Id.* ¶ 11.  But those estimates went to the class defined in the original Complaint—"All persons … who (1) purchased Skins or (2) are parents/guardians of a minor child who purchased Skins."  Compl.  (Dkt. #1-3) ¶ 113.  They shed no light on whether the far narrower current proposed class (parents who gave their minor children funds to buy keys to open weapon cases) is sufficiently numerous.

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 6

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

Plaintiffs then resort to generalized surveys and reported percentages of teenage video gamers who say they paid to open lootboxes in a video game, and estimates of the percentage of UK youth ages 11-24 who purchased lootboxes or took part in skins gambling. Mot. at 14. But Plaintiffs still offer no proof on the relevant question of how many parents in the U.S. gave their minor children funds to buy keys to open weapon cases in CS:GO, Dota 2, or Team Fortress 2.

Plaintiffs' expert Anya Verkhovskaya was retained to "support numerosity," Mot. at 14, but provides no help. She does not estimate the number of class members but merely opines that a reliable method "can be used to identify Steam accounts where purchases of keys and/or skins were made by minors, and then those skins were traded or sold on third-party marketplaces hosted on Steam." Expert Report of Anya Verkhovskaya ("Verkhovskaya Rep.") ¶ 13 (Skok Decl., Ex. I). Her method has two fatal flaws. First, it cannot determine the number of proposed class members because, as she admitted, it does not identify or estimate the number of parents. Deposition of Anya Verkhovskaya ("Verkhovskaya Dep.") at 70:22-71:3 (her method does not include identifying parent-child relationships) (Skok Decl., Ex. H); *see also id.* at 73:21-74:8 (assuming a parent-child relationship if an adult and minor have the same address). Second, it cannot determine where the money that minors used to make purchases came from, because that is "outside of the scope of my expertise." *Id.* at 88:6-16.[1] Thus, her method cannot tell if a class member provided the funds for any transaction in Valve's records.

Plaintiffs' conclusion "that it is more likely than not that there are a sufficient number of minor children in the United States who have used their parents/guardians' money to purchase lootbox keys from Valve" is mere speculation since they offer no facts to support it. Mot. at 15; *see also Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 435–36 (W.D. Wash. 2000) ("[M]ere speculation

---

[1] Plaintiffs make an untimely request for reconsideration of the denial of their motion to compel discovery of Valve data (Dkt. #91) if the Court "believes Plaintiffs' evidence is insufficient." Mot. at 13 n.3. But Valve does not have data identifying minor Steam subscribers' ages, parents, or parent-child relationships (Dkt. #91 at 5), or who provided the money minors used to purchase keys. Plaintiffs offer no basis for reconsideration.

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 7

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1).") (quoting 7A Charles Alan Wright, et al., Federal Practice & Procedure § 1762 (2d ed. 1986)).  Tellingly, Plaintiffs do not identify a *single* class member other than themselves or propose a method that could do so, despite having more than five years since this lawsuit was filed.

**C.      Plaintiffs Do Not Establish Commonality.**

Rule 23(a)(2) requires a plaintiff seeking certification to prove the existence of a common question "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.  Plaintiffs do not satisfy this requirement merely by alleging the existence of a common question; instead, "they must pose a question that 'will produce a common answer …'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Wal-Mart*, 564 U.S. at 352).

Plaintiffs cannot establish commonality because class members did not suffer the same alleged injuries and proving their claims would require a massive account-by-account analysis.

*1.      Class Members Did Not Suffer the Same Injury.*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'  This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50 (internal citation omitted).  Here, proposed class members did not suffer the same injury for two reasons.

*First*, as established in Valve's summary judgment motion (Dkt. #103), insofar as a class member transferred ownership of money to their child, that class member suffered no CPA injury. This includes Plaintiffs Galway and Shoss.  *Id.*; *see also* Dkt. #65 at 21 (commenting in dismissing Plaintiffs' unjust enrichment claim: "Plaintiffs do not plausibly allege that *they* provided a benefit to Valve.  Rather, they allege that they provided funds to *their children*, who then spent those funds on Skins and Lootbox keys").  Class members who did not transfer ownership might have a CPA injury, but must arbitrate their claims as discussed below in Section

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

III(D)(4).  Accordingly, Plaintiffs can *ask* whether class members were injured but the *answer* is not uniform.  *Wal-Mart*, 564 U.S. at 350 ("What matters to class certification … is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (citation omitted).

*Second*, some class members suffered no injury at all.  For example, a class member whose child received a skin from case opening but chose to collect it or use it in-game has no injury.  Nor does a parent whose child traded a skin to another user for something the child wanted.  They share nothing in common with class members whose children allegedly suffered damage when they sold skins received from case opening on third-party websites (in violation of the Steam Subscriber Agreement ("SSA")) for less than the price of a key.  Of course, any class member whose child sold a skin received from case opening on a third-party website (again, contrary to the SSA) for *more* than the cost of the key has no injury.  *See* Dkt. #58 ("Am. Compl.") ¶ 18 (alleging the resale "value of the Skins inside [a weapon case] could be less or more" than price of a key).  And Plaintiffs offer no evidence that any alleged injury from Dota 2 or Team Fortress 2 is the same as an injury from CS:GO case opening.

      2.    *Plaintiffs' Claims Require a File-By-File Review, Defeating Commonality.*

The evidence necessary to generate an answer distinguishes common questions from individual ones.  As this Court explained, "[a] question is 'individual' if members of the proposed class will need to present varying evidence, whereas a question is 'common' if the same evidence can be used for each member to make a prima facie showing, or if the issue can be proved by generalized, class-wide proof."  *Wetzel*, 2019 WL 3976204, at *15 (citation omitted).

As detailed below in Section III.E, answering Plaintiffs' allegedly common questions requires an individualized file-by-file review of all Steam accounts and transactions to attempt to determine, *inter alia*, (i) which Steam accounts are owned by minors, (ii) who their parents are, (iii) whether those parents supplied funds used in case opening, (iv) who owned the funds when they were spent on case opening and whether a class member must arbitrate their claims because

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

of such ownership, (v) whether the children's or other third parties' acts are intervening causes of class members' alleged injuries, (vi) whether some class members' claims are time-barred due to Plaintiffs' recent change in claims and expansion of the class definition, and (vii) injury and damages, which depend on how skins were used.  That defeats commonality because "common" questions must be resolvable on a class-wide basis, not through a file-by-file review.  *See Smith*, 2014 WL 2511621, at *4 (commonality not established when file-by-file review was required to determine whether defendant properly charged document and reconveyance fees; "although plaintiff has pleaded a common question concerning whether FATIC properly charged document fees and reconveyance fees during the class period, plaintiff has failed to show how such question could possibly be answered on a class-wide basis") (internal footnote omitted).

### D.     Plaintiffs Do Not Establish Typicality or Adequacy.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims "are typical of the claims … of the class."  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The typicality requirement "tends to merge" with the adequacy requirement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).  Adequacy concerns whether a plaintiff will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To be adequate, a plaintiff "must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Amchem*, 521 U.S. at 625–26 (quoting *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

> 1.     *Plaintiffs Are Not Typical or Adequate Because They Are Not Members of the Class or Subclasses They Seek to Represent.*

"A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).  Plaintiffs are not typical or adequate class representatives because they are not members of their

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 10

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

proposed class or subclasses. *See, e.g.*, *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018), *cert dismissed*, 139 S. Ct. 1651 (2019).

Plaintiffs' class definition comprises persons "who *are* parents/guardians of a minor child who provided funds to their minor child(ren)." Mot. at 5 (emphasis added). Plaintiffs are not class members because they are no longer parents or guardians of minor children. Plaintiffs re-wrote their class definition in their September 2020 Amended Complaint but did not expand it to include persons who "were but are no longer" parents of minors, presumably recognizing that such parents lack standing to seek injunctive relief to stop minors from opening weapon cases.

Plaintiffs also have no connection to Dota 2 or Team Fortress 2 and therefore are not members of their proposed Dota 2 or Team Fortress 2 subclasses and cannot adequately represent class members whose claims relate to those games. *See* Plum Dep. at 32:16-33:3 (Plaintiff Galway's son never bought virtual items or opened cases in Dota 2 or Team Fortress 2); Shoss Dep. at 59:5-19 (she knows nothing about Dota 2 and cannot identify Team Fortress 2); E. Ballard Dep. at 93:7-11 (only alleged gambling was with CS:GO skins).

        2.     *Plaintiffs Are Not Typical or Adequate Because They Do Not Share Class Members' Interest in Injunctive Relief.*

Plaintiffs seek injunctive relief to stop minors from opening weapon cases (*see, e.g.*, Mot. at 22), but Plaintiffs have no standing to seek such injunctive relief and would not benefit from it if granted because their children are not minors and are no longer opening cases. *See Bayer v. Nieman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin.") (citation omitted).[2] However, proposed class members who still have minor children that continue to open cases could potentially benefit from injunctive relief. This divergence of benefits and interests renders Plaintiffs atypical and inadequate. *See, e.g.*, *Ellis*, 657 F.3d at 985 (two former employees had no

---

[2] Plaintiff Shoss testified that she is not pursuing any damages for her claim. Shoss Dep. at 74:25-75:5. Ms. Shoss's waiver of damages and lack of benefit from any injunctive relief leaves her a plaintiff in search of a remedy, different from all other class members who seek damages.

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 11

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

standing to seek injunctive relief changing promotion practices and therefore did not sufficiently share interests with current-employee class members); *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 613 (8th Cir. 2017 ("The linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.") (citation omitted), *amended*, 855 F.3d 913 (8th Cir. 2017).

> 3.      *Plaintiffs and Class Members Suffered Different Alleged Injuries.*

"In determining typicality, courts consider 'whether other members have the same or similar injury …'" *Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*, 325 F.R.D. 671, 696 (W.D. Wash. 2016) (Robart, J.) (quoting *Hanon*, 976 F.2d at 508)*; see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) ("[T]he typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class" and requires "that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct") (citation omitted), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005).

Plaintiffs and class members have widely disparate injuries—or none at all—depending on who owned the funds, how skins were used (collected, used in-game, traded, etc.), and what their children received from any skin sale.  Plaintiffs have not shown they are typical of class members in each scenario or could adequately represent all of them.  Indeed, neither Plaintiff even knows what their children did with the money Plaintiffs gave them.  Shoss Dep. at 94:21-95:3; Galway Dep. at 73:21-24; *see also* Galway RFA Resp. No. 8 (admitting Plaintiff did not know how much money her son spent purchasing keys); Shoss RFA Resp. No. 8 (same).

> 4.      *Class Members With Standing Are Subject to an Arbitration Defense That Plaintiffs Are Not, Rendering Plaintiffs Atypical and Inadequate.*

Plaintiffs and other parents who transferred ownership of funds to their children have no CPA injury and therefore no standing, as discussed above.  Parents who retained ownership are subject to an arbitration defense insofar as their children acted as the parents' agents in making purchases on Steam using the parents' money, as Judge Coughenour recently held under similar

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

circumstances.  In *Wolfire v. Valve*, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021), several video game purchasers brought Sherman Act and CPA claims against Valve, seeking to represent a class bringing the same claims.  Valve moved to compel arbitration under the arbitration agreement in Valve's SSA.  Two of the plaintiffs were parents of minor Steam users and argued they were not bound by the SSA because they did not have Steam accounts and "did not purchase games directly through the Steam Store" but, instead, their "children purchased the games using their parents' credit card information." *Id.* at *2.  Judge Coughenour held that these parents were nonetheless bound by the SSA's arbitration provision because they "effectively appointed their children as their agents when they purchased games on their parents' behalf using the parents' credit card information and their own Steam accounts." *Id.* at *2–3 (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)).

So too here.  Under *Wolfire*, parent class members who retained ownership of the funds used for purchases in their children's Steam accounts are bound to the SSA's arbitration agreement (under which they agreed to individually arbitrate their claims and "not bring or participate in a class or representative action," SSA § 11 (Dkt. #11–7 at 11–12)), insofar as their children acted as the parents' agents in making purchases using their parents' money.  In *Wetzel*, plaintiffs who had not signed a release to receive warranty service on defective shingles were inadequate representatives of a class that included members who had signed a release and would need to challenge it, particularly when the class representatives lacked standing to make such a challenge.  2019 WL 3976204, at *13–14.  Here, class members with standing are subject to an arbitration defense and, as in *Wetzel*, Plaintiffs lack standing to oppose that defense.

            5.     *Plaintiffs Cannot Adequately Represent Class Members Who Are Subject to a Statute of Limitations Defense.*

As discussed below in Section III.E(3), two groups of potential class members were added to the case in the September 2020 Amended Complaint: (i) parents who provided money for purchases related to Dota 2 and Team Fortress 2 (because the original class related only to CS:GO), and (ii) parents whose children purchased keys but did not also purchase skins (because

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 13

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

the original class definition required skin purchases, consistent with Plaintiffs' focus at the time on alleged skins gambling on third-party websites). These newly added class members are subject to a statute of limitations defense for claims accruing before September 2016. Plaintiffs are not adequate to represent class members subject to that defense because that defense is inapplicable to Plaintiffs. *See Daly v. Harris*, 209 F.R.D. 180, 190 (D. Haw. 2002).

**E.      Certification Under Rule 23(b)(3) Is Improper Because Individual Issues Predominate Over Common Issues.**

"To assess Rule 23(b)(3) predominance, we ask 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011), *abrogated on other grounds by Comcast*, 569 U.S. at 34). A predominant common question "is one where 'the *same evidence* will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted) (emphasis added).

Nearly every stage of Plaintiffs' case requires extensive individualized inquiry, including (i) determining class membership, (ii) ascertaining who owned the funds used in case opening, (iii) deciding whether class members' claims are time-barred, (iv) resolving numerous factual issues regarding causation, and (v) determining damages. Plaintiffs do not show how these critical individual questions can be answered with the same evidence or class-wide proof.

*1.      Determining Class Membership Requires Extensive Individual Inquiry.*

Class membership depends on multiple factors that cannot be determined with common evidence, including: (i) identifying a Steam account owned by a minor, (ii) establishing a parent-child relationship between the minor accountholder and a potential class member, and (iii) proving that the parent (if identified) provided the money the minor used in case opening.

At best, Ms. Verkhovskaya's method for identifying class members could answer the first question, whether a minor owns the account, but not with class-wide proof. Her proposed method requires extensive file-by-file analysis and appending third-party data, including: (1) review each

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 14

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

of the tens of millions of U.S. Steam accounts to identify those with a name and address of a credit card holder (Verkhovskaya Rep. ¶ 44); then (2) use a third-party service to find and "append additional data points" (primarily street addresses) to *each* such account (*id.* ¶¶ 51, 57); then (3) "connect the credit card holders' household information to the Steam accounts" to "identify, via data processors, other persons who lived at the same address during the relevant time period" (*id.* ¶ 58); then (4) "use data append procedures to identify a date of birth for each member of the household" to discover households with at least one minor (*id.* ¶¶ 59–60); then (5) append to all such accounts any email addresses associated with adults at that same street address (*id.* ¶ 62); then (6) review each Steam account to exclude those where (a) the name on a credit card used for purchases matches the name given to Valve when the account was opened, or (b) where third-party data indicates the email address associated with the Steam account is associated with an adult, in order to create an "Account List" of Steam accounts potentially belonging to minors where a key was purchased. *Id.* ¶¶ 69–71; *see also* Verkhovskaya Dep. at 99:24-101:5 (describing process). Several courts have criticized similar data append processes she proposed as unreliable or ineffective. *E.g., Carroll v. SGS Auto. Servs., Inc.*, 2020 WL 7024477, at \*5-7 (M.D. La. Nov. 30, 2020) (excluding Ms. Verkhovskaya's opinions about identifying class members using similar procedures under FRE 702 because she did not establish identifications were "made in a scientific and verifiable manner" and they were "of questionable value to the trier of fact"); *Sandoe v. Boston Sci. Corp.*, 333 F.R.D. 4, 8 (D. Mass. 2019) ("Notably, this is not the first time plaintiff's expert, Ms. Verkhovskaya, has faced criticism that her reverse-append process failed to identify the named plaintiff in a putative class action …"); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 457 (M.D. Fla. 2018) (criticizing "mechanical shortcomings" in Ms. Verkhovskaya's proposed data append process for identifying class members, which "would not even have discovered Plaintiff as a class member").

But even if it worked, Ms. Verkhovskaya's process would only identify Steam accounts that might belong to minors. It could not answer the primary questions of (a) who is that minor's

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 15

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

parent, and (b) did that parent supply the funds used in case opening. Ms. Verkhovskaya admitted as much. Verkhovskaya Dep. at 70:22-71:16, 73:21-74:8 (her method does not identify parent-child relationships but assumes a minor and adult at the same address are parent and child); *id.* at 88:6-16 (not offering opinions about how to determine whether money came from parents because it is "outside the scope of my expertise"). Those questions cannot be answered using common evidence because no such evidence exists. Valve does not have such data. Dkt. #88 at 7; Dkt. #90 at ¶ 4; Dkt. #91 at 5. Plaintiffs do not show a feasible class-wide way to establish parent-child relationships or the source of funds, using common evidence.

Instead, Plaintiffs weakly propose to rely on class members to *self-identify* in response to notices sent to every household in the country that includes an adult and a minor with a Steam account where a key purchase was made sometime during the nine-plus-year class period. Verkhovskaya Dep. at 71:24-72:5, 101:1-5. This is more egregious than the proposed class identification scheme rejected in *Wetzel*, where the plaintiffs proposed to identify part of the class through notices or publication, which this Court said "raise[d] serious concerns about administrative feasibility." 2019 WL 3976204, at *19. Those concerns are multiplied here. First, Plaintiffs' proposed self-identification program rests on the assumption the responding adults know what their children did with money the adults gave them. Plaintiffs' children used money from various sources for case opening and Plaintiffs themselves do not know either (a) the total amount their children spent on case opening, or (b) what portion, if any, of that amount was money Plaintiffs gave them. Many (if not all) class member parents would similarly be unable to respond. Second, Valve is entitled to test the validity of self-identifications, and any defendant would cross-examine parents and children on these questions, inevitably leading to a series of mini-trials. *See, e.g., Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948–49 (11th Cir. June 9, 2015) ("On the one hand, allowing class members to self-identify without affording defendants the opportunity to challenge class membership 'provide[s] inadequate procedural protection to … [d]efendant[s]' and 'implicate[s their] due process rights.' On the other hand, protecting

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 16

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

defendants' due-process rights by allowing them to challenge each claimant's class membership is administratively infeasible, because it requires a 'series of mini-trials just to evaluate the threshold issue of which [persons] are class members.'") (alterations in original) (citations omitted); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.").

Not surprisingly, other courts have refused to embrace Ms. Verkhovskaya's reliance on class members to self-identify. *See Sandoe*, 333 F.R.D. at 9 (rejecting her proposed use of a "self-attestation process" to identify class members because "Defendant has a right to challenge, and has expressly stated its intention to do so, any submitted affidavits purporting to self-identify as class members on the ground of consent.... [a]s a result, the challenged affidavits would be inadmissible and each of the thousands of putative class members would be subject to cross-examination at trial."); *Wilson*, 329 F.R.D. at 457–58 (criticizing her method for identifying class members, and identifying as a "weakness" its reliance on class members self-identifying in response to mailed notices, noting that "such a step ignores the very purpose of ascertainment and will, in any event, require an individualized inquiry").

### 2. Funds Ownership Determinations Are Highly Individualized.

As discussed above, whether class members have standing to bring a CPA claim, and whether they can bring their claims in this Court instead of arbitration, depends on who owned the funds used for case opening. Plaintiffs show no method for reliably determining ownership on a class-wide basis using common evidence. Instead, individualized inquiries would be required of every class member to establish ownership.

### 3. Plaintiffs' Changed Class Definition Requires Individualized Determinations of Whether Class Members' Claims Are Time-Barred.

When Plaintiffs changed the class definition in their Amended Complaint to assert new "lootbox" and Dota 2 and Team Fortress 2 claims on behalf of a new class, they exposed the new proposed class members to a statute of limitations defense that only individualized inquiry can

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 17

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

resolve.  Plaintiffs' original Complaint focused on the use of skins to allegedly gamble on third-party websites, and defined the proposed class as "parents/guardians of a minor child who purchased Skins."  Compl. ¶ 113.  That definition did not include (i) parents who provided money their children used to purchase a key instead of a skin, or (ii) parents who provided money for purchases in Dota 2 or Team Fortress 2.  *Id.* ¶¶ 4–5 (defining "Skins" as items for CS:GO).

After unsuccessfully arbitrating their third-party website claims, Plaintiffs in September 2020 re-directed their case toward case opening, focused on parent claims, and added claims about Dota 2 and Team Fortress 2.  Plaintiffs made corresponding changes to their proposed class definition, which now comprises "parents/guardians of a minor child who *provided funds* to their minor child(ren) for the purchase of Skins and/or *Keys* for the games CounterStrike: Global Offensive, *Dota 2 and Team Fortress 2*."  Am. Compl. ¶ 94 (additions italicized).  This new class definition swept in as new class members any parents who (i) provided money to purchase keys for case opening but not for skins, or (ii) provided money related to Dota 2 or Team Fortress 2 (collectively, the "New Class Members").  The CPA's four-year statute of limitations (RCW 19.86.120) bars any New Class Members' claims arising before September 2016.

Plaintiffs' September 2020 amendment does not relate back to the original Complaint under Rule 15(c) because it added entirely new claims arising out of different conduct and re-wrote the class definition to add new class members.  *See Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (Rule 15(c) allows relation back only when new allegations "arose out of the conduct, transaction, or occurrence" pled in the original complaint, requiring the two sets of allegations to "'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim") (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325–26 (9th Cir. 1989)).  The Court already recognized Plaintiffs' new case opening allegations are distinct from those in the original Complaint.  *See* Dkt. #65 at 14 (holding that "the law of the case does not bar [Plaintiffs'] claims based on their 'Lootbox gambling' theory because that theory was not litigated in the arbitrations").  Courts have repeatedly held that amendments like those here that

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 18

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

add new class members or new allegations do not relate back under Rule 15(c) to avoid the statute of limitations. *See Williams*, 517 F.3d at 1133 (amended class action complaint did not relate back to prior complaint when it "had to include additional facts to support the [new] compensation discrimination claim," would require "different statistical evidence and witnesses," and "is a new legal theory depending on different facts, not a new legal theory depending on the same facts"); *see also Cleary v. Phillip Morris Inc*., 656 F.3d 511, 515–16 (7th Cir. 2011) (amended class action complaint did not relate back to prior complaint, where prior complaint "only made allegations regarding Marlboro Lights" and "[e]xpanding the class to include other 'light' and 'low tar' products would extend the potential liability to new class members … and it would involve new conduct and transactions"); *Onyx Props. LLC v. Bd. of Cty. Commr's of Elbert Cty.*, 916 F. Supp. 2d 1191, 1198 (D. Colo. 2012) (amended complaint that expanded class definition to include all persons subject to enforcement of any zoning regulation did not relate back to complaint defining class to include only persons subject to A-1 zoning).

Nor does *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), toll the statute. *American Pipe* tolling does not apply when the newly added plaintiff (or class member) was not a member of the originally proposed class. *See Onyx Props.*, 916 F. Supp. 2d at 1197 ("The suspension of the running of a statute of limitations, as provided for in *American Pipe v. Utah*, is not applicable when the plaintiff was not a putative member of the class action.").

Accordingly, the statute of limitations on the New Class Members' claims continued to run until the Amended Complaint was filed on September 22, 2020, barring any claims or portions of claims arising before September 22, 2016. Only New Class Members will be subject to this defense, requiring individualized inquiries to determine whether current class members would also have been class members under the original Complaint and, if not, when any money was provided, purchases made, and cases opened.

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 19

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

####    4.    *Causation Must Be Determined Individually.*

Plaintiffs' claims are no more provable on a class-wide level once the factfinder reaches the merits.  Rather, as in *Wetzel*, variations in class members' experiences and knowledge will result in an unmanageable number of mini-trials on causation.  2019 WL 3976204, at *16.

a.    <u>Individualized determinations must be made on whether class members' children's or third parties' actions broke the causal chain.</u>

Plaintiffs' CPA claim requires proof that Valve's allegedly unfair or deceptive act or practice proximately caused injury to Plaintiffs' business or property.  *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wash. 2d 260, 277–78, 259 P.3d 129 (2011).  A defendant's act proximately causes a plaintiff's injury only if the act, "in a direct sequence unbroken by any new independent cause, produces the injury …"  *Fisher v. Parkview Props., Inc.*, 71 Wash. App. 468, 476, 859 P.2d 77 (1993).  "[I]f a new, independent intervening act breaks the chain of causation, it supersedes the defendant's original act and is no longer the proximate cause of the injury."  *Albertson v. State*, 191 Wash. App. 284, 297, 361 P.3d 808 (2015).

Under Plaintiffs' class definition, minor children *always* stand between class members and Valve.  As a result, every transaction must be reviewed to determine if those children's actions are intervening causes that break the causal chain.  Plaintiffs Galway and Shoss admit that their children (a) asked them for money without telling them the truth about what it was for, (b) made *every key purchase* without Plaintiffs' knowledge of what they were buying, and (c) at times took money from their parents without permission to make purchases.  *Supra*, Sections II.A & II.B.  Those intervening actions break any causal chain between Plaintiffs' alleged injury and Valve.  *See, e.g.*, *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wash. 2d 190, 204–06, 15 P.3d 1283 (2001) (when third party stole van from Budget and crashed it into plaintiff's car, plaintiff's injury was too remote from Budget's alleged negligence).  Whether other children who stand between Valve and parent class members were also intervening causes cannot be determined without individual inquiry (*e.g.*, whether the child had permission to make purchases, what the child told the parent, etc.), further fracturing the class.  *See, e.g., Boucher v. First Am. Title Ins. Co.*, 2012 WL

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 20

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

3023316, at *8 (W.D. Wash. July 24, 2012) (denying certification of fee overcharge claims because "proving or disproving each class member's claim depends on a file-by-file review").

Other third parties' actions may also be intervening causes. Plaintiffs claim Valve should have disclosed more information about keys and case opening (*e.g.*, Am. Compl. ¶¶ 110–111) and taken other steps to limit key sales by third parties (*e.g.*, *id.* ¶¶ 154, 157). Plaintiffs' children bought keys not only from Valve but also from other Steam users on the Steam Community Market and, in violation of SSA §§ 1.C and 3.D (Dkt. #11–7 at 1–2, 5–6), from third-party websites. Mot. at 10, 11; *see also* Plum Dep. at 37:23-25; E. Ballard Dep. at 22:22-25. Determining where keys were purchased and whether representations or actions by third-party key sellers in violation of the SSA were intervening causes requires a transaction-by-transaction review, as does determining whether children's representations to their parents or taking money without permission were intervening causes.

        b.    <u>Causation varies widely depending on whether class members are pursuing a misrepresentation or omission theory.</u>

The class is split between (1) class members who, like Plaintiffs, are pursuing an omissions-based claim because they knew nothing about Valve or case opening and gave money to their children without knowing the children would spend it on case opening, and (2) class members who are pursuing claims based on Valve's alleged misrepresentations. Mot. at 6.

Plaintiffs' omissions-based claims rest on a presumption of reliance (*id.* at 8), but individualized issues abound regarding whether that presumption applies or is rebutted. "The defendant may rebut the presumption by proving that the plaintiff's decision would have been unaffected even if the omitted fact had been disclosed." *Morris v. Int'l Yogurt Co.*, 107 Wash. 2d 314, 329, 729 P.2d 33 (1986). Plaintiffs Shoss and Galway both admitted that they knew nothing of Valve, had never visited Valve's website or used Steam, and had no idea their children were spending money on case opening. Moreover, anyone—Plaintiffs and class members included— can create a Steam account for free and open a CS:GO weapon case to see it for themselves, yet that ready access to information did not change Plaintiffs' actions. And Ms. Galway testified that

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 21

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

even if Valve had provided more information, she would not have thought to review it. Galway Dep. at 77:8-79:2; *see also id.* at 75:4-9 (Valve had no way to reach Ms. Galway). Accordingly, no additional disclosures on Steam or Valve's website would have affected Plaintiffs' decisions to give money to their children, rebutting any presumption of reliance. *See Weidenhamer v. Expedia, Inc.*, 2015 WL 7157282, at *12 (W.D. Wash. Nov. 13, 2015) ("Customers who never saw the advertisements could not have relied upon any alleged misrepresentations contained therein, which would defeat any presumption of reliance …").

Some class members will have the same complete lack of knowledge and contact as Plaintiffs, others will have imperfect knowledge (*e.g.*, be familiar with Steam but not know how their children were spending money), and still others will have been fully aware of what their children were doing and supported it. All of these variations must be determined individually. This Court held in *Wetzel*, 2019 WL 3976204, that a presumption of reliance could not establish causation on a class-wide basis for a CPA omissions claim when class members' circumstances varied meaningfully, including different levels of knowledge and actions by third parties. Instead, the "variations among class members implicate both the class members' reliance on CertainTeed's alleged omission concerning Landmark 30 shingles and the omission's materiality to the varying types of class members," which "would result in 'an unmanageable number of mini-trials' even under an omissions-based theory of causation." *Id.* at *16 (citing *Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at *14 (W.D. Wash. July 23, 2014)). So too here.

For class members pursuing a misrepresentation theory, their knowledge of, and reliance on, the alleged misrepresentations is also an individualized issue. *See, e.g.*, Mot. at 6 ("Valve's disclosure and warnings on websites about its games omit and misrepresent any and all information about loot box opening, including any information about the harms and risks … Valve represents that its platform is appropriate for minor children aged 13 and older, despite laws that online gambling is not allowed for those under 18."). Plaintiffs pled reliance as their CPA causation theory. *See* Am. Compl. ¶ 111 ("Valve's acts, omissions, and practices . . .

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 22

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

created a false impression of fair play, legality, and safety, which *induced* Plaintiffs to unwittingly provide their minor children with monies …") (emphasis added); *see also* Dkt. #65 at 18 (observing that Plaintiffs allege "Valve's acts … *induced* Plaintiffs to unwittingly provide money to their children to purchase Skins and Lootbox keys") (emphasis added).  Reliance is not a separate element of a CPA claim, but plaintiffs who plead reliance as their causation theory must prove it.  *Young v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 322, 472 P.3d 990 (2020).

Accordingly, the Court must determine what knowledge each class member had of Valve's representations, any reliance thereon, and how (if at all) Valve's actions induced the class member to act—all highly individualized issues.  *See, e.g.*, *Contos v. Wells Fargo Escrow Co., LLC*, 2010 WL 2679886, at *8 (W.D. Wash. July 1, 2010) (predominance not established for CPA claim based on misrepresentations because "individual questions about each plaintiff's reliance would predominate"); *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 557, 558 (W.D. Wash. 2008) (noting that "[m]any courts have denied class certification where plaintiffs alleged a deception-based theory of consumer fraud" and holding that "[b]ecause an individualized analysis is necessary to determine what role Microsoft's 'Windows Vista Capable' marketing program played in each class member's purchasing decision, individualized issues predominate and class treatment is inappropriate for a CPA claim utilizing a deception-based theory of causation."), *certification withdrawn*, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009).

> 5.    *There Is a Fatal Disconnect Between Plaintiffs' Liability Theory and Their Proposed Method of Calculating Class-Wide Damages.*

The Supreme Court held in *Comcast*, 569 U.S. at 37–38, that the plaintiffs in an antitrust class action could not satisfy Rule 23(b)(3)'s predominance requirement when their damages model failed to measure only those damages attributable to their sole theory of class-wide antitrust liability.  As the Supreme Court explained, "[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*."  *Id.* at 38 (citation omitted).  Plaintiffs' legal theory is that Valve violated the CPA because weapon case opening "replicate[s] the look, feel and sound of a slot machine" but Valve

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 23

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

has no gaming license, and because Valve allegedly failed to disclose odds or that the sale price for virtual items inside might change. Dkt. #65 at 18; Mot. at 1-2, 6. Accordingly, to satisfy *Comcast*, Plaintiffs must establish a class-wide method of determining damages that flow from "that event," *i.e.*, from weapon case opening.

Plaintiffs don't do that. Ms. Verkhovskaya, their damages expert, is not opining that there is a reliable method for calculating damages caused by weapon case opening. Verkhovskaya Dep. at 78:22-79:12 ("Q.  Is it correct you are not offering the opinion that there is a reliable method for calculating damages caused by the opening of crates by minors?  A.  That is correct."). Instead, Plaintiffs offer only a model based on the amount spent to purchase keys—a refund. *Id*. at 80:21-81:17.

Plaintiffs' proposed "key price refund" model does not take into account the use or exchange received from the skin. *Id*. at 43:7-14, 87:17-24. For example, users who wanted skins to collect or use in-game and obtained them by purchasing a key for $2.50 and opening a case would, under Plaintiffs' model, end up not only with what they wanted (an indefinitely reusable skin) but also a windfall $2.50 refund. Similarly, users who traded skins with other users received what they wanted from the skin they traded, but they too would get the same windfall $2.50 refund. Plaintiffs allege that skins can also be sold "for cash on … third-party marketplace sites" (Am. Compl. ¶ 14), and Ms. Verkhovskaya describes her damages model as a "method for calculating damages caused by the purchase of keys by minors when the skins were subsequently traded or sold on third-party marketplaces." Verkhovskaya Dep. at 83:3-9. In that scenario, if a skin received from a case that was opened with a key purchased for $2.50 was sold for $5 cash on a "third-party marketplace," there is no actual damage to "business or property" from that case opening, yet Plaintiffs' damages model would *still* award that class member $2.50, another windfall. *See* Am. Compl. ¶ 109 (skins "could have lesser or greater value than the amount of money paid" to buy the key to open the case); *id.* ¶ 13 (alleging average price of $9.75 for skins

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 24

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

traded at a particular time).  The amount spent to purchase keys is not proof of actual damages sustained under Plaintiffs' theory of liability and therefore does not satisfy *Comcast*.

6.    *Plaintiffs' Damages Theory Requires a Series of Mini-Trials to Determine the Existence and Amount of Damages.*

Even if Plaintiffs' damages case satisfied *Comcast* (which it does not), it would still be hopelessly weighed down by individual issues.  "A Rule 23(b)(3) plaintiff must show a class wide method for damages calculations as a part of the assessment of whether common questions predominate over individual questions."  *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) (citation omitted), *rev'd on other grounds*, 139 S. Ct. 710 (2019).  A methodology for calculating damages that cannot produce a class-wide result is insufficient to support certification.  *Comcast*, 569 U.S. at 35; *see also Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*, 2013 WL 1661483, at *7 (W.D. Wash. Apr. 17, 2013) (predominance not satisfied in part because "Plaintiffs propose no manageable way to calculate damages").

The wide variety of outcomes from case opening creates a maze of individualized injury and damages issues.  Class members' children received a skin every time they opened a weapon case, but those skins could be used in a variety of different ways: (i) in-game indefinitely, (ii) collected in a player's digital inventory, (iii) traded with friends, (iv) exchanged with other users for Steam Wallet funds then used to acquire something on Steam the children wanted, or (v) allegedly sold "for cash on OPSkins and similar third-party marketplace sites" in violation of Steam's terms of use (Am. Compl. ¶ 14).  *See, e.g.*, Plum Dep. at 34:10-12 (Ms. Galway's son traded skins with friends); B.S. v. Valve Arbitration Hearing Transcript at 297:10-16 (Ms. Shoss's son used skins in-game) (Skok Decl., Ex. J).  Every skin, and each use of that skin, has a different worth to the class members' children—yet Plaintiffs propose no way to measure that worth with class-wide evidence.  Insofar as Plaintiffs premise their damages model on skins being sold (improperly) on "third-party marketplaces," as Ms. Verkhovskaya does, Valve has no records of transactions on third-party websites and Plaintiffs offer no explanation of how prices of third-party site transactions, which could yield more or less than $2.50, could be established with class-

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 25

128705047.1

wide proof. In addition, some class members would have mitigated their alleged damages by having charges for key purchases cancelled or reversed, as Plaintiff Shoss's husband (Graydon Ballard) did. Deposition of Graydon Ballard at 36:14-25, 37:7-38:7 (Skok Decl., Ex. K).

These numerous distinctions between class members' claimed injuries and damages require individual substantive decisions by a factfinder, not merely administrative calculation, defeating predominance. *See, e.g.*, *Britton v. Servicelink Field Servs., LLC*, 2019 WL 3400683, at *6–7 (E.D. Wash. July 26, 2019) (predominance not established; "where the issue of damages and impact does not lend itself to such a mechanical calculation, but requires 'separate 'mini-trial(s)' of an overwhelming large number of individual claims, courts have found that the 'staggering problems of logistics' thus created 'make the damage aspect of (the) case predominate,' and render the case unmanageable as a class action") (citation omitted); *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 131 (N.D. Cal. 2014) (refusing to certify class where "the process would be far from mechanical, as calculating damages would require manual review of each claimant's records, as well as discovery on what each claimant actually paid, what he/she still owes, the nature of the services provided, and the amounts attributable to services covered under the Parity Act—thus necessitating mini-trials on individualized issues"). Contrary to Plaintiffs' assertions (Mot. at 28), *Yokoyama v. Midland National Life Insurance Co.*, 594 F. 3d 1087 (9th Cir. 2010), held only that "damage *calculations* alone cannot defeat certification," *id.* at 1094 (emphasis added), not that individualized issues regarding injury or damages can never prevent certification.

**F.     A Class Action Is Not a Superior Method for Fairly and Efficiently Adjudicating This Controversy.**

In determining whether a plaintiff has satisfied Rule 23(b)(3)'s superiority requirement, courts consider: (1) the interest of each class member in "individually controlling the prosecution … of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 26

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

The first factor weighs against superiority because, as discussed above, class members with standing must arbitrate their claims under *Wolfire* insofar as their children acted as their agents in making purchases. The SSA § 11 provides that Valve will reimburse the arbitration filing fee and pay arbitration costs for claims up to $10,000, unless the arbitrator determines they were frivolous or filed for harassment. Dkt. #11–7 at 11–12. Individual arbitrations are not cost prohibitive, particularly because the arbitrator can award up to treble damages and attorney fees under the CPA. *See Contos*, 2010 WL 2679886, at *7 n.11 (class action was not superior; courts reject arguments concerning the small size of individual claims where statutory attorney's fees are available, including under the CPA).

Valve is not aware of other litigation begun by class members related to these issues, so the second factor weighs in favor of proceeding as a class action.

The third factor weighs against superiority because concentration of all claims in this forum is impossible due to the facts that (a) all class members' children are bound by the SSA's arbitration agreement, and (b) class members who have standing must also arbitrate their claims insofar as their children acted as agents in buying keys and opening cases.

The fourth factor (manageability) weighs heavily against superiority because numerous individual issues must be resolved to determine class membership and an individual's right to recover before the Court can consider the merits of the class's claims, as shown above. In evaluating the fourth superiority factor in *Wetzel*, where the defendant had no records to identify class members who bought the allegedly defective shingles from contractors or resellers, this Court said that the significant work it would take to identify class members because of "individualized questions" raised "serious concerns about administrative feasibility." 2019 WL 3976204, at *19. This Court rejected the plaintiffs' argument that "locating absent class members is only a minor concern … which does not preclude class certification," observing that "it is not clear how this case could effectively proceed without a reliable method of notifying the class or determining the approximate number of class members. These practical issues of manageability

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 27

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

weigh heavily against a finding of superiority." *Id*. at *20.  Here, as in *Wetzel*, class members cannot be identified from Valve's records and Plaintiffs have demonstrated no reliable method for identifying them.  *See Morrison v. Esurance Ins. Co.*, 2020 WL 583824, at *6–7 & n.8 (W.D. Wash. Feb. 6, 2020) (class action was not superior when "it is unclear, based on Plaintiffs' own class definition, which insureds would be part of any proposed class" and identifying class members would require further discovery and "likely require miniature trials").

Plaintiffs' failure to demonstrate an administratively feasible way to resolve the numerous individual factual and evidentiary issues discussed above further weighs against superiority because "adjudication on a class basis would 'devolve into [a] … thicket of individualized claims,' defying the policy of judicial economy underlying Rule 23." *LaCasse v. Wash. Mut. Inc.*, 198 F. Supp. 2d 1255, 1264 (W.D. Wash. 2002) (citation omitted) (superiority not established when "Court would have to analyze each individual yield spread premium transaction" to determine liability); *see also Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (superiority not established when evidence of causation would vary among class members).

Plaintiffs have not carried their burden of establishing that a class action is a superior method for fairly and efficiently resolving this controversy.

### G.    Certification Under Rule 23(b)(2) Is Improper.

Plaintiffs' request for Rule 23(b)(2) certification should also be denied.  To establish a basis for such certification, Plaintiffs must prove "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 28

128705047.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360–61 (internal citation omitted).

No class can be certified under Rule 23(b)(2) because Plaintiffs' requested injunctive relief—preventing minors from opening weapon cases—does not apply equally to all class members and offers no benefit to many. Plaintiffs Shoss and Galway would not personally benefit from such injunctive relief because they no longer have minor children who are opening weapon cases. Plaintiffs do not even have standing to seek such an injunction. *See Wetzel*, 2019 WL 3976204, at *6. Proposed class members who are no longer giving their children money or whose children are no longer opening cases would similarly not benefit. This renders Rule 23(b)(2) certification improper because the injunctive relief sought would not "provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360–61; *see also Rodriguez v. Experian Info. Sol., Inc.*, 2018 WL 1014606, at *4 (W.D. Wash. Feb. 22, 2018) (denying 23(b)(2) certification because requested injunction or declaratory judgment would not provide relief to each class member); *Drimmer v. WD-40 Co.*, 2007 WL 2456003, at *5 (S.D. Cal. Aug. 24, 2007) (same).

Certification is also improper under Rule 23(b)(2) where a plaintiff seeks both injunctive relief and money damages (as here), unless injunctive relief predominates and the request for money damages is only incidental (unlike here). *Zinser*, 253 F.3d at 1195; *see also Ellis*, 657 F.3d at 986; *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 729 (9th Cir. 2007). Plaintiffs' sole remaining CPA cause of action focuses on monetary damages. *See generally* Am. Compl. ¶¶ 99-118. In *Fosmire v. Progressive Max Insurance Co.*, 277 F.R.D. 625, 636 (W.D. Wash. 2011), this Court recognized that Rule 23(b)(2) certification was "not appropriate with respect to claims for monetary relief" that are "not incidental to the injunctive or declaratory relief," explaining that "incidental damages 'should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 29

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

member's circumstances' and should not 'entail complex individualized determinations,' rather such damages should 'be more of a nature of a group remedy.'" *Id*. (citation omitted).  Here, the nature and amount of damages is highly individualized and, as described above, varies widely by class member.  Rule 23(b)(2) classes are not appropriate to address such individualized monetary claims. *See Wal-Mart*, 564 U.S. at 362; *Centeno v. Inslee*, 310 F.R.D. 483, 490 (W.D. Wash. 2015).

**H.     Neither "Hybrid" Certification nor Issue Certification Is Appropriate.**

Plaintiffs argue that the Court should either (i) certify separate Rule 23(b)(2) and (b)(3) classes, which Plaintiffs refer to as "hybrid" certification (Mot. at 20), or (ii) certify specific issues under Rule 23(c)(4) with "[a]ny individual issues regarding determination of damages … deferred until after liability is determined."  Mot. at 29.  Certification under either of those theories requires Plaintiffs to satisfy the requirements of both Rules 23(a) and (b), which Plaintiffs cannot do. *See Amador v. Baca*, 2016 WL 6804910, at *3 (C.D. Cal. July 27, 2016); *Darrington v. Assessment Recovery of Wash., LLC*, 2013 WL 12107633, at *9 (W.D. Wash. Nov. 13, 2013).

Moreover, given the variations that necessarily arise in deciding the liability issues Plaintiffs propose to certify under Rule 23(c)(4), such certification would not advance case resolution or achieve judicial economy and efficiency. *See Doe v. BHC Fairfax Hosp., Inc.*, 2020 WL 4584228, at *7 (W.D. Wash. Aug. 10, 2020) (rejecting certification of limited issues under Rule 23(c)(4) when "particularized grounds … might absolve Fairfax of liability to specific individuals" and "the existence, nature, and extent of any damages would still need to be performed on an individualized basis").

**IV.    CONCLUSION**

This is not a close case.  Plaintiffs cannot establish *any* of the Rule 23(a) elements (much less all of them), nor can they meet the requirements to certify a class under Rule 23(b)(2) or (3). Plaintiffs' Motion for Class Certification should be denied.

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 30

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

DATED this 10th day of December, 2021.

FOX ROTHSCHILD LLP


*s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766
Laura P. Hansen, WSBA #48669
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
Telephone:    206.624.3600
Facsimile:    206.389.1708
E-mail:        gskok@foxrothschild.com
                lhansen@foxrothschild.com


MONTGOMERY MCCRACKEN


*s/ Charles B. Casper*
Charles B. Casper (*pro hac vice*)
1735 Market St., 21st Floor
Philadelphia, PA 19103
Telephone:    215.772.7223
Facsimile:    215.772.7620
Email:        ccasper@mmwr.com

*Attorneys for Defendant Valve Corporation*

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 31

128705047.1

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle, Washington. I am a U.S. citizen over the age of eighteen years and not a party to the within cause. On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

| Service List | |
| --- | --- |
| Kim D. Stephens, WSBA #11984<br>Jason T. Dennett, WSBA #30686<br>**TOUSLEY BRAIN STEPHENS PLLC**<br>1700 Seventh Avenue, Suite 2200<br>Seattle, WA 98101<br>Tel: (206) 682-5600<br>Fax: (206) 682-2992<br>KStephens@tousley.com<br>jdennett@tousley.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF/ Email<br>☐ Via over-night delivery |
| Jasper D. Ward IV<br>Alex C. Davis<br>Patrick Walsh<br>**JONES WARD PLC**<br>1205 E. Washington St., Ste. 111<br>Louisville, Kentucky 40206<br>Tel: (502) 882-6000<br>Fax: (502) 587-2007<br>jasper@jonesward.com<br>alex@jonesward.com<br>patrick@jonesward.com<br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 32

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

| | |
|---|---|
| Ray W. Kahler<br>**STRITMATTER KESSLER WHELAN**<br>**WITHEY COLUCCIO**<br>413 8th Street<br>Hoquiam, WA 98550<br>Tel: (360) 533-2710<br>Fax: (360) 532-8032<br>ray@stritmatter.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |
| Robert K. Shelquist<br>Rebecca A. Peterson<br>**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**<br>100 Washington Ave. S., Suite 2200<br>Minneapolis, MN 55401<br>Tel: (612) 339-6900<br>rkshelquist@locklaw.com<br>rapeterson@locklaw.com<br>bgilles@locklaw.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |
| Michael J. Flannery<br>**Cuneo Gilbert & LaDuca, LLP**<br>500 North Broadway, Suite 1450<br>St. Louis, MO 63102<br>Tel: (314) 226-1015<br>mflannery@cuneolaw.com<br>jyuill@cuneolaw.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 33

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1

| | |
|---|---|
| Michael G. Rossetti<br>**Lippes Mathias Wexler Friedman LLP**<br>1900 K Street NW<br>Suite 730<br>Washington, DC 20006-1110<br>Tel: (202) 888-5184<br>mrossetti@lippes.com<br>mgrossetti@outlook.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |
| Charles J. LaDuca<br>**Cuneo Gilbert & LaDuca, LLP**<br>4725 Wisconsin Avenue NW<br>Suite 200<br>Washington, DC 20016<br>Tel: (202) 789-3960<br>charles@cuneolaw.com<br>jyuill@cunwolaw.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via ECF / Email<br>☐ Via over-night delivery |

DATED this 10th day of December, 2021.

Courtney R. Brooks

VALVE'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
(2:16-CV-01941-JLR) - 34

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

128705047.1